## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| JOSE TREVINO and LORRY S. TREVINO, Individually and On Behalf Of All Others Similarly Situated, | Case No._____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| MERSCORP, INC., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | **JURY TRIAL DEMAND** |
| Defendants. | |

Plaintiffs Jose Trevino and Lorry S. Trevino, by their undersigned attorneys, for their class action complaint against Merscorp, Inc. and its wholly owned subsidiary, Mortgage Electronic Registration Systems, Inc. (collectively "MERS" or "Defendant"), allege upon knowledge as to their own acts and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This is a class action against MERS for breach of contract, unjust enrichment, and breach of duty of good faith and fair dealing. Each claim is based upon Defendant's conduct in overcharging and/or directing the overcharging of plaintiffs and a class of similarly situated individuals (the "Class") for attorneys' fees and expenses in connection with enforcement of certain of mortgage instruments between the dates of September 10, 2001 to the present, both dates inclusive (the "Class Period"). Specifically, prior to and during the Class Period, MERS has extracted and continues to extract improper attorneys' fees from plaintiffs and members of the

Class in excess of sums it actually incurred and/or was obligated to pay by virtue of side agreements with attorneys pursuing enforcement and foreclosure actions on its behalf.

2.    MERS' standard Fannie Mae/Freddie Mac form mortgage note (the "Mortgage Note"), similar to the one executed by plaintiffs and other members of the Class, specifically authorizes the note holder to be "*paid back* ... for all *its* costs and expenses in enforcing the note ... include[ing] ... reasonable attorneys' fees." (emphasis added). Because MERS enters into fixed amount, per-case, fee arrangements ("flat-fee agreements") with attorneys acting on its behalf, it is necessarily limited, under the terms of the Mortgage Note, to only reimbursement of those predetermined flat fees. Consequently, a demand for payment from the borrower for any amount of attorneys' fees exceeding its own obligation represents a clear breach of contract under the laws of the various states in which MERS operates.

3.    Plaintiffs, on their own behalf, and as representatives of a Class of similarly situated individuals, seek to recover compensatory damages in the amount of attorneys' fees collected or obtained by MERS or its agents that exceeded any sums MERS actually incurred or was obligated to pay in connection with any enforcement actions involving plaintiffs and members of the Class. Plaintiffs also seek injunctive relief ordering cessation of the offending practice and revision to the language of the Mortgage Note making its terms clear to unwitting borrowers.

## JURISDICTION AND VENUE

4.    This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class

2

actions where, as here: (a) there are 100 or more members in the proposed Class; (b) at least some members of the proposed class have a different citizenship from some defendants; and (c) the claims of the proposed Class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

5.     This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court, Defendants are incorporated in the State of Delaware, and by virtue of the fact that Defendants systematically and continually conduct business throughout the State.

6.     Venue is proper because Defendants are incorporated in this District, conduct substantial business in this District, and because certain of the violations affecting Class members residing in Delaware occurred in this District.

## PARTIES

7.     Plaintiffs Jose Trevino and Lorry S. Trevino, residents of University City, Missouri, signed a Mortgage Note, were subject to an enforcement action, received a demand for payment of attorneys' fees in excess of attorneys' fees Defendant actually incurred or was obligated to pay, and suffered damages as a result.

8.     Defendant Merscorp, Inc. is a corporation, organized under the laws of Delaware, with its principal headquarters located at 1595 Spring Hill Rd, Suite 310, Vienna, Virginia 22182.

9.     Defendant Mortgage Electronic Registration System, Inc., d/b/a MERS, is a wholly-owned subsidiary of Defendant Merscorp, Inc. MERS is incorporated in Delaware and has its principal place of business in Vienna, Virginia. The members of MERS include the shareholders of Merscorp, Inc. and any other mortgage lenders who make application and pay a membership fee. MERS members may use the registration system established and maintained by

3

MERS.

10.     MERS's shareholders include Mortgage Bankers Association of America, Fannie Mae, Freddie Mac, American Land Title Association, and various mortgage companies, title insurers, and mortgage insurers. MERS is managed by a Board of Directors consisting of approximately 16 directors, operating in three classes: Class A, consisting of three directors, one from each of the Mortgage Bankers Association of America, Fannie Mae, and Freddie Mac; Class B, consisting of at least nine directors elected by shareholders from the mortgage servicing and lending business; and Class C, consisting of at least two directors elected by shareholders.

11.     MERS was created in 1996 by the mortgage banking industry to create a secondary mortgage market, internally administer the buying and selling of mortgages, and to simplify the administration of home mortgages, including foreclosure proceedings. When a mortgage loan is registered on the MERS System (the "MERS System"), title is held in the name of MERS and MERS acts as a mortgagee of record in county land records. While mortgages may get assigned many times over the life of the loan, MERS remains holder of record. And, although there may be no recordation of such assignment on county land records, MERS controls records on transfers of financial and title interest of its mortgages.

12.     The beneficiaries of MERS include mortgage originators, mortgage servicers and sub-servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers, and investors. In the various steps of administration of a mortgage, these beneficiaries act as agents of MERS, and with authority granted by MERS, whether they are acting on their own behalf or on behalf of MERS.

4

## CLASS ACTION ALLEGATIONS

13. Plaintiffs bring this class action on their own behalf and on behalf of all similarly situated individuals who: (i) executed a MERS standardized Mortgage Note naming MERS as a lender, a beneficiary and/or assignee and providing the note holder is entitled to be "paid back … for all its costs and expenses in enforcing the note … include[ing] … reasonable attorneys' fees;" and (ii) have been subject to an enforcement action concerning the Mortgage Note; (iii) received a demand to pay attorneys' fees in excess of the flat rate MERS and/or its lending members actually incurred or were obligated to pay pursuant to agreements with attorneys who undertook the enforcement actions on its behalf; and (iv) suffered damages as a result.

14. This action is properly maintainable as a class action.

15. The Class is so numerous that joinder of all members is impracticable. As of August 1, 2007, MERS holds approximately more than twenty (20) million mortgage loans in its own name throughout the nation. These loans are all held within the MERS secondary market as a market regulated by the laws of the United States. In the past ten (10) years, the number of loans held by MERS as lender, assignee or beneficiary in the MERS secondary market has multiplied exponentially. During the Class Period, hundreds of thousands of these mortgages have fallen into foreclosure and were (or are currently) subject to the imposition and collection of improper attorneys' fees.

16. The number and identities of the loan borrowers whose Mortgage Notes are registered with MERS can easily be determined from the mortgage records maintained by MERS or its agents. The disposition of their claims in a class action will be of benefit to the parties and to the Court.

5

17. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action. The likelihood of individual Class members prosecuting separate claims is remote.

18. There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class. Among the questions of law and fact which are common to the Class, and which predominate over questions affecting any individual Class member are, *inter alia*, the following:

(a) Whether the imposition on Class members of attorneys' fees in excess of the flat rate agreed upon between Defendant and the attorneys retained to prosecute enforcement actions violated the clear and unambiguous terms of the Mortgage Notes executed by plaintiffs and the other members of the Class; and

(b) Whether and to what extent plaintiffs and the other members of the Class have been damaged by Defendant's breach of the Mortgage Note, and the proper measure of damages.

19. Plaintiffs are members of the Class and are committed to prosecuting this action. Plaintiffs have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of the claims of the other members of the Class in that they are seeking compensatory damages for MERS' imposition of excessive attorneys' fees in connection with enforcement actions filed against plaintiffs, the same claim being asserted on behalf of each individual Class member. Plaintiffs do not have interests antagonistic to or in conflict with those they seek to represent. Plaintiffs are, therefore, adequate representatives of the Class.

6

20. The likelihood of individual Class members prosecuting separate individual actions is remote due to the relatively small loss suffered by each Class member as compared to the burden and expense of prosecuting litigation of this nature and magnitude. Absent a class action, Defendant is likely to avoid liability for its wrongdoing, and Class members are unlikely to obtain redress for the wrongs alleged herein.

21. Adjudication of this case on a class-wide basis is manageable by this Court. The standard form Mortgage Notes issued to plaintiffs and the other members of the Class throughout the United States and its possessions are the same or so similar as to be legally and factually indistinguishable in all material respects and the laws of the various states which may be applied to plaintiffs' breach of contract claim on behalf of the Class are largely identical or can otherwise be grouped into a small number of subsets based on any variations that may be deemed to be relevant to the Court. As a result, it will not be difficult for the Court or the jury to determine whether MERS has breached its contracts for each of the members of the Class. This Court is an appropriate forum for this dispute.

## SUBSTANTIVE ALLEGATIONS

### The Mortgage Note is a Contract of Adhesion

22. The Mortgage Note executed by plaintiffs on May 16, 2003, and attached hereto as Exhibit A, is a standard Fannie Mae/Freddie Mac form contract, which is comparable in all material aspects and is substantially similar to the form Mortgage Note issued by MERS members nationwide to their customers borrowing funds for home purchases. In fact, the Mortgage Note explicitly provides that it is a "MULTISTATE FIXED RATE NOTE-Single Family-Fannie

7

Mae/Freddie Mac UNIFORM INSTRUMENT." (Emphasis in the original).[1]  The Mortgage Note

evidences the debt owed by the borrower to the holder of the note, and is the basic contractual

instrument in financing a home.

23.    The Mortgage Note is a contract of adhesion, in that it is prepared by the MERS

member, and plaintiffs, as well as the other members of the Class, were not given any opportunity

to negotiate any of its terms or conditions. The Mortgage Note was offered to plaintiffs and other

members of the Class on a "take it or leave it" basis.

### MERS is the Assignee Under the Mortgage Note

24.    When a borrower executes a Mortgage Note, MERS automatically becomes an

assignee of the MERS member (*i.e.*, the principal lender). The mortgage loan is registered on the

MERS System, and title is held in the name of MERS.   The beneficiaries of MERS, including

lenders, mortgage originators, mortgage servicers, document custodians, settlement agents, title

companies, insurers, and investors, all gain their authority from MERS to take actions in

connection with the administration of a mortgage, including foreclosure proceedings. Although

MERS is not titled the lender in the mortgage transaction, it is named as beneficiary, assignee or

otherwise and the practical effect is the same; MERS is the maker and holder of the Mortgage

Note and is the secondary market in which all transactions take place, including foreclosures.

25.    The Mortgage Note, along with a deed of trust, makes MERS the lender or the

assignee of the mortgage loan and a beneficiary of the mortgage.

26.    The Mortgage Note executed by plaintiffs is transferable, providing in relevant

---

[1]    The terms of the MULTISTATE ADJUSTABLE RATE NOTE-Single Family-Fannie
Mae/Freddie Mac UNIFORM INSTRUMENT (annexed as Exhibit C) is identical in substance as
relevant to this action.

part that:

> I understand that *the Lender may transfer this note*. The Lender or *anyone who takes this Note by transfer and who is entitled to receive payment under this Note is called the "Note Holder."*

> *Mortgage Note*, Section 1. (Emphasis added).

27.     In addition to the transferable Mortgage Note, plaintiffs executed a deed of trust on May 16, 2003, (the "Deed of Trust") attached hereto as Exhibit B, which references the Mortgage Note signed by plaintiffs and specifically provides that "MERS is the beneficiary under this Security Instrument." The Deed of Trust is also a standard form, issued on a "Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT."

28.     The Mortgage Note and the Deed of Trust give MERS the authority to pursue foreclosures in its own name. A mortgage loan can be foreclosed in the name of MERS, if the borrower defaults on the mortgage note, as MERS is the record mortgage holder and the holder of the Mortgage Note.

29.     The Mortgage Note and the contractual obligations of borrowers and lenders under the Mortgage Note are the same or so similar as to be legally and factually indistinguishable whether the respective states recognize deeds of trust, mortgages, security deeds, or some combination thereof.

30.     If a borrower defaults on a mortgage, the lender (whether servicing the loan itself or using a servicer, sub-servicer or outside servicing agency) gains its authority to foreclose on a home from MERS. The manner in which MERS operates is set forth in the MERS *Recommended Foreclosure Procedures* guide (the "Foreclosure Guide"), attached hereto as Exhibit D, and the MERS *Quality Assurance Procedures Manual* (the "QAP Manual"), attached hereto as Exhibit E.

9

31.     The MERS Foreclosure Guide directs that when executing the mortgage loan
documents,

> the employees of the servicer [lender] will be certifying officers of
> MERS. An employee of a lender, through his or her status as a
> certified officer of MERS, is authorized to sign any necessary
> documents in connection with the foreclosure. A corporate
> resolution of MERS grants the certifying officer this power. In
> other words, the same individual that signs the documents for the
> servicer will continue to sign the documents, but now as an officer
> of MERS.

The Foreclosure Guide further explains that "[b]y virtue of having the servicer's employees be the

certifying officers of MERS, there can be an in-house transfer of possession of the note so that

MERS is considered the note holder for purposes of foreclosing the loan." *See* Ex. D.

32.     Additionally, the QAP Manual further sets forth the manner in which MERS

operates. The QAP Manual contains a standard form Mortgage and Security Agreement (the

"Mortgage Agreement"), which provides for the assignment of title to MERS, and endows MERS

with certain rights and powers under the loan.

33.     The Mortgage Agreement recites that:

> Borrower does hereby irrevocably *mortgage, grant, bargain, sell,*
> *pledge, assign, warrant, transfer and convey to [MERS]*, and grant
> a security interest to Mortgagee in, the following property, rights,
> interests and estates now owned, or hereafter acquired by Borrower
> (collectively, the "Property").

Ex. E, Mortgage Agreement, Section 1.1. (Emphasis added).

34.     MERS then, is the assignee under the Mortgage Note executed by plaintiffs and

each putative Class member, and as such, is liable to plaintiffs and the Class for any violations of

the terms of the Mortgage Note.

35.     By setting forth rules and procedures for mortgage lenders, mortgage servicers,

10

and other beneficiaries, MERS is acting through its agents in every stage in the administration of mortgages, including the prosecution of foreclosures.

### Under The Terms of the Mortgage Note, the Borrower's Liability Is Strictly Limited to Reimbursement of Actual Attorneys' Fees

36.     The Mortgage Note sets forth the following provisions regarding the payment of attorneys' fees in the event of the borrower defaulting upon his or her obligations under the note:

> ... the Note Holder will have the right to be *paid back* by me for all of *its* costs and expenses in enforcing this Note to the extent not prohibited by applicable law.    *Those expenses include, for example, reasonable attorneys' fees.*

Mortgage Note (Ex. A), Section 6(E).  (Emphasis added).

37.     The words "*paid back*" and "*its*" are clear and unambiguous. The attorneys' fees for which the borrower can be held accountable are thus specifically and necessarily limited by the contractual provisions of the Mortgage Note to the fees *actually* incurred or obligated to be paid.

38.     Plaintiffs' investigation reveals that MERS has arrangements with attorneys for flat-fee, per-case rates. These rates are typically $400 to $500 per-case.  Pursuant to the Mortgage Note, therefore, a borrower subject to an enforcement action should be obligated to reimburse MERS for no more than $400-$500 (depending on the flat-fee arrangement).

39.     Rather than bill the borrower for its flat fee obligation, MERS directs, permits, or provides tacit approval to its attorneys to collect its fee directly from the borrower pursuant to the terms of the Mortgage Note.  When payment is demanded, however, it is an amount substantially in excess of (*i.e.*, three to four times) MERS's flat-fee obligation.  And, if these fees are not paid directly by the borrower, they are added to the settlement amount on a foreclosure sale of the

11

subject property.

40.      Beyond acting as an agent of MERS, the attorneys have no contractual relationship with the borrowers and therefore no basis to demand payment in excess of their flat fee. Nonetheless, MERS directs, permits, or provides tacit approval to its attorneys to collect the higher fee thereby taking advantage of the unsophisticated and already debt-ladened borrower.

## Under The Doctrine of *Contra Proferentum*, The Mortgage Note Must Be Read To Limit Attorneys' Fees To the Actual Flat Fees Incurred Or Obligated to Be Paid

41.      The language in the Mortgage Note providing that the note holder and/or MERS is entitled to be "*paid back* ... for all of *its* costs and expenses in enforcing th[e] Note ... includ[ing], for example, reasonable attorneys' fees" is naturally read to mean the borrower will be responsible for attorneys' fees MERS or its lending member actually incurred or was obligated to pay for enforcing the Mortgage Note (*i.e.*, the flat fee). Since under no scenario will MERS or its lending member ever incur or be obligated to pay more than the flat fee, pursuing the borrower for sums in excess of that amount is a self-evident breach of agreed upon terms.

42.      Nonetheless, to the extent the language is subject to any ambiguity, it is a well-settled principle of contract law (*i.e.*, *contra proferentum*) that any ambiguous term in the contract should be construed against the drafter and in accordance with the reasonable expectations of the borrower when he or she entered into the contract.  This doctrine is particularly applicable in situations, such as here, where a sophisticated lending institution, which frequently engages in lending transactions, enters into a standardized contract of adhesion with a less sophisticated borrower.

43.      Nowhere in the Mortgage Note does it state that in addition to the attorneys' fees actually paid or due by MERS and/or its lending members to its foreclosure attorneys, MERS or

12

its attorneys may also charge the borrower a fee in excess of its actual attorneys' fees. It necessarily follows, then, that a reasonable borrower, at the time of contracting, would have interpreted the language to mean the actual attorneys' fees that would be paid by MERS in the event of foreclosure.

44.     Accordingly, the only option available to MERS under the Mortgage Note is to charge plaintiffs and the Class the flat fee actually paid or due in attorneys' fees. Stated otherwise, there is no basis under the Mortgage Note to impose upon the borrower attorneys' fees exceeding the flat fee. Moreover, MERS cannot allow its lenders, servicers, and attorneys acting on its behalf to demand such attorneys' fees from already distressed borrowers.

## Borrowers Are Demanded To Pay Attorneys' Fees Well In Excess of The Flat Fees MERS Paid or Owes to Attorneys Acting On Its Behalf

45.     When a borrower fails to pay on terms of the Mortgage Note, MERS institutes foreclosure proceedings against the borrower. MERS conducts the foreclosure either directly or through the borrower's lender bank (whoever that happens to be currently by virtue of secondary assignments), by retaining a law firm to assist with the proceedings.

46.     Plaintiffs' investigation reveals that MERS customarily enters into flat-fee arrangements with attorneys throughout the country to prosecute foreclosure actions against the borrowers who fall behind on the payments due under their Mortgage Notes. MERS utilizes the services of such attorneys to file foreclosure actions in its own name.

47.     Plaintiffs' investigation further reveals that, at the end of the foreclosure process, it is the practice of the law firm retained by the MERS to send a demand for payment to the borrower for fees and expenses -- ostensibly under the authority of the Mortgage Note -- with attorneys' fees ranging from $1200-$2000.

48.    There is no contractual relationship between the law firm and the borrower. Therefore, when a law firm demands such payment from the borrower, it is doing so solely as an agent of MERS. The law firm has no independent authority, other than through its relationship with MERS, to collect any legal fee in connection with enforcement of the Mortgage Note. Although MERS does not directly demand payment from the borrower, its agency relationship with the law firm is sufficient to make MERS directly responsible for the action.

## A Demand for Payment of Any Attorneys' Fees in Excess of the Flat Fee Constitutes a Clear Breach of Contract by MERS Under the Mortgage Note

49.    As the Mortgage Note cannot reasonably be interpreted to allow MERS to charge attorneys' fees in excess of the actual flat fee it pays or owes to the attorneys it retains to prosecute foreclosures, any such overcharges of attorneys' fees amount to a breach of contract under the Mortgage Note.

50.    Upon entering into the contract with MERS, plaintiffs and other members of the Class did not agree to pay any attorneys' fees in excess of attorneys' fees actually incurred or obligated to be paid in connection with a potential foreclosure proceeding. There was no meeting of the minds between the parties at the time the contract was formed as to the payment of attorneys' fees in excess of the flat-fee amount in the event of the borrower's default under the note. Yet, plaintiffs and the other members of the Class, who ultimately ended up in foreclosure proceedings, became subject to attorneys' fees they neither foresaw nor agreed to at the time they executed the Mortgage Note.

51.    By imposing upon plaintiffs and other members of the Class any attorneys' fees in excess of the flat-fee agreement, MERS directly violated its obligations under the Mortgage Note.

52.    A borrower who desires to redeem or reinstate his or her mortgage has a

14

contractual right to do so, by paying the arrearages, the costs of reinstatement or redemption, as well as reimbursement of attorneys' fees. This right is frustrated by MERS charging attorneys' fees in excess of its actual fees or obligations. As a result of MERS's improper practice of overcharging attorneys' fees, those borrowers who have enough funds to pay past due debt and other foreclosure costs, but are unable to pay the greater attorney fee, are still subject to losing their homes in foreclosure.

53.     In some cases, due to the overcharging of attorneys' fees, borrowers are also left unable to recoup residual equity from their homes upon foreclosure sales to third parties. Even after the terms of the Mortgage Note are otherwise satisfied, the improper attorneys' fees charge is added to the knock-down price paid by the purchaser and retained by the attorneys. This has the effect of deleting or nullifying any possibility of surplus monies from the sale that all state laws require remain the property of the mortgagee-borrowers.

54.     Funds resulting from increased value that the borrowers are entitled to after satisfying the Mortgage Note now represent a windfall to MERS and its attorneys who were obligated to pay and/or accept a much smaller flat fee.

55.     MERS' practice of directing or permitting the over-charging of attorneys' fees in connection with enforcement and foreclosure proceedings is rendered even more egregious by the recent large-scale occurrence of home foreclosures.     Indeed, on February 2, 2007, *Bloomberg.com*, reported that:

> *Defaults on mortgages to people with poor credit histories or large debt burdens rose in November above their worst levels during the last recession six years ago*, according to Friedman Billings Ramsey Group Inc.
>
> *The percentage of subprime (sic) mortgages packaged into bonds*

15

*and delinquent by 90 days or more, in foreclosure or already turned into seized properties climbed to 10.09 percent from 9.08 percent in October*, analysts led by Michael D. Youngblood at the Arlington, Virginia-based firm said in a report today. …

*Defaults on subprime loans have surged as rates on ones made in 2002, 2003 and 2004 adjust higher as their fixed-rate periods end* following an increase in short-term interest rates from the lowest in 45 years. *Subprime mortgages made in 2005 and 2006 are suffering from slumping home prices and looser lending standards.*

*More than a dozen sub-prime mortgage lenders have closed in the past two months* including Middletown, Connecticut-based Mortgage Lenders Network USA Inc., Agoura Hills, California-based Ownit Mortgage Solutions, Charlotte, North Carolina-based Wachovia Corp.'s EquiBanc Mortgage and the Equity One unit of Puerto Rico's Popular Inc.

Subprime mortgages, home loans with rates generally at least 2 or 3 percentage points above safer prime loans, are given to people with low credit ratings or combinations of other attributes that make it more likely lenders will have to foreclose on their homes and sell them for losses.

*Foreclosures begun on subprime adjustable-rate mortgages, of ARMs, rose to a four-year high of 2.19 percent in the third quarter*, according to the mortgage bankers' group.

(Emphasis added).

56.    On July 23, 2007, half a year after the publication of the above-cited Bloomberg

Article, *The Wall Street Journal*, in an article entitled "States Aim to Stem Tide of Home

Foreclosures With Funds For Refinancing," reiterated the disconcerting foreclosure statistics:

*More than one million American homes are expected to enter foreclosure this year*; the total represents about 2.3% of the nation's 44 million home loans, according to Freddie Mac… Freddie Mac says about 60% of those homes carry subprime mortgages.

*The projected foreclosure rate* – higher than during the oil bust of 1987 but not as high as in the 2002 recession – *poses a significant*

16

> *threat to the housing sector, and possibly to the nation's economy*
> *if it spurs consumers to maintain a tight grip on their wallets.*
> "*Falling home prices hurt consumer spending*," says Patrick
> Newport, an economist at consulting firm Global Insight.

(Emphasis added).

57.    On August 1, 2007, CNNMoney.com, in an article entitled "Why Stocks Can

Shake Off Mortgage Meltdown" (the "CNN Article"), reported that yet another victim of the

subprime mortgage meltdown, American Home Mortgage announced that "lenders had cut off its

access to credit and that it may have to sell off its assets." The CNN Article further noted that:

> *Problems in the risky debt and subprime mortgage sector have*
> *sparked wild swings in the market recently…*
>
> *There are reasons for concern. …The collapse of companies like*
> *American Home and other mortgage lenders could make home*
> *loans more expensive for borrowers.*

(Emphasis added).

58.    On August 21, 2007, the Associated Press, in an article entitled "July Foreclosures

Up 9 Percent From June," it was reported that "[t]he number of foreclosure filings reported in the

U.S. [in July of 2007] jumped 93 percent from July of 2006 and rose 9 percent from June, the

latest sign that homeowners are having trouble making payments and finding buyers during the

national housing downturn." According to the article:

> There were 179,599 foreclosure filings reported during July, up
> from 92,845 during the same period a year ago, Irvine-based
> RealtyTrac Inc. said Tuesday. There were 164,644 foreclosure
> filings reported in June.
>
> *The national foreclosure rate in July was one filing for every 693*
> *households, the company said.*
>
> * * *
>
> In recent months, the mortgage industry has been battered by rising

17

defaults and foreclosures, primarily driven by borrowers with subprime loans and adjustable rate mortgages. Lagging home sales and flat or decreasing home prices have made it more difficult for homeowners who fall behind on payments to sell their homes and clear the debt, spurring the rise in foreclosure activity.

Loan types seeing higher delinquencies and defaults in general are home equity loans or second mortgages used to cover a downpayment, subprime loans to people with shaky credit histories, and Alt-A loans, which can include interest-only and adjustable rate mortgages sold with little or no documentation.

59.    Finally, on September 18, 2007, the Associated Press, in an article entitled, "U.S. Home Foreclosures Soar In August," reported that "[t]he number of foreclosure filings reported in the U.S. last month more than doubled versus August 2006 and jumped 36 percent from July, a trend that signals many homeowners are increasingly unable to make timely payments on their mortgages or sell their homes amid a national housing slump." The article further reported that:

A total of 243,947 foreclosure filings were reported in August, up 115 percent from 113,300 in the same month a year ago, Irvine, Calif.-based RealtyTrac Inc. said Tuesday.

There were 179,599 foreclosure filings reported in July.

The filings include default notices, auction sale notices and bank repossessions. Some properties might have received more than one notice if the owners have multiple mortgages.

August's total represents the highest number of foreclosure filings reported in a single month since the company began tracking monthly filings two years ago.

***The national foreclosure rate last month was one filing for every 510 households, the company said.***

"The jump in foreclosure filings this month might be the beginning of the next wave of increased foreclosure activity, as a large number of subprime adjustable rate loans are beginning to reset now," RealtyTrac Chief Executive James J. Saccacio said.

18

The mortgage industry has been rocked by a surge in defaults, particularly among borrowers with subprime loans and adjustable rate mortgages that initially had attractive "teaser" interest rates but then can adjust upward, resulting in a payment shock.

Many of the loans, some of which adjust in as little as two years, were issued in 2005 and 2006 during the height of the housing boom.

Lagging home sales and flat or decreasing home prices have also left homeowners unable to make their mortgage payments hard-pressed to find buyers.

The latest figures also reflect an increase in the number of homes going into foreclosure that are not being picked up in estate sales and are ending up going back to lenders.

The number of bank repossessions jumped to 42,789 in August, compared with 20,116 a year earlier, the RealtyTrac said. In July, there were 26,842 bank repossessions.

(Emphasis added).

60.     In this climate of mortgage meltdowns and widespread foreclosures, many resulting from predatory lending practices, the imposition by MERS through its lenders and their retained attorneys, of unduly high attorneys' fees on plaintiffs and the Class, exacerbated the financial difficulties already suffered by plaintiffs and the Class, by making it more costly and sometimes downright prohibitive to reinstate or redeem their mortgage loans.

61.     As a result of Defendant's breach of its obligations under the Mortgage Note, as described above, plaintiffs and the Class have been damaged in the amount of the attorneys' fee overcharge.   Damages sustained by plaintiffs and the Class are a direct result of Defendant's breach of the Mortgage Note.  Accordingly, Defendant is liable to plaintiffs and the Class.

## COUNT I

### *Breach of Contract*

62.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

63.     Plaintiffs and other members of the Class entered into contracts for mortgages with MERS named as the lender, assignee or beneficiary, and/or which were subsequently assigned to MERS, with the understanding and agreement that they would be responsible for no more than the actual attorneys' fees incurred or obligated to be paid in connection with an enforcement action on the Mortgage Note.

64.     Defendant breached its agreement with plaintiffs and the other members of the Class by causing, directing and/or allowing their retained attorneys to overcharge for attorneys' fees in connection with enforcement or foreclosure proceedings, in an amount in excess of the flat fees Defendant actually incurred or was obligated to pay through agreements with attorneys.

65.     As a result of Defendant's breaches of the Mortgage Notes, plaintiffs and the other members of the Class were damaged by the amount of attorneys' fees they overpaid in connection with enforcement and foreclosure proceedings pursued against them by MERS and/or MERS's agents, assigns or successors-in-interest. Plaintiffs and other members of the Class are therefore entitled to recover such amounts that were improperly demanded and paid.

## COUNT II

### *Unjust Enrichment*

66.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

67.     As a result of the breach of contract described above, Defendant will be and has been unjustly enriched at the expense of plaintiffs and the Class, resulting in unjustified earnings and/or profits to MERS and its agents including MERS's members, mortgage originators, mortgage servicers, sub-servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers and investors.

68.     Defendant wrongfully over-charged plaintiffs and members of the Class, and directed and/or permitted its agents, including the lenders and attorneys who are beneficiaries of MERS, to retain the fees that were in excess of those agreed upon as well as the interest or other profits earned on the proceeds, which were unlawfully received from plaintiffs and the other Class members.

69.     By reason of the foregoing, plaintiffs and each individual Class member, are entitled to the return of the sums paid in excess of the flat fees actually incurred or obligated to be paid by Defendant through agreements with retained attorneys.

## COUNT III

### *Breach of Duty of Good Faith and Fair Dealing*

70.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein.

71.     Defendant has a duty of good faith and fair dealing that is implied in each of its contracts with plaintiffs and the other Class members, including the duty to charge no more than its actual attorneys' fees or obligations in connection with enforcement and foreclosure proceedings, as is specifically provided for in the Mortgage Notes entered into by plaintiffs and other members of the Class.

21

72.    Defendant breached its duty of good faith and fair dealing by, *inter alia*, directly or indirectly, through its mortgage servicers, sub-servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers and investors and others, retaining attorneys throughout the nation to pursue enforcement and foreclosure proceedings for a flat fee, and then, subsequently, causing, directing or giving approval to those attorneys to seek attorneys' fees from borrowers in excess of their agreed upon flat-rate.

73.    Based upon the foregoing, plaintiffs and the other Class members are entitled to a judgment that Defendant has breached its duty of good faith and fair dealing implied in their Mortgage Notes.

74.    As a result of Defendant's breach, plaintiffs and the other members of the Class have been damaged in an amount equal to any and all attorneys' fees charged in excess of the flat fees agreed upon between Defendant and attorneys acting on its behalf.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment and relief as follows:

(a)    Declaring that this lawsuit is properly maintainable as a class action and certifying plaintiffs as representatives of the Class;

(b)    Declaring that Defendant breached its contract with plaintiffs and members of the Class;

(c)    Declaring that Defendant was unjustly enriched as a result of its breach of contract with plaintiffs and the members of the Class, and that Defendant violated its duty of good faith and fair dealing towards plaintiffs and the Class;

(c)    Awarding damages against Defendant, in an amount to be determined at

22

trial, together with prejudgment interest at the maximum rate allowable by law;

     (d)    Permanently enjoining and restraining MERS, directly or indirectly, through its mortgage servicers[0], sub-servicers, warehouse lenders, wholesale lenders, retail lenders, document custodians, settlement agents, title companies, insurers and investors and others, from charging any attorneys' fees in excess of the flat fees it contracts (or contracted) for with attorneys throughout the nation to prosecute enforcement and foreclosure proceedings;

     (d)    To the extent the Court finds any ambiguity in the form Mortgage Note used by Defendant in provisions pertaining to a borrower's obligation to reimburse MERS, indirectly or indirectly, for its attorneys' fees, directing Defendant to redraft the same in a manner that fully and fairly describes the obligations of the borrower;

     (e)    Awarding plaintiffs and the Class their costs and disbursements and reasonable allowances for plaintiff's counsel and experts' fees and expenses; and

     (f)    Granting such other and further relief as may be just and proper.

Dated: September 20, 2007

**ROSENTHAL, MONHAIT & GODDESS, P.A.**

By:    */s/ Carmella P. Keener*
       Carmella P. Keener (#2810)
       Citzens Bank Center, Suite 1401
       Wilmington, DE 19899-1070
       Tel: (302) 656-4433
       Fax : (302) 658-7567
       ckeener@rmgglaw.com

       *Attorneys for Plaintiffs*

23

**Of Counsel:**

**HARWOOD FEFFER LLP**
Robert I. Harwood, Esq.
Jeffrey M. Norton, Esq.
488 Madison Avenue
New York, NY 10022
Tel: (212) 935-7400
Fax: (212) 753-3630
rharwood@hfesq.com
jnorton@hfesq.com

**THE CHASE LAW FIRM, PC**
Matthew S. Chase, Esq.
8123 Delmar Boulevard
University City, MO 63130-3729
Tel: (314) 726-4040
Fax: (314) 726-6543
matthew@chaselawpc.com

# EXHIBIT A

LOAN #: 34359
CASE #: 31-31-6-0367870
MIN #: 1002527-0003040093-9

**NOTE**

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

MAY 16, 2003                    CLEARWATER,                              FLORIDA
[Date]                            [City]                                 [State]

7726 BURR OAK LANE, SAINT LOUIS, MO 63130
[Property Address]



**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.     $154,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **SHANE, N.A., DBA VETERAN HOME LOANS, A GEORGIA CORPORATION**.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the         1ST         day of each month beginning on    JULY 1, 2003.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     JUNE 1, 2018,         I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
1255 LAKES FAIRWAY BLD200
LAWRENCEVILLE, GA 30043

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.    $1,059.66.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01 MODIFIED

© 1999-2002 Online Documents, Inc.                    Page 1 of 3                              V3200NOT 0107



LOAN #: 34359

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of           15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.000%   of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01 MODIFIED

LOAN #: 34359

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by me together with this Note, the covenants of the allonge are incorporated into and amends and supplements the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge        ☐ Other [Specify]

**12. V.A. REGULATIONS**

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
JOSE A. TREVINO

_____ (Seal)
LORENA S. TREVINO

Pay To The Order Of _____ Mutual Bank, FA
Without Recourse
nBank N.A.
By _____ SVP
Carol Lummus SVP

[Sign Original Only]

# EXHIBIT B

BP14957/0613

LOAN #: 34359

D129493
T240791

[Space Above This Line For Recording Data]

**DEED OF TRUST**

CASE #: 31-31-6-0367870

MIN 1002527-0003040093-9

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.
(A) "Security Instrument" means this document, which is dated MAY 16, 2003,                together
with all Riders to this document.
(B) "Borrower" is JOSE A. TREVINO AND LORRIE S. TREVINO, HUSBAND AND WIFE.

TAX ID #17K 320 511
Borrower is the trustor under this Security Instrument.
(C) "Lender" is KBANK, N.A., DBA VETERAN HOME LOANS.

Lender is a CORPORATION,                organized and existing under the laws of
GEORGIA.                Lender's address is 1285 LAKES
PARKWAY BLD200, LAWRENCEVILLE, GA 30043.

PREPARED BY & RETURN TO:
RAY HUNDLEY
TRANSCONTINENTAL TITLE CO
2605 ENTERPRISE RD. E #300
CLEARWATER, FL 33759
1-800-225-7897

(D) "Trustee" is TRANSCONTINENTAL TITLE.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MAY 16, 2003.
The Note states that Borrower owes Lender ****ONE HUNDRED THIRTY FOUR THOUSAND AND NO/100
************************************************** Dollars (U.S.    $134,000.00    )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full
not later than JUNE 1, 2018.
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

Initials: [signature]

MISSOURI--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3026 1/01
© 1999-2002 Online Documents, Inc.    **Page 1 of 12**    MOEVADED    MOEVADLD  0211





WAMM 612206289

BP14957/0611

*2003061200186*

## JANICE M. HAMMONDS, RECORDER OF DEEDS
## ST. LOUIS COUNTY MISSOURI
## 41 SOUTH CENTRAL, CLAYTON, MO 63105

| TYPE OF INSTRUMENT | GRANTOR | TO | GRANTEE |
|---|---|---|---|
| DT | TREVINO JOSE A ETUX | | NBANK N A ETAL |

PROPERTY DESCRIPTION:    BLACKBERRY LOT PT 9 AND 10    PB 48 PG 12

| Lien Number | Notation | Locator |
|---|---|---|

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certication Sheet as to the TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the ATTACHED DOCUMENT governs. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the BOOK and PAGE of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI    )
                              SS.
COUNTY OF ST. LOUIS )

Document Number
**186**

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of ___18___ pages, (this page inclusive), was filed for record in my office on the ___12___ day of ___June___ ___2003___ at ___07:30 AM___ and is truly recorded in the book and at the page shown at the top and/or bottom of this page.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

_____
Deputy Recorder

_____ N.P
_____ N.P.C
_____ N.N.C.
_____ N.N.I.

_____
Janice M. Hammonds
Recorder of Deeds
St. Louis County, Missouri

RECORDING FEE ___$71.00___
(Paid at the time of Recording)

Mail to:

Destination code: _____

B-14957 P-0611/0628

# EXHIBIT C

# ADJUSTABLE RATE NOTE
### (1 Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY
MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

*SEPTEMBER 14, 2005*
*[Date]*

*FOLSOM,   CALIFORNIA*
*[City]                  [State]*

*53 ANY AVENUE*
*SACRAMENTO, CA*
*[Property Address]*

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *559,650.00*     (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is
*SOME GOOD MORTGAGE COMPANY, INC., A CALIFORNIA CORPORATION*                      .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    *5.500* %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any
default described in Section 7(B) of this Note.

## 3.    PAYMENTS

### (A)    Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on   *NOVEMBER 1, 2005*          .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below
that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on  *OCTOBER 1, 2035*        , I still owe amounts under this Note, I will pay those amounts in full on that
date, which is called the "Maturity Date."

I will make my monthly payments at     *950 IRON POINT ROAD, SUITE 240*
                                        *FOLSOM, CA 95630*
or at a different place if required by the Note Holder.

### (B)    Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  *2,042.05*      . This amount may change.

### (C)    Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must
pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with
Section 4 of this Note.

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)    Change Dates

The interest rate I will pay may change on the first day of     *OCTOBER . 2008*     , and may
change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B)    The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London
Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one year U.S. dollar denominated deposits
in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days
before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.
The Note Holder will give me notice of this choice.

*LOAN NO:   00003951*

MULTISTATE ADJUSTABLE RATE NOTE-1 Year LIBOR Index (Assumable after Initial Period)-Single Family-Freddie Mac UNIFORM
INSTRUMENT                                                                           Form 5531 3/04
DRAW.0504.MX.CVL.ARM.NOTE.5531.1.WPF (010/DOCS/NOTES/CVL/MXFH5531.ARM)                   (Page 1 of 4 pages)

(C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding
*TWO AND ONE QUARTER*                        percentage points (    *2.250*    %) to the Current Index.
The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject
to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal
payments. The result of this calculation will be the new amount of my monthly payment.

(D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    *7.500* % or less than
*3.500* %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
*TWO*    percentage points (   *2.000*    %) from the rate of interest I have been paying for the preceding 12 months.
My interest rate will never be greater than   *11.500* %.

(E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly
payment before the effective date of any change. The notice will include information required by law to be given to me and also
the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as
a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment
to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount
of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note
Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first
Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an
interest rate increase.

6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from
me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated
as a partial Prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    *15*    calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   *5.000*   % of my
overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by
a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all
the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or
delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described
above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to
be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those
expenses include, for example, reasonable attorneys' fees.

8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

*Loan No: 00003951*

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) <br> Jane Doe        -Borrower | _____ (Seal) <br> -Borrower |
| _____ (Seal) <br> -Borrower | _____ (Seal) <br> -Borrower |
| _____ (Seal) <br> -Borrower | _____ (Seal) <br> -Borrower |
| _____ (Seal) <br> -Borrower | _____ (Seal) <br> -Borrower |

*[Sign Original Only]*

MIN:   *1070-0000334951-8*                    MERS Telephone:   888-679-6377

*Loan No: 00003951*
MULTISTATE ADJUSTABLE RATE NOTE-1 Year LIBOR Index (Assumable after Initial Period)-Single Family-Freddie Mac UNIFORM INSTRUMENT                    Form 5531  3/04
DRAW.0304.MX.CVL.ARM.NOTE.5531.4.WPF (0101DOCS\NOTES\CVL\MXFH5531.ARM)                    *(Page 4 of 4 pages)*

# EXHIBIT D



## Quality Assurance
## Procedures Manual

Release 14.0
June 4, 2007

# Table of Contents

**MERS Quality Assurance Policy**                                                 **1**

    Purpose ......................................................................................................... 1
    Strategy ........................................................................................................ 2

**MERS Processing Standards**                                                        **3**

    Overview ........................................................................................................ 3
    MERS as Original Mortgagee (MOM)  Security Instrument Processing Standards..... 3
    Non-MOM Security Instrument  Assignment Processing Standards ......................... 4
    Additional Recordable Documents Processing Standards ......................................... 4
    Security Instrument and Recording Information Processing Standards ...................... 5
    Lien Release Processing Standards............................................................................ 6
    Foreclosure Processing Standards ............................................................................. 6
    Deactivation Processing Standards............................................................................ 6
    Member Information Update Standards ..................................................................... 7
    Data Integrity Standards ........................................................................................... 7

**Appendix A**                                                                        **9**

    MERS Quality Assurance Review ............................................................................ 9
        Checklist Items........................................................................................... 9
            MOM Security Instrument ......................................................................9
            MERS Assignments .................................................................................9
            Additional Recordable Documents ............................................................9
            Security Instrument/Recording Information Processing Standards ...................10
            Foreclosure Processing Standards ............................................................10
            Deactivation Standards – Lien Release.....................................................10
            Deactivation Standards – Transfer to Non-MERS Servicer................................10
            Deactivation Standards – All Others .......................................................11
            Data Integrity Standards ........................................................................11
            Member Information Standards ...............................................................11

**Appendix B**                                                                       **12**

    Sample Documents ................................................................................................. 12
    Sample Changes to MOM Deed of Trust or Mortgage ............................................. 14
    Sample Corrective Affidavit for Assignment ............................................................ 15
    Sample Corrective Affidavit for Security Instrument ............................................... 16
    Sample Loan Security Agreement ............................................................................ 17
    Sample UCC-1 Naming MERS as the Original Secured Party ................................. 18
    Sample UCC-3 Assigning Security Interests to MERS ............................................ 19
    Sample UCC-3 Assigning Security Interests from MERS......................................... 22
    Sample of UCC-3 Termination, When Debt is Paid in Full....................................... 25

**Glossary**                                                                          **27**

# MERS Quality Assurance Policy

## Purpose

MERS provides value to your company by eliminating the need to prepare and record assignments when your company sells or buys the beneficial (investor) interest and/or servicing rights to/from another member. The primary value to the seller is eliminating the cost of preparing and recording assignments. The primary value to the buyer of the beneficial interest is eliminating the cost of tracking and storing assignments, and in providing best execution for the seller. The primary value to the buyer of the servicing rights is reducing post closing, foreclosure and lien release costs due to the grounding of title in the name of MERS.

If the servicer sells the servicing rights in the future to another MERS member, it eliminates the cost of preparing and recording assignments. In the case of Ginnie Mae pools, it also eliminates the cost of endorsing the notes to the buyer.

So that buyer and seller realize the full value of MERS, the MERS Processing Standards are designed to ensure that:

- A valid MIN is assigned to the loan and affixed in the proper location on the Note, MOM security instrument, or assignment to MERS

- MERS is rapidly and accurately recorded in the county land records as mortgagee after loan origination, assignment to MERS, or acquisition of servicing

- The corresponding loan information is rapidly and accurately registered on the MERS® System after origination, assignment to MERS, or acquisition of servicing

- When beneficial or servicing rights are sold to another member, the seller and buyer rapidly update the MERS® System to reflect the new ownership interests

- When a loan is foreclosed, paid off, or servicing is sold to a non-MERS member, MERS is quickly released in the county land records as the mortgagee of record and the MIN assigned to the loan is affixed in the proper location on the lien release document or assignment from MERS to the buyer

# Strategy

Your company committed to abide by the MERS Processing Standards by signing the Member Agreement. The current servicer of a loan for which MERS has been named mortgagee inherits from the seller the responsibility for meeting the MERS Processing Standards.

MERS will provide the knowledge, training, and tools (or assistance in creating tools) that ensure the quality of generating MINs, preparing and recording documents, and the information on the MERS® System.

MERS expects your company to integrate the MERS Processing Standards into your everyday business practices. We expect you to self-audit your performance against the MERS Processing Standards by developing a quality assurance plan that is designed to meet or exceed the standards (for a sample MERS Quality Assurance Plan you may use as a model in creating the plan for your organization, click here). We expect your company to regularly conduct internal reviews to monitor your performance against the plan, and review the plan for accuracy and effectiveness at least annually.

To monitor the effectiveness of our members' training, tools, and procedures, we periodically select members for a quality assurance review based on their relative risk to MERS and other MERS members. Please see Appendix A for a sample of the type of information that we typically request during a Quality Assurance Review.

# MERS Processing Standards

## Overview

As the MERS® System was being developed, industry participants agreed there were no industry-wide standards for the processing of assignments and lien releases. Without standards, many assignments and lien releases were not recorded in a timely manner, were improperly recorded, or were never recorded at all. This created a number of problems and costs for buyers and sellers of servicing rights. The majority of mortgage industry participants that helped MERS define standards for processing recording documents believed the entire industry would benefit.

Creating recording and lien release processing standards is important because:

1. The ability of MERS members to sell mortgage loans to each other without recording assignments is contingent on MERS being properly recorded as the mortgagee in the county land records.

2. Likewise, recording of documents affects the ability of MERS to immediately and correctly identify the party to whom service of process should be directed.

3. To benefit consumers, and to avoid the possibility of MERS and its members being assessed penalties for not having liens released in a timely manner, liens must be released as soon as possible after a loan is paid off.

Following are the MERS standards established for member processing of MOM security instruments, assignments for non-MOM security instruments, lien releases and data integrity.

## MERS as Original Mortgagee (MOM) Security Instrument Processing Standards

- You must name MERS as mortgagee in accordance with investor guidelines and include the Servicer Identification System telephone number (888-679-6377) in the MERS as Mortgagee language. Sample MOM language is included in Appendix B.

- Place the Mortgage Identification Number (MIN) in a visible location on the first page of the security instrument, but not in any space reserved for the jurisdiction's recorder per jurisdictional requirements. In all cases, county recorder requirements take precedence over the MERS requirements.

- Send the security instrument for recording within seven calendar days of the Note Date or Funding Date.

- For originations, the originator must register the loan with a MOM security instrument on the MERS® System within ten calendar days of the Note Date or Funding Date.

- If a loan with a MOM security instrument is purchased before registration, the buyer must ensure that the loan is registered on the MERS® System within ten calendar days of the purchase (funding) date.

# Non-MOM Security Instrument Assignment Processing Standards

Prepare the assignment document naming MERS as mortgagee. Place the MIN and Servicer Identification System telephone number (888-679-6377) in a visible location on the first page of the assignment, but not in any space reserved for the jurisdiction's recorder per jurisdictional requirements. In all cases, county recorder requirements take precedence over the MERS requirements. A sample of an assignment is included in Appendix B.

NOTE: As of August 27, 2002, MERS has revised its sample assignment form by removing the "nominee" wording to clarify that Mortgage Electronic Registrations Systems, Inc. (MERS) is the assignee of the mortgage lien, not the MERS member lender. MERS also provided its street address to use when recording these assignments in Nassau, Suffolk, Westchester and Dutchess Counties in New York.

- Register the loan being assigned to MERS on the MERS® System within 14 calendar days of the effective transfer date. The effective transfer date is the date defined in the Purchase and Sale Agreement on which the buyer begins servicing the loans on its servicing system or, for loans assigned into MERS by the originator, the assignment date.

- For all loans assigned to MERS, send the assignment for recording no later than 14 calendar days after the Registration Date on the MERS® System.

- Update the Assignment Sent Date field on the MERS® System within five calendar days of sending the assignments to the county recorder. You cannot update assignment recording information on the MERS® System until you populate the Assignment Sent Date field on the MERS® System.

  *Note:* MERS requires the member and/or assignment provider to have on file the details for any exceptions where the member or provider was not able to meet the expected timeframes, whether due to county recorder requirements or lack of sufficient information to complete the assignment.

# Additional Recordable Documents Processing Standards

Place the MIN and Servicer Identification System telephone number (888-679-6377) in an area that is under or close to your company's loan number on the document, unless that placement is not in compliance with county recorder requirements. In all cases, county recorder requirements take precedence over the MERS requirements. See Appendix B for sample changes to documents and links to sample documents.

- Enter the additional loan information (Modification, Assumption, etc.) on the MERS® System within seven calendar days of its effective date, or of the Registration Date if later.

- Enter the recording information on the MERS® System within six months of the effective date, or within seven calendar days of the Registration Date if later.

# Security Instrument and Recording Information Processing Standards

Note: The current servicer is responsible to MERS for ensuring that all security instrument and recording information is entered. However, your trading partner agreements may require you to update recording information when it is received even if the loan has already been transferred.

- For all MOM loans, you must enter on the MERS® System all security instrument and recording information within thirty (30) calendar days* of the Registration Date. This includes:
  - MOM Flag set to Y
  - Mortgagee/Beneficiary
  - Security Instrument Type
  - Trustee (for Deed of Trust)
  - Recording Date
  - Instrument or Document Number
  - Book or Liber
  - Page or Folio
  - Recording Type (Recording or Re-Recording)
- For all loans assigned to MERS, you must enter on the MERS® System all security instrument, assignment, and recording information within six months* of the Registration Date. This includes:
  - MOM Flag set to N
  - Mortgagee/Beneficiary
  - Security Instrument Type
  - Trustee (for Deed of Trust)
  - Recording Date
  - Instrument or Document Number
  - Book or Liber
  - Page or Folio
  - Recording Type (Recording or Re-Recording)
  - Assignee and Assignor Names
- For all modified loans, you must receive and enter on the MERS® System all modification agreement recording information within six months* of the Modification Date, or within seven calendar days of the Registration Date if later.
- For all loans, set the Quality Review Flag to Y on the MERS® System within 12 months of the Registration Date. In setting the Quality Review Flag to Y, you warrant that you have entered all security instrument, assignment, and modification recording information correctly on the MERS® System, there is a complete chain of title with MERS recorded as the final mortgagee, and you have performed a quality control check to verify the integrity of the data that you entered. (See Data Integrity Standards for the items required for certification.)

*MERS grants an exception to the recording standards for those counties where recording time frames exceed the established MERS standards. You are expected to receive and enter all recording information within 3 months of the average recording time for these counties.*

# Lien Release Processing Standards

- Change the MIN status to "paid in full" and enter the Effective Payoff Date on the MERS® System within seven calendar days of payoff of the loan on your company's servicing system.

- Prepare the lien release document with MERS as mortgagee. Place the MIN and Servicer Identification System telephone number (888-679-6377) in an area that is under or close to your company's loan number on the document, unless that placement is not in compliance with county recorder requirements. In all cases, county recorder requirements take precedence over MERS requirements. An example of a lien release is included in Appendix B.

- Send the lien release document for recording no later than 45 calendar days after the effective payoff date.

  *Note:* Send lien releases to the county recorder within the state-imposed time frames established for the applicable counties and states, if more stringent than the MERS requirements, but no later than 45 calendar days after the effective payoff date.

# Foreclosure Processing Standards

- MIN status changed to "Foreclosure Pending" within seven calendar days of when the first legal action is taken.

- MIN status changed to "Foreclosure Complete" or "Foreclosure Reinstated" within seven calendar days of this action taking place. Again, each Servicer must include in its Quality Assurance Procedures a definition of when it deems a foreclosure complete or reinstated, and hold to it consistently.

- If loan assigned to Servicer for foreclosure:
  - o Change MIN status to "Foreclosure Initiated, Assigned to Servicer" on MERS® System within seven calendar days of initiating foreclosure by Servicer.

  - o Prepare assignment to Servicer and send it for recording within 14 calendar days of the status change on the MERS® System.

# Deactivation Processing Standards

- Change MIN status to deactivation reason on MERS® System within seven calendar days of the event that caused the deactivation.

- For all loans deactivated for reason of "Transfer to non-MERS Servicer" or "Foreclosure Initiated, Assigned to Servicer," prepare assignments and send them for recording within 14 calendar days of the Deactivation Date on the MERS® System.

- If a deactivation was performed in error, reverse it on the MERS® System within seven calendar days of discovering the error.

# Member Information Update Standards

- Ensure that all Member Information on MERS® System is kept current and accurate. This includes:
    - Member name (contact MERS to change)
    - Member address(es)
    - Member phone and fax numbers
    - Member URL
    - Member contact information (names, phone and fax numbers, and email addresses)

# Data Integrity Standards

- The current borrower name(s) on the MERS® System must match exactly the borrower name(s) on the original security instrument (including middle name or initial, title, and honorific, if present on the security instrument) unless the loan has been assumed

- For assumed loans, the current borrower name(s) on the MERS® System must match the borrower name(s) on your company's servicing system, and the original borrower name(s) on the MERS® System must match exactly the borrower name(s) on the original security instrument. (Exception may be made if the loan was assumed before being registered on the MERS® System.)

- Primary Borrower social security number or tax identification number must match the number used for IRS 1098 reporting on your company's servicing system.

- Subject property address must match exactly the property address on the security instrument unless the subject address has been changed by governmental decree.

- Property County must match the county listed in the legal description made part of the security instrument.

    *Note:* You must correct all "County Unknown" warnings before you set the Quality Review Flag equal to Y on the MERS® System

- Note Date and Original Note Amount must match the date and amount specified in the Original Note.

- If applicable, Funding Date must match the date specified on the Member's Servicing system.

- MOM Flag, Mortgagee/Beneficiary, and Lien Type on MERS® System must match the original Security Instrument

- Security Instrument Type on MERS® System must match the original Security Instrument

- If Deed of Trust, Trustee on MERS® System matches original Deed of Trust.

- Security Instrument Recording Information on MERS® System matches recording information on original Security Instrument.

- If applicable, Assignment Recording Information on MERS® System matches recording information on Assignment.

- If applicable, Modification Agreement Recording Information on MERS® System matches recording information on Modification Agreement.

- Investor identified as the current Investor on the MERS® System must be the investor designated on your company's servicing system, if the investor is either an Option 1 or an Option 2 Member Investor. You may identify a non-Member investor with an alias or by using your company's own Org ID; however, you must disclose the actual investor's name to MERSCorp, Inc.

- Servicer and Subservicer (if applicable) identified as current Servicer or Subservicer on the MERS® System must be the servicer and subservicer designated on your company's servicing system.

- The seller must initiate all Transfer of Beneficial Rights transactions within 14 calendar days of the effective transfer date.

- The seller must initiate all Transfer of Servicing Rights transactions within 14 calendar days of the effective transfer date. The effective transfer date is the date defined in the Purchase and Sale Agreement on which the buyer begins servicing the loans on its servicing system.

    *Note: Both buyer and seller are responsible to MERS for ensuring that transfers are completed in a timely manner.*

- Investor Loan Number, Investor Pool Number, and Agency ID if required by the investor, must match those numbers on your company's servicing system.

- For MINs in rated securities, you must enter the securitization serial number either in the Pool Number field or in the Investor Loan Number field.

- If applicable, FHA/VA Case numbers must match those on your company's servicing system.

*Note:* If a specific investor's requirements are more stringent than the MERS requirements, the investor's requirements supersede MERS policy.

# Appendix A

# MERS Quality Assurance Review

To ensure compliance with MERS Quality Assurance standards, MERS reviews the mortgage documents for MERS loans serviced/originated by the Member.

For Quality Assurance Reviews, MERS requests a random sampling of documents (both Mom and non-MOM), compares them against the MERS® OnLine System to ensure that the data on MERS is correct, and that the Member is following the documentation standards. For Members who service loans, MERS also requests a list of all MERS loans on their servicing system, the format for which will depend on which servicing system is used.

The following list identifies the types of documents the Quality Assurance Team reviews and the key data elements that are compared to the MERS® System.

## Checklist Items

### MOM Security Instrument
- ❑ Approved MOM Language Used
- ❑ Correct MIN and SIS placed on documents
- ❑ MIN positioned in correct location on required documentation
- ❑ Security Instrument Sent for recording within 7 calendar days of Note Date (or Funding Date in escrow states)
- ❑ Security Instrument Registered on MERS within 10 calendar days of Note Date (or Funding Date in escrow states)
- ❑ MOM indicator is set to "Y" on MERS

### MERS Assignments
- ❑ Approved MERS as Mortgagee Language used
- ❑ Correct MIN placed on Assignment
- ❑ MIN positioned in correct location on Assignment
- ❑ Correct SIS Number placed on Assignment
- ❑ SIS Number positioned in correct location on Assignment
- ❑ Loan registered within 14 calendar days of Transfer Date or Assignment Date
- ❑ Assignment Sent for Recording within 14 calendar days of Registration Date
- ❑ Assignment Sent Date entered on MERS® System within 5 calendar days of sending assignment for recording
- ❑ MOM indicator is set to "N" on MERS

### Additional Recordable Documents
- ❑ Correct MIN placed on document
- ❑ MIN positioned in correct location on document
- ❑ Correct SIS Number placed on document
- ❑ SIS Number positioned in correct location on document
- ❑ Transaction entered on MERS® System within seven calendar days of effective date or Registration Date, whichever is later.
- ❑ Recording information entered on MERS® System within six months of effective date or seven calendar days of Registration Date, whichever is later.

**Security Instrument/Recording Information Processing Standards (MOM & Non-MOM)**

❑ MOM loans - Security Instrument recording information entered on MERS® System within 30 calendar days of Registration Date

❑ Non-MOM loans - Security Instrument and Assignment recording information entered on MERS® System within 6 months of Registration Date

❑ Recording information for modification agreements entered on MERS® System within six months of modification date.

❑ All loans - within 6 months of Registration Date:
   o Mortgagee/Beneficiary entered
   o Security Instrument Type entered
   o Trustee entered
   o Assignee and Assignor Names entered for all assignments

❑ All loans - Quality Review Flag set to "Y" within 12 months of Registration Date.

**Foreclosure Processing Standards**

❑ MIN status changed to "Foreclosure Pending" within seven calendar days of when the first legal action is taken.

❑ MIN status changed to "Foreclosure Complete" or "Foreclosure Reinstated" within seven calendar days of when foreclosure is deemed complete or reinstated, as defined in Member's Quality Assurance Procedures.

❑ If loan assigned to Servicer for foreclosure:
   ❑ Change MIN status to "Foreclosure Initiated, Assigned to Servicer" within seven calendar days of initiating foreclosure by servicer.
   ❑ Prepare assignment to Servicer and send it for recording within 14 calendar days of status change on MERS® System

**Deactivation Standards – Lien Release**

❑ MIN status changed to "Paid in Full" and Effective Payoff Date entered on MERS® System within seven calendar days of Payoff date on the Member's servicing system

❑ Lien Release document sent for recording no later than 45 calendar days after the effective payoff date.

❑ Lien Release document has:
   o Approved MERS as Mortgagee language
   o Correct MIN placed on Lien Release
   o MIN positioned in correct location on Lien Release
   o Correct SIS Number placed on Lien Release
   o SIS Number positioned in correct location

**Deactivation Standards – Transfer to Non-MERS Servicer**

❑ MIN status changed to "Transfer to Non-MERS Member" and Transfer Effective Date entered on MERS® System within seven calendar days of effective transfer date.

❑ Assignment sent for recording within 14 calendar days of Deactivation Date on MERS® System

### Deactivation Standards – All Others

❑ MIN status changed to reflect deactivation and Effective Date entered on MERS® System within seven calendar days of event that caused the deactivation.
❑ Assignment sent for recording within 14 calendar days of Deactivation Date on MERS® System

### Data Integrity Standards

❑ Original Borrower Name(s) on MERS® System match Security Instrument.
❑ Current Borrower Name(s) on MERS® System match Security Instrument or current borrower(s) on Member's servicing system
❑ Borrower Social Security or Tax ID number matches Member's servicing system
❑ Property address matches the address on the Security Instrument
❑ Property County matches the legal description made part of the Security Instrument
❑ Note Date matches the Original Note
❑ If applicable, Funding Date matches funding date on Member's servicing system
❑ Note Amount on MERS® System matches Original Note
❑ Lien Type on MERS® System matches Security Instrument
❑ Security Instrument Type on MERS® System matches Security Instrument
❑ Mortgagee/Beneficiary on MERS® System matches Security Instrument
❑ Trustee on MERS® System matches Deed of Trust
❑ Recording Information on MERS® System matches recording information on original document (Security Instrument, Assignment, etc.)
❑ Investor on MERS® System matches Member's servicing system
❑ Servicer/Subservicer on MERS® System matches Member's servicing system
❑ Securitization Serial Number entered into Pool # or Investor Loan # field for MINs in rated securities
❑ Investor Loan #, Investor Pool # and Agency ID (if required) match Member's servicing system
❑ If applicable, FHA/VA case numbers match Member's servicing system

### Member Information Standards

❑ All Member Information (including Contact Information) on MERS® System is current and accurate.

# Appendix B

## Sample Documents

MERS does not mandate specific language changes to mortgage loan documents. However, the following three requirements must be satisfied:

1) Legal title to the mortgage lien or the lien of other security agreements must be vested in Mortgage Electronic Registration Systems, Inc., a Delaware stock corporation with an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

2) The 18-digit mortgage identification number ("MIN") required for each loan registered on the MERS® System, as well as the SIS telephone number, must be placed on the cover page (or first page if there is no cover page) of each of the following documents: (a) mortgage or deed of trust, (b) other security instruments, (c) assignment of security instruments to or from MERS, (d) lien releases or reconveyances and (e) any other instruments recorded in the public land records in which MERS has a legal interest. Placement of the MIN on other loan documentation is optional for the Lender.

3) Notices provisions in the mortgage, deed of trust and other security instruments should be modified to add Mortgage Electronic Registration Systems, Inc.

MERS is not rendering legal advice to Lenders. The following materials are provided to give Lenders guidance on the changes that may be appropriate to achieve our requirements. Specific state or local recording laws, and agency or investor requirements, may require other changes to the documents. Lenders and their counsel are free to make other changes that they believe are necessary or appropriate to conform their documents to the requirements of the MERS® System.

Following are sample changes to these documents:

- MOM Deed of Trust or Mortgage
- Corrective Affidavit for Assignment
- Corrective Affidavit for Security Instrument
- Loan Security Agreement
- For Co-ops:
  - UCC-1 Naming MERS as the Original Secured Party
  - UCC-3 Assigning Security Interests **to** MERS
  - UCC-3 Assigning Security Interests **from** MERS
  - UCC-3 Termination Agreement

Sample documents are available on the MERS website at www.mersinc.org:

- Sample MOM Deed of Trust
- Sample MOM Mortgage
- Sample Assignment of Mortgage **to** MERS
- Sample Assignment of Mortgage **from** MERS
- Sample Lien Release
- Sample Loan Modification Agreement
- Sample Consolidation, Extension and Modification Agreement
- Sample California Assignment MERS to MERS
- Sample Subordination Agreement
- Sample Subordination of Lien
- Sample Security Deed

# Sample Changes to Deed of Trust or Mortgage naming MERS as the Original Mortgagee (MOM Document)

The MERS 18-digit MIN must be visible on the Security Instrument. Place the MIN to the right of the form title, but not within the top recording margin or on the right margin.

The specific language and placement may vary from state to state. Below is just a generic sample of what changes may need to be made. Please check with your documentation preparation vendor for state specific forms.

## *In the Definitions section:*
*MERS as Grantee/Mortgagee language; e.g.*

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the [grantee/beneficiary/mortgagee] under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

## *In the granting clause:*
*MERS noted as grantee solely as nominee for lender; e.g.*

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby [mortgage,] grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in

*or*

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in

*Add Borrower consent sentence; e.g.*

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

# Sample Corrective Affidavit for Assignment



> Beneficiary if
> using a Deed
> of Trust

## MORTGAGEE'S AFFIDAVIT

The undersigned, _____, does hereby depose and say as follows:

1.    That I am an authorized officer of the mortgagee (or assignee), Mortgage Electronic Registration Systems, Inc.

2.    That this Affidavit refers to the Assignment from <u>(insert name of Assignor)</u> to Mortgage Electronic Registration Systems, Inc., in relation to property located at <u>(insert property address, city and state)</u>, dated _____ and recorded at the <u>(insert name of recording office)</u> at Book _____, Page _____.

3.    That the Mortgage Identification Number (MIN) was either omitted or incorrect on said Mortgage (or assignment).

4.    That the correct MIN for the mortgage (or assignment) is MIN _____, and that the MERS telephone number to call for information when using this MIN is (888) 679-6377.

Signed this _____ day of _____, 200_

(signature line_____)

APPLICABLE STATE NOTARY CLAUSE

# Sample Corrective Affidavit for Security Instrument



> Beneficiary if
> using a Deed of
> Trust

## MORTGAGEE'S AFFIDAVIT

The undersigned, _____, does hereby depose and say as follows:

5.    That I am an authorized officer of the mortgagee (or assignee), Mortgage Electronic Registration Systems, Inc.

6.    That this Affidavit refers to the Mortgage from (insert name of borrower) to Mortgage Electronic Registration Systems, Inc. as nominee for (insert name of lender, it successors and assigns), in relation to property located at (insert property address, city and state), dated _____ and recorded at the (insert name of recording office) at Book _____, Page _____.

7.    That the Mortgage Identification Number (MIN) was either omitted or incorrect on said Mortgage (or assignment).

8.    That the correct MIN for the mortgage (or assignment) is MIN _____, and that the MERS telephone number to call for information when using this MIN is (888) 679-6377.

Signed this _____ day of _____, 200_

(signature line_____)

APPLICABLE STATE NOTARY CLAUS

# Sample Loan Security Agreement

> MIN: 1000XXX-XXXXXXXXXX-X
> MERS Phone: 1-888-679-6377

Lender's Loan Number: XXXXXXXX

**Loan Security Agreement**

THIS AGREEMENT, made DATE XXXXX, between ABC LENDER CORPORATION, incorporated under the laws of the State of _____, and having any office at LENDERS ADDRESS, (the BANK) and BORROWER AND CO-BORROWER, (Debtor) residing at: BORROWERS ADDRESS

I.        Representations of Debtor:

1.        Debtor owns XXX shares of capital stock of XYZ VILLAGE OWNERS, INC. (the Corporation) as evidenced by Certificate Number XXXXXX of the Corporation (the "Stock") allocated to Apartment (the "Apartment") XXXXXXX in the building known as XXXXXXX, CityXXXX, ST, ZIP. And is the tenant under the occupying proprietary lease (the "Lease") of the Apartment.

2.        As evidenced by a note (the "Note") dated simultaneously with this Agreement, Debtor is obligated to pay to the Bank the principal amount with interest as provided in the Note (which Principal amount and interest and any sums advanced the Bank pursuant to the terms of this Agreement are called the "debt").

Debtor hereby covenants and agrees as follows:

> Language, as indicated on the
> UCC-1 or UCC-3

II.        Security:

Debtor has simultaneously with this Agreement deposited with the Bank, the Stock, and the Lease and as security for the payment of the debt, Debtor hereby grants to *Mortgage Electronic Registration Systems, Inc., solely as nominee For the Bank, its successors and assigns,* a security interest in, and a general lien upon, said Stock and Lease and all personal property and fixtures (other than household, furniture and furnishings) of debtor, now or hereinafter attached to, or used in connection with, the apartment (collectively called the "Security").

III.        Defaults:

The whole of the principal sum and interest shall become due at the option of the Bank upon the occurrence of any of the following events of default:

1.        Failure to Pay.  Debtor fails to make any payment required under the Note within thirty (30) days after the date the payment become due; or

2.        Default Under Lease.  Debtor does not cure any default under the Lease within the time periods, if any specified within a reasonable time; or

3.        Cancellation, Surrender or Assignment of Lease. Debtor attempts to cancel, surrender or assign the Lease prior to maturity of the Note, or notice is given by the Corporation that the Lease is to be cancelled or terminated; or

4.        Failure to Deliver Security Instruments.  Debtor fails to execute and deliver any instrument required by the Bank to perfect or protect its security interest in the Security or to pay any filing or recording fees owing in connection with the perfection of the security interest; or . .

# Sample UCC-1 Naming MERS as the Original Secured Party



**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

{Use Filer Address, not MERS}

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Mortgage Electronic Registration Systems, Inc.

P.O. Box 2026    Flint    MI    48501-2026    USA

Name MERS as Secured Party

18-digit MIN and
Servicer Identification System Phone Number

MERS MIN 100xxxx-xxxxxxxxxx-x    MERS Phone 888-679-6377

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# Sample UCC-3 Assigning Security Interests to MERS when MERS is Not Named as the Original Secured Party

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ {Use Filer Address, not MERS}

⌐

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☐ REAL ESTATE RECORDS |
|---|---|

2. ☐ **TERMINATION**: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION**: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☑ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c, and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION)**: This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only **one** of these two boxes.
Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Mortgage Electronic Registration Systems, Inc. | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 2026 | Flint | MI | 48501-2026 | USA |

| 7d. TAX ID #   SSN OR EIN | ADD'L INFO RE | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | ORGANIZATION DEBTOR | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE)**: check only **one** box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

⌐ Current Secured Party of Record

18-digit MIN and
Servicer Identification System Phone Number

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Name of Company Assigning Loan to MERS | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
MERS MIN 100xxxx-xxxxxxxxxxx-x     MERS Phone 888-679-6377

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

# Sample UCC-3 Assigning Security Interests from MERS when transferred to a non-MERS entity

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ (Use Filer Address, not MERS)

L                                                              ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|

| 2. ☐ | TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement |
|---|---|
| 3. ☐ | CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
| 4. ☑ | ASSIGNMENT (full or partial) Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9 |

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address. Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name. Give record name to be deleted in item 6a or 6b.   ☐ ADD name. Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Name of Non-MERS Company to which Loan is Assigned | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |

| 7d. TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

| Name and address of new Secured Party | 18-digit MIN and Servicer Identification System Phone Number |
|---|---|

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Mortgage Electronic Registration Systems, Inc. | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA |
|---|
| MERS MIN 100xxxx-xxxxxxxxxxx-x    MERS Phone 888-679-6377 |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

# Sample of UCC-3 Termination, When Debt is Paid in Full

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ (Use Filer Address, not MERS)

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE #

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☐ REAL ESTATE RECORDS

2. ☑ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of this Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

4. ☐ ASSIGNMENT (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b. ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION.

| | | | |
|---|---|---|---|
| 6a. ORGANIZATION'S NAME | | | |

| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION.

| | |
|---|---|
| 7a. ORGANIZATION'S NAME | |

| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned

┌─────────────────────────────────────────────┐
│ 18-digit MIN and                            │
│ Servicer Identification System Phone Number │
└─────────────────────────────────────────────┘

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

| | |
|---|---|
| 9a. ORGANIZATION'S NAME | |
| Mortgage Electronic Registration Systems, Inc. | |

| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA

MERS MIN 100xxxx-xxxxxxxxxx-x    MERS Phone 888-679-6377

**FILING OFFICE COPY** — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

# Glossary

| | |
|---|---|
| *Agency ID* | A number assigned by a government agency to uniquely identify a mortgage company. |
| *Assignment* | A transfer to another of any property, real or personal, or of any rights or estates in said property. |
| *Associated Member* | A Member that has been granted inquiry only access to loan information by the Servicer/Subservicer of a mortgage registered on MERS. |
| *Batch* | A group of one of more MINs identified to be included in a Transfer of Beneficial or Servicing Rights transaction. |
| *Batch File* | A system-to system transaction used to update the MERS® System. |
| *Beneficial rights transfer* | A transfer of the security interest under the mortgage or deed of trust. These transfers are tracked for MERS Members on the MERS® System. |
| *Bulk transfer* | The process of transferring the servicing rights of multiple loans on the MERS® System in a one-time transaction. |
| *CEMA* | Consolidation, Extension, and Modification Agreement. |
| *Check digit* | The final digit of the 18-digit Mortgage Identification Number (MIN), which is calculated using the MOD 10 Weight 2 algorithm. |
| *Deactivation* | When a loan becomes inactive on the MERS® System for one of the following reasons:<br>• Paid in Full (includes payoff, deed in lieu, short sale, etc.)<br>• Transfer to non-MERS Servicer<br>• Involuntary transfer/default by Servicer<br>• Involuntary transfer/default by subservicer<br>• Foreclosure Complete<br>• Reinstated or modified (option 1), not assigned back to MERS |
| *DTD* | Document Type Definition. A file that defines the "markup language" that will be used to describe the data. It defines and names the elements that can be used in the document, the order in which the elements can appear, the element attributes that can be used, and other document features. |
| *EDI* | Electronic Data Interchange. The system-to-system exchange of business transactions between one or more business partners in a standard format. |
| *ETA* | Electronic Tracking Agreement. An agreement that is used when a mortgage originator pledges mortgages to a warehouse lender as collateral through a line of credit or other financing arrangement. |
| *FIPS Code* | The code assigned by the Federal Information Processing Standards (FIPS) Publications issued by the National Institute of Standards and Technology (NIST) to represent a county or other entity treated as an equivalent legal and/or statistical subdivision of the 50 states, District of Columbia, and the possessions and freely associated areas of the United States. |
| *Flat file format* | This is the optional proprietary format for system-to-system input to the MERS® System. Members that are not X12 capable can use this format. |
| *Flow loan registration* | A loan registered on the MERS® System less than 270 days from the note date. |
| *Flow TOS/TOB* | A simultaneous transfer of beneficial rights and servicing rights to an Option 2 Investor. See Flow transfer of servicing for additional information. |

| Flow transfer of servicing | A transfer of servicing is defined by a Purchase and Sale Agreement that identifies a commitment to deliver a specified dollar volume (unpaid principal balance) of servicing on a specific delivery schedule associated with the sale of beneficial rights. MERS defines flow as a Transfer Date *less than* 270 days from the Note Date. There is no fee for this transaction nor limitations to the number of times a MIN can be included in Flow Transactions. |
|---|---|
| Foreclosure status | The field reflecting the current status of a MIN in foreclosure on the MERS® System. "Only the "Foreclosure Complete"" and "Reinstated or modified (option 1), not assigned back to MERS" statuses transaction will deactivate the MIN in foreclosure pending status. The following is a list of MERS foreclosure statuses:<br>• Foreclosure pending (option 1), assigned to Servicer<br>• Foreclosure pending (option 2), retained on the MERS® System<br>• Reinstated or modified (option 1), assigned back to MERS<br>• Reinstated or modified (option 1), not assigned back to MERS<br>• Reinstated or modified (option 2)<br>• Foreclosure complete<br>• Foreclosure status reset |
| FTP | File Transfer Protocol |
| Funding date | *Funding Date* is defined as the date the borrower becomes obligated for the debt and interest starts to accrue. In some states, this may be different from the date the borrower signs the note, or the date the note is drawn. |
| General public | Refers to any non-MERS Member who requests information. Only selected information will be accessible through an automated servicer identification system and the customer must provide required information to activate and release requested information. |
| Interim funder interest | The financial interest on a loan that an organization has prior to the sale of the loan to the permanent Investor. Examples of organizations are warehouse lenders, Wall Street firms, and other parties that extend interim funding to originators. |
| Investor | The owner of the beneficial interest in a loan. |
| Lender | The payee on the note. |
| Lien release | An instrument releasing the security interest recorded in the county land records. |
| Line of Business | The types of business in which a Member is active on the MERS® System. These are listed on the Member's Member Profile. |
| Member | Refers to all organizations whose signed MERS Membership Application has been submitted and approved, and whose fees are current, approved members of MERS. |
| Member profile | MERS-specific information about a MERS Member that is required at the time of initial setup. The member profile indicates the Member's MERS business process preferences, billing, and other information. |
| MERS | MERSCORP, Inc., which owns and operates the MERS® System and MERS® eRegistry, and Mortgage Electronic Registration Systems, Inc., its wholly owned and bankruptcy remote subsidiary, which acts as the mortgagee of record in the public land records and as nominee for the lender and its successors and assigns. |
| MERS® 1-2-3 | A complete online solution to achieve MERS® Ready status for Lenders that sell loans servicing-released. Through interfaces with approved document preparation companies, it generates a MIN to be presented on a MOM security instrument or assignment. It also warehouses data to pre-populate the fields on the MERS Registration page, thereby eliminating approximately 80% of the required data entry. |
| MERS actual Transfer Date | The date servicing of the loans is transferred in the MERS database. This date will be the same as the servicing Transfer Date unless the buyer does not confirm the transfer on time. |
| MERS® eRegistry | An electronic note registry that serves as the system of record to identify the current controller and location of the authoritative copy of an electronic note. |

| MERS® Link | Browser-based access to the MERS® System to retrieve information regarding about the current Servicer of a mortgage registered on the MERS® System. If supported by the Servicer, it may have a "hot link" to the Servicer's web site for Customer Service information. MERS® Link also can be accessed via the American Land Title Association web site or through a subscription to the service |
|---|---|
| MERS® Lite Member | A lender that has signed a MERS Member Agreement solely so that it can sell loans with MERS as the nominee for the lender on the security instrument to other MERS Members. This type of Member is typically a small lender that sells servicing-released within 30 days of loan closing. |
| MERS®® OnLine | Browser-based access to the MERS® System, found at www.mersonline.org. |
| MERS® System | An electronic registry that tracks changes in loans servicing and beneficial ownership rights. Member companies update the registry via MERS® OnLine (the browser-based interface) or through batch file interfaces. |
| MIN | Mortgage Identification Number. The MIN is an 18-digit number composed of the 7-digit Organizational ID, the 10-digit sequence number, and the check digit. |
| MIN archival | The process that removes MINs that have been deactivated on the MERS® System. Limited information is still available on the MIN through the MERS SIS and MERS® Link. |
| MIN status | The field reflecting the reason for current status of a loan on the MERS® System. |
| MOM | MERS as the Original Mortgagee. Fannie Mae and Freddie Mac language written into security instruments that establishes MERS as the Original Mortgagee and nominee for the Lender, its successors and assigns. |
| My MERS | The MERS® OnLine functionality that allows Members to create a list of frequently used Org IDs. |
| Non-Member passive Investor | An Investor that is not a Member of MERS and performs no active functions on the MERS® System. |
| Note date | Note Date is the date on the Note. In some states, the date the borrower signs the note, or the date the note is drawn, may or may not be the actual date on which interest begins to accrue (see Funding Date). |
| Option 1 (beneficial rights) | The lender/seller of the beneficial interest initiates the transfer of beneficial rights outside of MERS (e.g., using MIDANET or MORNET). The Investor sends confirmation of the transfer to MERS through an X12 transaction. Once the X12 file is submitted, it cannot be canceled. Interim funding interests are released automatically when the X12 transaction is processed by the MERS® application System. |
| Option 1 MIN cycling | The automated transaction that reprocesses MINs that have been rejected due to reason of non-registration, when delivery has been attempted to an Option 1 Investor. The cycle and reprocess occurs for 10 calendar days from the effective Transfer Date. |
| Option 2 (beneficial rights) | In the Option 2 process, the current Investor, Servicer, or Subservicer creates a beneficial rights transfer. Then the new Investor confirms the transfer. Interim funding interests must be released separately. |
| Optional EDI format | See Flat File format. |
| Organization Identification Number (or Org ID) | A MERS assigned seven-digit number uniquely identifying a Member of MERS. The seven digits of the Org ID comprise the first seven digits of the 18-digit MIN number. |
| Original borrower | The entity listed as the borrower on the original note. May be different from the current borrower on a loan if the loan has been assumed. |
| Original note holder | The entity listed as the payee on the original note. |
| Passive Investor | An Option 2 Investor that is a Member of MERS but does not actively confirm transfers to it on the MERS® System. |

| *Pool number* | The number assigned to a grouping of loans by the Investor; required for securitization. |
|---|---|
| *Quality Review Flag* | An indicator that the information required to perform a lien release or an assignment is accurate and complete on the MERS® System. Must be set within 12 months of Registration Date. |
| *Reactivation* | The process of activating a previously deactivated MIN for the same borrower, property, and lien type. MINs deactivated by Paid in Full or, Foreclosure Complete or CEMA cannot be reactivated. |
| *Recordation* | The act of recording the loan assignment and/or security instrument in the public land records. The current Servicer is responsible for entering the recording information on the MERS® System. |
| *Registration* | The process of entering required information into the MERS® System to report to MERS that a loan exists with MERS as the Mortgagee. |
| *Registration Reversal* | The process of reversing a loan that was registered in error. |
| *Sale Date (servicing rights)* | In a servicing transfer, the date the contractual servicing rights are transferred from seller to buyer. This date is stipulated in the Purchase and Sale Agreement. |
| *Seasoned loan registration* | A loan registered on the MERS® System 270 days or more after the note date. |
| *Seasoned transfer of servicing rights* | A transfer of servicing rights is defined by a Purchase and Sale Agreement that identifies a predefined portfolio of servicing to be sold on a specific Sale Date and transferred on a specific Transfer Date. MERS defines *"seasoned"* as Transfer Date of 270 days or greater from the note date. A seasoned loan transfer fee is charged to the seller for seasoned servicing transfers reported to the MERS® System. |
| *Security instrument (SI)* | A formal legal document securing repayment of a debt. |
| *Security instrument date* | The date of the mortgage or deed of trust. |
| *Security instrument recording date* | The date the security instrument was recorded in the county recorder's office. |
| *Security instrument type flag* | Indicates whether the security instrument is a deed of trust, mortgage, or land contract. |
| *Sequence number* | The 10-digit number assigned by the MERS Member to uniquely identify a loan. The 10 digits of the sequence number comprise the 8th through 17th digits of the 18-digit MIN number. |
| *Servicer* | The entity that has the contractual right to service a loan and responsibility for the servicing of the loan for the Investor. In some cases the Servicer contracts with a Subservicer. If so, both the Servicer and the Subservicer must be MERS Members to register the loans on the MERS® System. |
| *Servicer Identification System (SIS)* | Telephone-based access to the MERS® System. It allows anyone to query the system to obtain information on the current Servicer on a loan. This system was previously named the Voice Response Unit (VRU). |
| *Servicing rights* | The ownership rights of the current Servicer for servicing loans. |
| *Servicing rights transfer* | The sale of servicing rights from the current Servicer to a new Servicer. |
| *SIS number* | Servicer Identification System number: 888-679-MERS(6377) |
| *Standard EDI format* | Accredited Standards Committee X12 standard. |
| *Subservicer* | The entity with whom the Servicer has contracted to service its loans. The Subservicer is not the legal owner of servicing rights. |
| *System to System* | An alternative to using MERS® OnLine, it's a method of transmitting information to MERS directly from a Member or vendor system to the MERS® System. This includes flat files and EDI X12 transmissions. |
| *TOB* | Transfer of Beneficial rights. See Beneficial Rights Transfer. |
| *TOS* | Transfer of Servicing rights. See Servicing Rights Transfer. |

| *TOS/TOB Combo* | A simultaneous transfer of beneficial rights and servicing rights to the same Option 2 Investor. Both flow and seasoned loans may be included in this transfer. |
|---|---|
| *Transfer cancellation date* | The date the transfer is canceled on the MERS® System if all MIN confirmations and rejections are not received. |
| *Transfer creation date* | The date that the transfer is initiated on the MERS® System. |
| *Transfer Date (beneficial rights)* | The date beneficial ownership of a loan is transferred from one Investor to another. In most cases this will be concurrent with the funding date by the new Investor. |
| *Transfer Date (servicing rights )* | According to the Purchase and Sale Agreement between the buyer and the seller, the date the responsibility for servicing the loans passes from seller to buyer. |
| *Trustee* | One who holds title to real property under the terms of a deed of trust. |
| *Update* | A change to information outside of a previously defined business process . (corrections, updates to previously null fields, etc.) |
| *Vendor* | A MERS Member who performs various transactions on the MERS® System on behalf of another Member under a contractual agreement. |
| *Voice Response Unit (VRU)* | The system now named Servicer Identification System (SIS). See explanation above. |
| *X12 format* | A predefined non-proprietary layout at a transaction set level.  This is the recommended format for system-to-system transmissions to the MERS® System. |
| *XML* | Extensible Markup Language. XML is a markup language designed specifically for delivering information over the World Wide Web. In creating an XML document, the user creates and assigns the element names. |

Revision History:
Revised 6/5/06 for Release 12.0 (see draft for changes)
Revised 6/4/07 for Release 14.0 (see draft for changes)

# EXHIBIT E



## *State-by-State*

# MERS Recommended Foreclosure Procedures

**Updated 2002**

**Corporate Offices**

**1595 Spring Hill Rd., Suite 310**
**Vienna, VA  22182**

**tel (800) 646-6377**
**fax (703) 748-0183**

**www.mersinc.org**



# TABLE OF CONTENTS

INTRODUCTION _____ 3

RECOMMENDED FORECLOSURE PROCEDURES:

Alabama _____ 8
Alaska _____ 10
Arizona _____ 12
Arkansas _____ 14
California _____ 16
Colorado _____ 18
Connecticut _____ 20
Delaware _____ 22
District of Columbia _____ 24
Florida _____ 26
Georgia _____ 28
Hawaii _____ 30
Idaho _____ 32
Illinois _____ 34
Indiana _____ 36
Iowa _____ 38
Kansas _____ 40
Kentucky _____ 42
Louisiana _____ 44
Maine _____ 46
Maryland _____ 48
Massachusetts _____ 50
Michigan _____ 52
Minnesota _____ 54
Mississippi _____ 56
Missouri _____ 58
Montana _____ 60
Nebraska _____ 62
Nevada _____ 64
New Hampshire _____ 66
New Jersey _____ 68
New Mexico _____ 70
New York _____ 72
North Carolina _____ 74
North Dakota _____ 76
Ohio _____ 78
Oklahoma _____ 80
Oregon _____ 83
Pennsylvania _____ 85
Rhode Island _____ 87
South Carolina _____ 89
South Dakota _____ 91
Tennessee _____ 93
Texas _____ 95
Utah _____ 97
Vermont _____ 99
Virginia _____ 102
Washington _____ 104
West Virginia _____ 106
Wisconsin _____ 108
Wyoming _____ 110

## Introduction

MERS has put together this Foreclosure Manual to provide a state by state guideline for our Members to follow when foreclosing a mortgage loan in the name of MERS. Each state's procedure was developed jointly with local counsel in that respective state. There may be future versions of this Manual if needed. If you have any questions about this Foreclosure Manual, please contact MERS.

Sharon McGann Horstkamp
Corporate Counsel

## What is MERS?

MERS serves two purposes. First, it is a national electronic registry for tracking servicing rights and beneficial ownership interests in mortgage loans. Second, MERS acts as nominee (a form of agent) for the servicer and beneficial owner of a mortgage loan in the public land records. MERS is designed to operate within the existing legal framework in all U.S. jurisdictions and did not require any changes to existing laws.

How is this made possible? Its members appoint MERS as the mortgagee of record on all loans that they register on the MERS System. This appointment eliminates the need for any future assignments when servicing rights are sold from one MERS Member to another. Instead of preparing a paper assignment to track the change in the county land records, all subsequent transfers are tracked electronically on the MERS System.

MERS does not create or transfer beneficial interests in mortgage loans or create electronic assignments of the mortgage. What MERS does do is eliminate the need for subsequent recorded assignments altogether. The transfer process of the beneficial ownership of mortgage loans does not change with the arrival of MERS. Promissory notes still require an endorsement and delivery from the current owner to the next owner in order to change the beneficial ownership of a mortgage loan.

MERS is a Delaware corporation with a broad base of ownership from the mortgage industry. American Land Title Association is among our owners and has a seat on the MERS Board of Directors. Other owners with substantial investments in MERS include the Mortgage Bankers Association of America (MBA), Fannie Mae, and Freddie Mac. These parties, along with Ginnie Mae, decided several years ago that MERS would be a major benefit to the mortgage industry and worked together to create the MERS of today.

## How does MERS become the Mortgagee of Record?

MERS is put in this position in one of two ways: the first is by an assignment from a lender or servicer to MERS. This method is usually associated with bulk transfers of servicing. The second way is with the lender naming MERS as the mortgagee of record as nominee for itself (and its successors and assigns) in the original security instrument at the time the loan is closed. We call this second option "MOM", which stands for MERS as Original Mortgagee.

4

"MOM" was a significant milestone for MERS and the mortgage industry. Fannie Mae, Freddie Mac, and Ginnie Mae have each approved the use of MERS as original mortgagee as nominee for a lender on the security instrument for loans sold to them and registered on the MERS System.

In order to make MOM work, changes were made by Fannie Mae and Freddie Mac to their uniform security instruments allowing MERS to be named as the mortgagee in a nominee capacity for the lender. First, to reflect the interrelationship of the promissory note and mortgage and to ensure these two instruments are tied together properly, the recital paragraph names MERS, solely as nominee for Lender, as beneficiary. Second, it is made clear that the originating lender rather than MERS is defined as the "Lender". This change was made so that everyone understands that MERS is not involved in the loan administration process. Third, as mortgagee of record, MERS needs to have the authority to release the lien of security instrument, or if necessary, foreclose on the collateral on behalf of the lender. Such authority is provided by adding a paragraph to the security instrument informing the borrower that MERS holds only legal title to the interests granted by the borrower. It also informs the borrower that, if necessary to comply with law or custom, MERS may exercise the right to foreclose and sell the property and may take any action required of the Lender to release or cancel the security instrument.

Once MERS is named in the original security instrument or by way of an assignment, the document is then recorded in the appropriate public land records. From this point on, no subsequent assignments of the mortgage to a MERS member needs to be recorded. MERS remains in the land records, as mortgagee, throughout the life of the loan so long as servicing is not sold to a non-MERS member. All subsequent transfers of ownership in mortgage loans and servicing rights for that loan are tracked electronically between MERS members through the MERS System. This process eliminates the opportunity for a break in the chain of title.

Moreover, unless a MERS member transfers servicing rights to a loan registered on the MERS System to a non-MERS member, the loan stays on the system until it is paid off. The process to transfer servicing rights between MERS members requires an electronic confirmation from the buyer. It begins with the seller entering loan transfer information into the system, including the Mortgage Identification Number (explained below), the new servicer organizational identification number, the sale date, and the transfer effective date. The buyer then must submit a confirmation acknowledgment to the system. The old servicer and the new servicer are still required to notify the homeowner in writing when loan servicing is traded as required under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq. A loan is de-registered from the system only if its servicing rights to a loan are transferred to a non-MERS member.

With every new loan that is registered on the MERS System, it becomes more likely that you will come in contact with a mortgage loan having MERS as the mortgage holder in the chain of title. MERS is put in this position in one of two ways: the first is by an assignment from a lender or servicer to MERS. This method is usually associated with bulk transfers of servicing. The second way is with the lender naming MERS as the mortgagee of record as

5

nominee for itself (and its successors and assigns) in the original security instrument at the time the loan is closed. We call this second option "MOM", which stands for MERS as Original Mortgagee.

"MOM" was a significant milestone for MERS and the mortgage industry. Fannie Mae, Freddie Mac, and Ginnie Mae have each approved the use of MERS as original mortgagee as nominee for a lender on the security instrument for loans sold to them and registered on the MERS System.

In order to make MOM work, changes were made by Fannie Mae and Freddie Mac to their uniform security instruments allowing MERS to be named as the mortgagee in a nominee capacity for the lender. First, to reflect the interrelationship of the promissory note and mortgage and to ensure these two instruments are tied together properly, the recital paragraph names MERS, solely as nominee for Lender, as beneficiary. Second, it is made clear that the originating lender rather than MERS is defined as the "Lender". This change was made so that everyone understands that MERS is not involved in the loan administration process. Third, as mortgagee of record, MERS needs to have the authority to release the lien of security instrument, or if necessary, foreclose on the collateral on behalf of the lender. Such authority is provided by adding a paragraph to the security instrument informing the borrower that MERS holds only legal title to the interests granted by the borrower. It also informs the borrower that, if necessary to comply with law or custom, MERS may exercise the right to foreclose and sell the property and may take any action required of the Lender to release or cancel the security instrument.

Once MERS is named in the original security instrument or by way of an assignment, the document is then recorded in the appropriate public land records. From this point on, no subsequent assignments of the mortgage to a MERS member needs to be recorded. MERS remains in the land records, as mortgagee, throughout the life of the loan so long as servicing is not sold to a non-MERS member. All subsequent transfers of ownership in mortgage loans and servicing rights for that loan are tracked electronically between MERS members through the MERS System. This process eliminates the opportunity for a break in the chain of title.

Moreover, unless a MERS member transfers servicing rights to a loan registered on the MERS System to a non-MERS member, the loan stays on the system until it is paid off. The process to transfer servicing rights between MERS members requires an electronic confirmation from the buyer. It begins with the seller entering loan transfer information into the system, including the Mortgage Identification Number (explained below), the new servicer organizational identification number, the sale date, and the transfer effective date. The buyer then must submit a confirmation acknowledgment to the system. The old servicer and the new servicer are still required to notify the homeowner in writing when loan servicing is traded as required under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. $\S$ 2601 et seq. A loan is de-registered from the system only if its servicing rights to a loan are transferred to a non-MERS member.

## Why Foreclose in the Name of MERS

The mortgage establishes the remedy to foreclose and sell the property if the borrower does not pay back the amount loaned to the borrower according to schedule. Typically, the loan servicer, as the mortgagee of record, is the party that initiates the foreclosure proceedings on behalf of the investor. When MERS is the mortgagee of record, the foreclosure can be commenced in the name of MERS in place of the loan servicer. For another entity to foreclose, an assignment is required from MERS to the other entity.

Establishing MERS as mortgagee of record will not cause any significant changes to current foreclosure practices in any state when the beneficial owner wants to proceed with foreclosures in the name of MERS. Just take a look at the recommended procedures.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR ALABAMA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are foreclosed non-judicially under power of sale. Local counsel advises that a foreclosure can be brought in the name of MERS. Notice of the foreclosure sale is published with Mortgage Electronic Registration Systems, Inc. (MERS) named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require the promissory note be endorsed in blank when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. However, we have been advised that sometimes there is an endorsement of the promissory note to the servicer prior to foreclosure. We recommend that the agencies' policies be followed.

At the foreclosure sale, the certifying officer will instruct the foreclosing attorney regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then the auctioneer will be instructed to deed the property directly to the investor. We have been advised that this is the same procedure followed when foreclosing in the name of the servicer. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the auctioneer deed can be issued to the servicer. This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR ALASKA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are typically used and are foreclosed non-judicially by the power of sale contained therein. MERS local counsel advises that a foreclosure can be done in the name of MERS. Local counsel confirmed with First American Title Insurance Company that with a few minor caveats, foreclosing in the name of MERS should not present any problems.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the substitution of trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies' policy is that the promissory note is endorsed in blank when the seller/servicer sells the loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes the Note is endorsed to the servicer prior to the foreclosure, but unless it is legally required, the Note should remain endorsed in blank. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The trustee, who is typically a title company, commences the foreclosure by executing and recording the Notice of Default. The Notice of Default is filed and published the same way with the same required information except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing

entity. At the foreclosure sale, an "offset bid" is entered on behalf of MERS who is acting in the capacity as "agent" for the servicer. Local counsel advises that the Beneficiary's Declaration of Default can be modified to describe the relationship of MERS and the Servicer. This should enable the servicer, instead of MERS, to be the named grantee of the Trustee's Deed. The servicer can then issue a deed to the investor. This procedure is consistent with the current two-deed foreclosure practice.

While initially there may be some hesitation to accept an "offset bid" by the servicer, MERS local counsel states that usually a title company is willing to recognize the substance of who actually owns the loan rather than the form of the record ownership.[1] In that instance, if the servicer is successful at the foreclosure sale, the trustee's deed will be issued directly to the servicer.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer, by being the grantee of the trustee's deed, is able to commence the eviction. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[1] If the "offset bid" is not accepted, then the trustee's deed may need to be granted to MERS. If MERS takes title to the property, a subsequent deed should be executed to the investor as soon as possible.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR ARIZONA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the deed of trust that gives the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are generally foreclosed non-judicially under a power of sale in the security instrument. Local counsel advises that a foreclosure can be brought in the name of MERS. The Notice of Trustee's Sale is filed and published the same way it is when foreclosing in the name of the servicer except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity. It is important to note that the same procedures and state requirements that are required when foreclosing in the servicer's name still must be followed when foreclosing in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS. The substituted trustee is typically the foreclosing attorney.

The agencies (Fannie Mae, Freddie Mae and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells the loan to them. The note is to remain endorsed in the blank when a servicer commences foreclosure. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS for the investor. This is the same process that is used today when foreclosing in the servicer's name. We have been advised that the

current foreclosure procedure is a one-deed process with the investor directly taking title from the Trustee's Deed. Therefore, the MERS recommended procedure is the same as when foreclosing in the name of the servicer. The bid is made on behalf of the investor so that the Trustee's deed will be issued directly to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording or taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan, then the trustee's deed is not recorded to the investor until after the eviction is completed. The eviction is conducted the same way it would be conducted if the servicer foreclosures.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR ARKANSAS

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like a servicer , will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are generally foreclosed non-judicially under a power of sale in the security instrument. Local counsel advises that a foreclosure can be brought in the name of MERS. The Notice of Default is filed and published the same way it is when foreclosing in the name of the servicer except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS. The substituted trustee is typically the foreclosing attorney.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. The Trustee's deed will be issued directly to the assignee of the bid. We have been advised that the current foreclosure procedure is a two-deed process with the servicer taking title and then executing a subsequent deed to the investor. Therefore, the MERS recommended procedure is the same as the current practice of assigning the bid to the servicer. Because the MERS recommended procedure follows the same procedure that is used when the servicer

forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer, by being the grantee of the trustee's deed, can commence the eviction. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR CALIFORNIA

A deed of trust in which the Mortgage Electronic Registration Systems, Inc. (MERS) is named as beneficiary requires special non-judicial foreclosure procedures. MERS was created to avoid the cost and delays caused by assignments of mortgages and deeds of trust. To avoid the need to prepare and record an assignment with the County Recorder's office, MERS holds title as nominee for the true mortgagee/beneficiary of the mortgage/deed of trust and as transfers occur, they are recorded on the MERS computer in a book entry systems similar to the transfer of stocks.

The MERS procedure for tracking the ownership of mortgages has a direct effect on the foreclosure process. On MERS loans, MERS is shown as the record beneficiary and therefore a MERS foreclosure is brought in the name of MERS. However, at the time of sale the true beneficiary is determined by MERS and the Trustee's Deed Upon Sale is recorded in the name of that true beneficiary. There are no assignments, additional taxes or costs when foreclosing under the MERS' foreclosure procedures.

To achieve this result, the following non-judicial foreclosure guidelines are recommended:

On MERS loans, MERS will show as the beneficiary of record. Foreclosures should be commenced in the name of MERS. To effectuate this process, MERS has allowed each servicer to choose a select number of its own employees to act as officers for MERS. Through this process, appropriate documents may be executed at the servicer's site on behalf of MERS by the same servicing employee that signs foreclosure documents for non-MERS loans.

Until the time of sale, the foreclosure is handled in same manner as non-MERS foreclosures. At the time of sale, if the property reverts, the Trustee's Deed Upon Sale will follow a different procedure. Since MERS acts as nominee for the true beneficiary, it is important that the Trustee's Deed Upon Sale be made in the name of the true beneficiary and not MERS. Your title company or MERS officer can easily determine the true beneficiary. Title companies have indicated that they will insure subsequent title when these procedures are followed.

Normally, where the name of the grantee under the Trustee's Deed Upon Sale is different than the name of the foreclosing entity, the Trustee's Deed Upon Sale states that the "Grantee was not the foreclosing beneficiary." This designation triggers the imposition of transfer taxes on the sale. It is important to note that in a MERS foreclosure sale, even where the property reverts, the name of the grantee will be different than the name of the entity foreclosing. Nonetheless, the Trustee's

Version 1.1
November 1999

16

Deed Upon Sale should state that "The Grantee was the foreclosing beneficiary." This is because MERS merely holds title as nominee for the true beneficiary; it is the true beneficiary that has actually foreclosed and acquired title.

Finally, should a bankruptcy be filed, servicers should use the same procedures they use for other investor loans. Motions for Relief from Stay should be brought by the real party in interest, namely "Mortgage Electronic Registration Systems, Inc. as record holder and nominee for the true beneficiary _____." On Proofs of Claim, both the servicer and Mortgage Electronic Registration Systems, Inc. should be jointly named. The address to be used is the servicer's address so that all trustee payments go directly to the servicer.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR COLORADO

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. (MERS) has been around since 1998. The reason why it works is because when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the Deed of Trust that gives MERS the authority to foreclose. However, because Colorado differs from other states in that the Promissory Note controls, and MERS is not the beneficial note holder, we recommend foreclosing in the servicer's name by endorsing the Note to the servicer.

We are amending our prior recommended Procedure to foreclose in MERS name due to recent changes in the Colorado Foreclosure Statute. This revision was developed in conjunction with experienced foreclosure counsel. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are generally foreclosed non-judicially pursuant to a power of sale. In Colorado, the deed of trust names a Colorado public trustee rather than a private trustee. Local counsel advises that a foreclosure can be brought in the name of MERS. However, because the endorsement on the Note controls, and MERS holds the mortgage lien on behalf of the Note Holder, it is a better practice to foreclose in the Note Holder's name. That may be the servicer of the loan.. This does not impact MERS position as the mortgagee and no assignment from MERS to the servicer is necessary to initiate the foreclosure and the mortgage loan should remain registered on the MERS® System.

Keep in mind that the agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. However, in Colorado, the requirement is that the promissory note needs to be endorsed to the foreclosing entity, which is usually the servicer. Therefore, the note should be endorsed to servicer.

This switch in our recommendation is also predicated on the change in the Colorado Foreclosure Statute that now allows for a copy of the Note rather than the original Note to be produced together with a Certificate that can be filed by certain entities of which MERS does not fit into in its current corporate structure. The certificate states that the foreclosing entity is the owner of the Note/debt and is a qualified entity under the Statute to use a copy of the Note. Please consult with your own counselon how this change impacts your current foreclose procedure.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

MERS Local Counsel:

Caren Castle, Esq.
Castle & Castle, P.C.
Denver Place Plaza Tower
1099 18th Street, Suite 2300
Denver, CO 80202
Tel: (303) 299-1800
Fax: (303) 299-1808

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR CONNECTICUT

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. When the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that the authority is given to MERS to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially either by strict foreclosure or by a power of sale. MERS local counsel advises that a loan can be foreclosed in the name of MERS. It up to the judge to decide which method will be used. The caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS unless it is legally required to be endorsed to the foreclosing entity, and not just the preferred method.[3] If it is required to endorse the promissory note to the foreclosing entity, then the note may need to be endorsed to MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the

---

[3] Local Counsel advises us that certain judges take the position that the note and mortgage must be held by the same entity. This is typically considered to be the servicer because if the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

Version 1.1                                                                                           20
November 1999

same individual that signs the documents today for the servicer will continue to sign the documents, but now as an officer of MERS.

In a strict foreclosure, once the Judgement of Strict Foreclosure is entered, and the applicable redemption period has expired, a certificate of Foreclosure is filed on the land records that will reflect MERS as the property owner. MERS should remain in the land records for as short a time as possible. A subsequent deed should be prepared from MERS to the investor.[4] Alternatively, at the time of the entering of the judgment, if an assignment of judgment is executed by MERS, judgment could automatically be entered into the investor's name.

In a foreclosure by sale, a motion should be submitted to the judge requesting the judge that the servicer be allowed to bid at the auction. If it is the highest bid, then after approval of the sale by the Court, a closing will be scheduled whereby title should vest in the servicer.[5]

Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name for the investor, no additional taxes or recording fees are incurred.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the title holder. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the name of the title holder. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[4] Some Connecticut Revenue Officers have taken the position that a state conveyance tax is due on the subsequent deed from the servicer to the investor. MERS local counsel is currently appealing this issue.

[5] If a judge will not allow the servicer to "credit" bid, then a bid may be entered on behalf of MERS. Title will then vest with MERS momentarily until the deed to the investor is executed and recorded.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR DELAWARE

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. The same procedures and requirements that are followed when foreclosing in the name of the servicer are still followed when foreclosing in the name of Mortgage Electronic Registration Systems, Inc. The major difference is that the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[6]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS unless it is legally required to be endorsed to the foreclosing entity and not just the preferred method.[7]

---

[6] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

[7] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a sheriff's sale is held. The certifying officer will instruct the foreclosing attorney regarding the bid to be entered on behalf of MERS. If it is the successful bid, the sheriff will be instructed to execute a deed directly to the investor. This is the same method that is used when the servicer forecloses in its name. The sheriff then issues a sheriff's deed directly to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording or taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR DISTRICT OF COLUMBIA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially. Local counsel advises that a foreclosure can be brought in the name of MERS. The Notice of Sale is sent, filed and published the same way it is when foreclosing in the name of the servicer with the same required information except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. This is the same requirement when foreclosing a loan in the name of the servicer. We have found that it is not legally required to have the note endorsed to MERS prior to the foreclosure.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then an unrecorded assignment of the deed of trust to the investor is given to the trustee prior to the sale. This assignment allows the Trustee's Deed to be issued directly to the investor. We have been advised that this is the procedure used when foreclosing in the name of the servicer. Because the MERS recommended procedure follows the same

Version 1.1
November 1999

24

procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the eviction can be brought in the name of MERS. At this point, MERS holds only equitable title. Once the eviction is completed, then the investor can be substituted in as the party to receive the Trustee's Deed. Again, the same procedures should be followed as you do when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR FLORIDA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the mortgagee of record. It is the mortgage that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS is named as the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will be the ultimate owner of the note.[8]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced unless it is legally required to be endorsed to the foreclosing entity and not just the preferred method. If it is required to endorse the promissory note to the foreclosing entity, then the note may need to be endorsed to MERS. However, we have not found it a requirement in Florida that the Note needs to be endorsed to the foreclosing entity.[9]

---

[8] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

[9] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution from MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a foreclosure judgment to MERS is entered, a public sale is held. The Plaintiff (MERS) has the option of assigning the foreclosure bid either prior to the foreclosure sale or in the ten (10) day period between the sale and the issuance of the Certificate of Title. The assignment is done with a motion filed with the court, and a court order is entered. If the bid is assigned, the certificate of title is issued directly to the assignee. This is the same method that is used when the servicer forecloses in its own name. Because the MERS recommended procedure follows the same procedure that is used when the servicer foreclosures in its name, no additional recording or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, then proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

## MERS RECOMMENDED FORECLOSURE PROCEDURE FOR GEORGIA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Security Deeds are used and are generally foreclosed non-judicially pursuant to a power of sale. Local counsel advises that a foreclosure can be brought in the name of MERS. It is important to note that the same procedures and state requirements that are required to be followed when foreclosing in the servicer's name still must be followed when foreclosing in the name of MERS. The foreclosure proceeding is commenced by advertising the foreclosure in the official county newspaper once a week for four consecutive weeks prior to the date of the foreclosure sale. A notice is mailed to the debtor's residence at least 15 days prior to the sale date. You will continue to do everything that you normally do when foreclosing a mortgage in the servicer's name. The only difference is that the foreclosing entity is Mortgage Electronic Registration Systems, Inc.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution from MERS. In other words, the same individual that signs the documents today for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the sale, the certifying officer will instruct the foreclosing attorney to enter a bid on behalf of the servicer. This is the same process that is used today when

foreclosing in the servicer's name. If it is the successful bid, then the attorney will be instructed to execute the deed under power directly to the servicer. We have been advised that the current foreclosure procedure is a two-deed process with the servicer taking title and then executing a special warranty deed to the investor. Therefore, the MERS recommended procedure would conform to the current practice. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. The servicer is issued the deed under power and therefore commences the eviction in the servicer's name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of Mortgage Electronic Registration Systems, Inc. or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR HAWAII

Foreclosing a loan in the name of MERS is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures.    The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially[10]. MERS local counsel advises that a loan can be foreclosed in the name of MERS. The same procedures and state requirements that are followed when foreclosing in the name of the servicer are still followed when foreclosing in the name of Mortgage Electronic Registration Systems, Inc. The major difference is that the caption of the complaint will state Mortgage Electronic Registration Systems, Inc. in place of the servicer's name.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. A secondary market investor will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution from MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

---

[10] Freddie Mac has initiated a non-judicial program in Hawaii effective January 1, 1998.

After a foreclosure judgment to MERS is entered, a public auction is held. A bid is entered on behalf of MERS, and if the successful bid, then the Commissioner will be instructed that MERS has selected a nominee to be the ultimate purchaser of the property. (The nominee can be the servicer or the investor).

After the hearing to confirm the sale and the confirmation order, a deed is executed directly to the nominee. This is the same method that is used today when the servicer forecloses in its name. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording fees or taxes are incurred by foreclosing in the name of MERS. A conveyance tax and recording fee is paid on the transfer of the property from the commissioner to the nominee of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure had been filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR IDAHO

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Trust Deeds are used and are generally foreclosed non-judicially pursuant to a power of sale. Local counsel advises that a foreclosure can be brought in the name of MERS. It is important to note that the same procedures and requirements that are followed when foreclosing in the servicer's name must still be followed when foreclosing in the name of MERS. The Trustee must still file and record the Notice of Default and provide the grantor with a Notice of Sale. The Notice of Sale is published the same way is it when foreclosing in the name of the servicer except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. The note should remain endorsed in blank when the servicer commences foreclosure. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have not found that it is legally required that the note be endorsed to the foreclosing entity.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If it is the highest bid, then the trustee will be instructed by an instruction letter to execute the Trustee's Deed directly to the

investor. We have been advised that the current foreclosure procedure is a one-deed process with the trustee executing the Trustee's Deed directly to the investor. The MERS recommended procedure is the same procedure followed when foreclosing in the name of the servicer. Therefore, no additional recording or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan, then the Trustee's Deed may be issued to the servicer in order for the servicer to commence the eviction. Another option may be that the trustee's deed is not recorded to the investor until after the eviction is completed. The eviction should be conducted the same way it would be conducted if the servicer commenced the foreclosure.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR ILLINOIS

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. The caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. The body of the complaint should be the same as when foreclosing in the name of the servicer.

MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[11]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS unless it is legally required to be endorsed to the foreclosing entity and not just the preferred method. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend the agencies' policies be followed.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying

---

[11] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having its employees become certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered and the applicable redemption period expires, a foreclosure sale is held. A bid is entered on behalf of MERS, and if the successful bid, then the Certificate of Sale would be assigned to the investor. This assignment is not normally recorded. A confirmation hearing will be held confirming the sale. This is the same method that is used when the servicer forecloses in its name for the investor. After the entry of the Order of Confirmation, the holder of the Certificate of Sale is entitled to a deed. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the deed is not recorded until after the eviction is completed. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR INDIANA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS is named as the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note.[12] An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

---

[12] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having its employees become certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution from MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a foreclosure judgment to MERS is entered, MERS will assign the judgment and the right to bid to the servicer. This assignment of the judgment is filed with the Clerk of the Court in which the judgment is pending. A sheriff's sale is scheduled as a result of the filing of a praecipe for sale. The servicer will enter a bid as the bid assignee and if the highest bidder, the Return of Sale will reflect this. The assignment of the judgment allows the servicer to bid so that title can be taken directly by the servicer. The servicer can then convey a subsequent deed to the investor. Because the MERS recommended procedure closely follows the same procedure that is used when the servicer forecloses in its name, no additional transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. Because the foreclosure judgment is assigned to the servicer, the eviction can be brought in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR IOWA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Generally, mortgages are used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. The caption of the petition of foreclosure should name Mortgage Electronic Registration Systems, Inc. (MERS) as the plaintiff. The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement when a seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the substitution of trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After the foreclosure judgment to MERS is entered, there is a sheriff's foreclosure sale. At the sale, a bid would be entered on behalf of MERS, and if the bid is successful, MERS will receive a certificate of purchase which it will assign to the

servicer or the investor.[13]  The sheriff's deed is then issued directly to the servicer or investor.  Because the MERS recommended procedure follows the procedures used when foreclosing in the name of the servicer, no additional transfer taxes are incurred.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.  If it is an FHA-insured loan and an eviction is necessary, then the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer.  It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer.  The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS.  The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer.  If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[13] On a foreclosure without the right of redemption, there is no Certificate of Purchase issued. Instead, the foreclosure judgment should be assigned to the servicer or investor. To whom the judgment is issued will depend upon the instructions given from the servicer or investor. If the judgment is not assigned from MERS, this may cause title to be issued directly to MERS if a bid is entered on the behalf of MERS at the sheriff's sale. If title is then subsequently passed to a private investor, revenue stamps may be incurred.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR KANSAS

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. The caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require that the promissory note be endorsed in blank when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS unless it is legally required to be endorsed to the foreclosing entity and not just the preferred method. We have been advised that sometimes there is an endorsement of the note to the servicer prior to the foreclosure. However, we recommend that the agencies' requirements be followed.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, and the district court issues an order of sale, a notice of the sheriff's sale is published and a sale is then held. The certifying officer will instruct the foreclosing attorney as to the bid to be entered on behalf of MERS.

If the successful bid, the sheriff will issue a certificate of purchase to MERS. This certificate will then be assigned from MERS to the investor. This is the same method that is used when the servicer forecloses in its name. After the applicable redemption period, a deed will be issued directly to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR KENTUCKY

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. The caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a foreclosure sale is held. The certifying officer will instruct the foreclosing attorney regarding the bid to be entered on behalf of MERS. If it is the successful bid, it will be assigned to the investor by simple documentation that is signed by the foreclosing attorney. The bid assignment does

not need to be recorded. This is the same method that is used today when the servicer forecloses in its name.

The Motion to Confirm the sale is filed, and after the sale is confirmed, a deed will be prepared by the Master Commissioner to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording fees or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR LOUISIANA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are employed in Louisiana in real estate transactions and must be foreclosed judicially, usually by a proceeding known as "Executory Process." MERS local counsel advises that Louisiana law does not prohibit a loan from being foreclosed in the name of MERS.[14] When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender, its successors and assigns. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS becomes the mortgage holder.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[15]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them.[16] Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. However, it seems to be the standard practice that the blank endorsement is cancelled and the note is endorsed to the servicer to

---

[14] Please Note: Fannie Mae's foreclosure regulations require an assignment from MERS to Fannie Mae in the Parish of Orleans. This means that Fannie Mae will be the foreclosing entity. This is the same requirement that exists when the servicer is the record mortgage holder.

[15] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

foreclose. If it is required to endorse the promissory note to the foreclosing entity, then the note may need to be endorsed to MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After the Petition is filed and the judge signs an order of executory process, the writ of seizure and sale is issued by the clerk and is served by the sheriff upon the mortgagor. After the foreclosure is published for the required amount of time, a sheriff's sale is held. The certifying officer will instruct the foreclosing attorney as to the bid to be entered on behalf of MERS. If it is the successful bid, then the sheriff will issue a deed to MERS. MERS will then issue a subsequent deed to the investor.[17] This is the same method that is used when the servicer forecloses in its name. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[17] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of

[17] MERS should remain as the titleholder for as short of time as possible.

# MERS RECOMMENDED FORECLOSURE PROCEDURE FOR MAINE

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS.[18] The caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[19]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to the foreclosure. However, we recommend adhering to the agencies' policies.

---

[18] We have been advised that the named plaintiff in the foreclosure action should be both the record holder of the mortgage and the holder of the promissory note. This is typically considered to be the servicer because if the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

[19] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered and the redemption period has expired, a public auction is held. The certifying officer will instruct the foreclosing attorney as to the bid to be entered on behalf of MERS. If the successful bid, then MERS will assign its bid and any deficiency judgment to the investor. This is the same method that is used when the servicer forecloses in its name. The foreclosure deed will issue directly to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR MARYLAND

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the mortgagee of record. It is through the deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially. Local counsel advises that a foreclosure can be brought in the name of MERS. The foreclosure is filed and placed on the docket of the applicable circuit court with the same required information except that Mortgage Electronic Registration Systems, Inc. (MERS) will be the named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. However, we have been advised that there is sometimes an endorsement to the servicer in order to foreclose. We have not found this to be a legal requirement, and therefore, the agencies' policies should be followed.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then before ratification, a motion to substitute interests will be filed so that the deed is issued directly to the investor. We have been advised that this is the procedure used when foreclosing in the name of the servicer. Because the MERS recommended procedure follows the

same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer can be substituted as the interested party. This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR MASSACHUSETTS

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are used and are foreclosed using the mortgage power of sale together with a Land Court Judgment. MERS local counsel advises that a loan can be foreclosed in the name of Mortgage Electronic Registration Systems, Inc. Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents on behalf of the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes the Note is endorsed to the servicer prior to the foreclosure. However, we recommend that the agencies' policies be followed.

MERS stands in the same position as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[20]

At the foreclosure auction, MERS can waive the requirement of a deposit as to the investor. This way, the servicer can enter a bid on behalf of the investor without the

---

[20] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights of the promissory note.

investor needing to produce any funds. If it is the highest bid, the foreclosure deed can be issued directly to the investor. We have been advised that this procedure is the same procedure used when Freddie Mac or Ginnie Mae are the investors. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR MICHIGAN

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are foreclosed non-judicially usually by a power of sale contained in the mortgage. Local counsel advises that a foreclosure can be brought in the name of MERS. The foreclosure is advertised by publishing the notice for four (4) consecutive weeks. The attorney should follow the same procedure followed when foreclosing in the name of the servicer except that the foreclosing entity is Mortgage Electronic Registration Systems, Inc. (MERS).

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. The endorsement is to remain in blank even if the servicer commences foreclosure. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. However, we have been advised that sometimes there is an endorsement of the promissory notes to the servicer to foreclose. However, we recommend that the agencies' policies be followed. We have not found an endorsement to the foreclosure entity to be a legal requirement, and therefore, the note should not be endorsed to MERS prior to the foreclosure.

At the auction, the certifying officer will instruct the foreclosing attorney regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then a deed may be issued to MERS. However, when the role of MERS, the servicer and the

investor is explained and understood, the servicer may be allowed to bid on its own behalf without having to produce any funds at the sale. This would be the preferred method to use if at all possible. This way, the deed is executed directly to the servicer. If this is not possible, and MERS must take title, then title should be held by MERS for as short of time as possible. A subsequent deed from MERS to the investor should be executed immediately so that MERS remains in the chain of title only for an instant. We have been advised that the current practice used when foreclosing in the name of the servicer, is for the servicer to take title and then execute a subsequent deed to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR MINNESOTA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are used and are typically foreclosed non-judicially. MERS local counsel advises that a loan can be foreclosed in the name of Mortgage Electronic Registration Systems, Inc. Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the power of attorney to foreclose the mortgage, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that currently sign the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

At the foreclosure sale, the certifying officer will instruct the foreclosing attorney to enter a bid on behalf of MERS. A sheriff's certificate is issued to the highest bidder. If MERS is the highest bidder, then the Sheriff's certificate will be issued to MERS. The sheriff's certificate operates as the conveyance of title. The certificate is executed and recorded during the redemption period. At the end of the redemption period, a deed will be issued from MERS to the investor.[21] However, not every

---

[21] During the redemption period, MERS will be considered to be titleholder. However, at the end of the redemption period, a deed to the investor should be executed as soon as possible so that MERS remains in the chain of title for as short a time as possible.

foreclosure counsel follows this procedure currently when foreclosing mortgage loans in the name of the servicer. If your current practice is to assign the sheriff's certificate to the investor, then this is also an acceptable option.[22]

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the eviction can be brought in the name of MERS if MERS is the sheriff's certificate holder. However, if you use the option of assigning the sheriff's certificate, then the certificate is assigned to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[22] The difference between the two options is that some counsels prefer a one-deed process implementing an assignment of the sheriff's certificate to the investor. Other counsels use a two-deed process with the servicer first taking title, and then executing a subsequent deed to the investor. Counsel should continue to follow the instructions given to them by the servicer of the mortgage loan.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR MISSISSIPPI

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially. Local counsel advises that a foreclosure can be brought in the name of MERS. The foreclosure is advertised with the same required information except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Deed of Appointment substituting Trustees, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents on behalf of the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is a blank note endorsement to the servicer prior to foreclosure. We have not found this to be a legal requirement, and therefore, the note should not be endorsed to MERS prior to the foreclosure.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then MERS can assign the bid to the investor. This assignment is simply a paragraph incorporated in the substitution of trustee document authorizing the substituted trustee to convey the property directly to the investor in the Substituted Trustee's Deed. We have been

advised that this procedure is the same procedure used when foreclosing in the name of the servicer. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer can be assigned the bid. This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR MISSOURI

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially under a power of sale. Local counsel advises that a foreclosure can be brought in the name of MERS. A notice of sale is published and the borrower is notified along with all parties entitled to notice under state laws. A sale is then held. The same requirements continue to be followed except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require that the promissory note be endorsed in blank when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced. We have been advised that sometimes there is an endorsement of the note to the servicer prior to the foreclosure. However, we recommend that the agencies' requirements be followed.

At the trustee sale, the certifying officer will instruct the trustee by a written bid letter that the bid is being assigned to the investor and that title should vest with the investor. We have been advised that this procedure is the same procedure used when foreclosing in the name of the servicer. Therefore, no additional fees are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer can be the assignee of the bid. This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR MONTANA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially. Local counsel advises that a foreclosure can be brought in the name of MERS. The Notice of Sale includes the same required information as when foreclosing in the name of the servicer except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer. The Notice of Sale is recorded in the county where the property is located and is published in a newspaper of general circulation.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents on behalf of the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells the loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then a trustee's deed will be issued to MERS. Title should only remain with MERS for as short of time as possible. A certifying officer of MERS will subsequently execute a Grant Deed to the investor. We have been advised that this procedure is the same procedure used when foreclosing in the name of the servicer. Because the MERS recommended

procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
### FOR NEBRASKA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

If a mortgage is used, it is foreclosed judicially. If a deed of trust is used, it can be foreclosed non-judicially under power of sale. Regardless of the type of security instrument used, MERS local counsel advises that a loan can be foreclosed in the name of MERS.

In a judicial foreclosure, when MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer].[23] The key is how MERS is named as the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. However, it is advised that a paragraph be inserted that explains that the servicer is the entity that is servicing the loan. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

In a non-judicial foreclosure, a notice of default is filed and recorded with the register of deeds in the county in which the property is located. The same procedures that are followed when foreclosing in the name of the servicer should continue to be followed except that Mortgage Electronic Registration Systems, Inc. will be named as the foreclosing entity.

---

[23] We have been advised that the named plaintiff in the foreclosure action should be both the record holder of the mortgage and the owner and holder of the promissory note. This is typically considered to be the servicer because if the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having its employees become certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan. Therefore, MERS is both the mortgage holder and the note holder as nominee for the current servicer.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS unless it is legally required to be endorsed to the foreclosing entity and not just the preferred method.[24]

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents today on behalf of the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered in a judicial foreclosure, a foreclosure sale is held. The certifying officer enters a bid on behalf of MERS. If it is the successful bid, then the bid will be assigned to the investor. The sheriff's deed will be issued directly to the investor. This is the same method that is used when the servicer forecloses in its name. Because the MERS recommended procedure is the same as when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commenced the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship between MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[24] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR NEVADA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are generally foreclosed non-judicially pursuant to a power of sale. Local counsel advises that a foreclosure can be brought in the name of MERS. It is important to note that the same procedures and state requirements that are required to be followed when foreclosing in the servicer's name must still be followed when foreclosing in the name of MERS. The Trustee must still record the Notice of Default and Election to Sell the Property. After the expiration of the three-month period, the Notice of Trustee's Sale is filed and published the same way it is when foreclosing in the name of the servicer except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS. The substituted trustee is typically the foreclosing attorney.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. The note should remain endorsed in blank when the servicer commences the foreclosure. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS for the investor. This is the same process that is used

when foreclosing in the servicer's name. If it is the successful bid, then the trustee will be instructed to execute the Trustee's Deed directly to the investor. Therefore, the MERS recommended procedure is the same as the current practice of bidding on behalf of the investor so that the Trustee's Deed is issued directly to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording or transfer taxes are incurred by foreclosing in the name of MERS. Furthermore, there will not be a transfer tax when the trustee's deed is issued directly to Fannie Mae, Freddie Mac, VA or HUD.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan, then the deed is not recorded to the investor until after the eviction is completed. The eviction is conducted the same way it is conducted when the foreclosure is brought in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR NEW HAMPSHIRE

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. (MERS) is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are used and are generally foreclosed non-judicially under a power of sale in the security instrument. Local counsel advises that a foreclosure can be brought in the name of MERS.[25] The Notice of Sales must be published with all required information except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies' (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the foreclosure auction, the certifying officer will instruct the foreclosing attorney regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, MERS will assign the bid to the investor so that the foreclosure deed is issued directly to the investor. We have been advised that the current foreclosure procedure is a one-deed process with the investor taking title. Therefore, the MERS

---

[25] Please Note: Fannie Mae's foreclosure regulations require an assignment from MERS to Fannie Mae in New Hampshire. This means that Fannie Mae will be the foreclosing entity. This is the same requirement that exists when the servicer is the record mortgage holder.

recommended procedure is same the as the current practice with an assignment of the bid to the investor. Therefore, no additional taxes are incurred by foreclosing in the name of MERS in place of the servicer.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer may be assigned the bid so that the servicer is the grantee of the foreclosure deed. This way, the servicer is able to commence the eviction. The servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name. After the eviction is completed, the servicer will then issue a deed to HUD.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR NEW JERSEY

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS become the mortgage holder.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[26]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to the foreclosure. However, we recommend following the agencies' policies.

---

[26] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a sheriff's sale is held. The certifying officer will instruct the foreclosing attorney as to the bid to be entered on behalf of MERS. If it is the highest bid, then the sheriff would be instructed that MERS has assigned its bid to the investor. This is the same method that is used when the servicer forecloses in its name. The sheriff would issue a sheriff's deed directly to the investor. Local counsel advises that only VA and HUD are exempt from transfer taxes on the sheriff's deed. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR NEW MEXICO

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS is named as the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same position as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[27]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.[28] We have not found it to be a requirement in New Mexico that the Note be endorsed to the foreclosing entity.

---

[27] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights of the promissory note.

[28] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution from MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a foreclosure judgment to MERS is entered, a Notice of Sale is published. The certifying officer will instruct the attorney regarding the bid to be entered on behalf of MERS. After the sale, a Report of Special Master is filed and an Order approving Sale and Special Master's Report is filed. If MERS bid is the highest bid, then the Special Master's Deed is recorded conveying the title to MERS. The title should only be held by MERS momentarily. A second deed should be prepared as soon as possible conveying the property from MERS to the investor. This is the same method that is used when the servicer forecloses in its own name. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR NEW YORK

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender, its successors and assigns. In that case, the caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how did MERS become the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

Employees of the servicer will be authorized to sign any necessary documents as a certifying officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. This typically will be the same individual that signs the documents for the servicer, but now will be signing as an officer of MERS.

A foreclosure judgment to MERS would be entered. At the foreclosure sale the certifying officer will instruct the foreclosing attorney regarding the bid to be entered on behalf of MERS. If it is the successful bid, MERS will assign the bid to the investor. The assignment of the bid is a simple one-sentence reference that is submitted to the referee that states MERS assigns the bid to investor. The referee's deed would be directly issued to the investor. This is the same method that is used when the servicer forecloses in its name. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is for the servicer so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR NORTH CAROLINA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially under power of sale. Local counsel advises that a foreclosure can be brought in the name of MERS. Notices are sent to all interested parties, and a hearing is scheduled with the Clerk of Superior Court. The same process followed when foreclosing in the name of the servicer continues to be followed except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents on behalf of the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. However, we have been advised that sometimes there is an endorsement of the note to the servicer prior to the commencement of the foreclosure. We have not found this to be a legal requirement, and therefore, the agencies' requirements should be followed.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then MERS will assign its bid to the investor. We have been advised that this procedure is the same

procedure followed when foreclosing in the name of the servicer. Because it is the same procedure, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid can be assigned to the servicer. This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship between MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR NORTH DAKOTA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through this instrument that the authority is given to MERS to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS.[29] When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS is named as the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. However, it is advised that a paragraph be inserted that explains that the servicer is the entity that is servicing the loan. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[30]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to

---

[29] We have been advised that the named plaintiff in the foreclosure action should be both the record holder of the mortgage and the holder of the promissory note. This is typically considered to be the servicer because if the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

[30] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS unless it is legally required to be endorsed to the foreclosing entity and not just the preferred method. If it is required to endorse the promissory note to the foreclosing entity, then the note may need to be endorsed to MERS. However, we have not found it a requirement in North Dakota that the Note be endorsed to the foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents today on behalf of the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a sheriff's sale is held. A bid is entered on behalf of MERS, and if the successful bid, then the certificate of sale can be issued to MERS. At the sale, only the party who conducted the foreclosure is entitled to "credit." At this point, one of two options can be followed. One is to assign the certificate of sale to the servicer or the investor. This way, the sheriff's deed will be issued directly to the assignee. The other is the sheriff's deed can be issued to MERS, and a Grant Deed will be subsequently issued to the investor. The latter option is the same method that is used when the servicer forecloses in its name. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is for the servicer so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR OHIO

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. The caption should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a sheriff's sale is held. The certifying officer will instruct the foreclosing attorney as to the bid to be entered on behalf of MERS. If it is the successful bid, then MERS will assign its bid to the investor. The deed will then be issued directly to the investor. This is the same method that is used

when the servicer forecloses in its name.    Because the MERS recommended procedure follows the same procedure that is used when the servicer foreclosures in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR OKLAHOMA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures.    The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially.    MERS local counsel advises that a loan can be foreclosed in the name of MERS, so long as MERS is the record mortgage holder and the holder of the promissory note (even if not the beneficial owner of the promissory note).    The caption should reflect Mortgage Electronic Registration Systems, Inc. as the plaintiff.    The body of the complaint should be the same as when foreclosing in the name of the servicer.    MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note.[31]   An investor, typically a secondary market investor, will still be the beneficial owner of the promissory note.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them.[32]   Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.   However, we have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure.   However, we recommend that the agencies' policies be followed.

---

[31] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

[32] If the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder.   By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a Special Execution and Order of Sale is issued. The party instituting a foreclosure action must send a notice of the sheriff's sale date to the borrower and all other persons that have a recorded interest or other known interest in the property that will be extinguished by the sale. This would include any junior lienholders, current owners or tenants and the holders of any other encumbrances on the property. The notice must be executed by the county sheriff and must contain a legal description of the property, as well as the date, time and place of sale. This notice must be sent at least 10 days prior to the date of sale. The attorney for the foreclosing party must execute and file an affidavit of compliance with these notice rules.

In addition, the party instituting a foreclosure action must publish notice of public sale for two successive weeks in the newspaper of the county in which the property is situated. The notice must also be executed by the sheriff and must state the names of persons having an interest in the property that will be extinguished by the sale. If the county does not have a newspaper, then a notice must be published on the court house, in 5 other public places in the county, as well as in any general circulation paper distributed in the county. If the county has a population of 110,000 as of the latest federal census, then the notice of sale must be published in a newspaper in the city or township in which the property is situated, or if no such paper exists, then the notice must be published in some newspaper published in the county. Okla. Stat. Tit. 12, section 764 (1995).

The sale is conducted by the county sheriff and must be held not less than 30 days after the date of the first publication or posting of the sale notice. Okla. Stat. Tit. 12, section 764 (1995). The sale is conducted through a public auction and the property is awarded to the highest bidder.

The certifying officer will instruct the foreclosing attorney to enter a bid on behalf of MERS. If it is the highest bid, then in the motion to confirm sale, MERS will request that the sheriff's deed be issued to the investor. Upon the entering of the order confirming sale, the sheriff's deed will be executed in favor of the investor. The MERS recommended procedures do not cause any additional taxes to be incurred.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to

disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR OREGON

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures.    The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are foreclosed non-judicially by conferring a power of sale on the trustee in the event of default by the borrower.  MERS local counsel advises that a loan can be foreclosed in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the substitution of trustee, as an officer of MERS.   The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The only change to the foreclosure procedure is to name Mortgage Electronic Registration Systems, Inc. in the foreclosure notices as the beneficiary instead of to name the servicer. At the trustee's sale, a bid will be entered on behalf of MERS. The bid is entered the same way it is entered for the servicer when foreclosing in the servicer's name. If the bid is the highest bid, then the trustee's deed can be issued directly to the investor. The Trustee's deed will identify the investor as the grantee under the trustee's deed and will recite that MERS, as nominee, successfully bid for the property at the trustee's sale.  Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR PENNSYLVANIA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS will be the record mortgage holder. It is through the mortgage that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer or the investor to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. The caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. The body of the complaint should be the same as when foreclosing in the name of the servicer or investor. A paragraph should be added that MERS, is or will be, the owner of legal title to the mortgage that is the subject of this action, and nominee for the [insert name of investor, or name of current servicer, if investor is Fannie Mae or Freddie Mac], which is the owner of the entire beneficial interest in the mortgage.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

After the foreclosure judgment is entered in favor of MERS, the sheriff's sale is scheduled. The servicer provides bidding instructions to the foreclosure attorney. After the sale, assuming that the foreclosure attorney was the successful bidder, the

attorney instructs the sheriff, in writing, to assign the bid to the investor and to name the investor as grantee on the sheriff's deed.[33]

The name of MERS must not appear on any post-sale documents, including sheriff's deeds and complaints in ejectment. For FHA-insured loans that require evictions, the attorney must instruct the sheriff, in writing, to assign the bid to the investor, instead of to HUD, and to name the investor as grantee on the sheriff's deed. The servicer, on behalf of the investor, proceeds with the eviction and deeds the property to HUD once the eviction is completed.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[33] MERS local counsel has contacted and received a letter from the Department of Revenue of the Commonwealth of Pennsylvania that indicates the investor can use the foreclosing mortgagee transfer tax exemption by showing that MERS participated in the sheriff's sale merely as an agent of the investor.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR RHODE ISLAND

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are used and are foreclosed non-judicially. MERS local counsel advises a loan can be foreclosed in the name of Mortgage Electronic Registration Systems, Inc.[34] The foreclosure is advertised with Mortgage Electronic Registration Systems, Inc. as the named foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents on behalf of the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS. We have been advised that sometimes there is an endorsement of the Note to the servicer prior to foreclosure. However, we recommend that the agencies' policies be followed.

---

[34] Please Note: Fannie Mae's foreclosure regulations require an assignment from MERS to Fannie Mae in Rhode Island. This means that Fannie Mae will be the foreclosing entity. This is the same requirement that exists when the servicer is the record mortgage holder.

MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[35]

At the foreclosure auction, MERS can waive the requirement of a deposit as to the investor. This way, the servicer can enter a bid on behalf of the investor without the investor needing to produce any funds. If it is the highest bid, the foreclosure deed can be issued directly to the investor. We have been advised that this procedure is the same procedure used when Freddie Mac or Ginnie Mae are the investors. Because the MERS recommended procedure follows the same procedure that is used when the servicer foreclosures in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[35] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial right to the promissory note.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR SOUTH CAROLINA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS.[36] When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender, its successors and assigns. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS is named as the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. However, it is advised that a paragraph be inserted that explains that the servicer is the entity that is servicing the loan. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[37]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require that the promissory note be endorsed in blank when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure

---

[36] We have been advised that the named plaintiff in the foreclosure action should be both the record holder of the mortgage and the holder of the promissory note. This is typically considered to be the servicer because if the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

[37] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

is commenced in the name of MERS unless it is legally required to be endorsed to the foreclosing entity and not just the preferred method. We have been advised that sometimes there is an endorsement of the note to the servicer prior to the foreclosure. However, we recommend that the agencies' requirements be followed.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a foreclosure sale is held. A bid is entered on behalf of MERS, and if the successful bid, then the bid will be assigned to the investor by using a one-page form instructing the sheriff of the assignment of bid. This is the same method that is used when the servicer forecloses in its name. The master in equity or the special referee would issue a deed directly to the investor. Local counsel advises that Fannie Mae, Freddie Mac, VA and HUD are exempt from transfer taxes on the sheriff's deed. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR SOUTH DAKOTA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS become the mortgage holder.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer in relation to not being the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[38]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the

---

[38] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial right to the promissory note.

same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a judgment to MERS is entered, a sheriff's sale is held. The certifying officer will instruct the foreclosing attorney as to the bid to be entered on behalf of MERS. If it is the successful bid, then one of two options can be followed[39]. The first is that the Certificate of Sale may be assigned from MERS to the investor. This way, upon expiration of the redemption period, the sheriff's deed will issue directly to the investor. There is a recording cost for the Certificate of Sale. The second option is that upon the expiration of the redemption period, MERS is issued the sheriff's deed by virtue of being the holder of the Certificate of Sale. If this option is followed, MERS should only remain in the chain of title for as short of time as possible. A subsequent deed will then be executed from MERS to the investor. We have been advised that this latter option is the method that is used when the servicer forecloses in its name. Typically the servicer is issued the sheriff's deed, and then issues a subsequent deed to the investor. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[39] MERS prefers to not take title to the property, so the Certificate of Sale should be assigned if possible. However, either option is acceptable.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR TENNESSEE

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, in place of the servicer, will be the record mortgage holder. It is the mortgage or deed of trust that gives MERS the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are generally foreclosed non-judicially under a power of sale in the security instrument. Local counsel advises that a foreclosure can be brought in the name of MERS. The Notice of Default is filed and published the same way it is when foreclosing in the name of the servicer except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Appointment of Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. In the Trustee's Deed, the bid will be assigned to the investor, unless the certifying officer instructs the trustee to assign the bid to the servicer. We have been advised that the current foreclosure procedure is a one-deed process with the investor directly taking title upon the conclusion of the trustee's sale. Therefore, the MERS recommended procedure is the same as the current practice of assigning the bid to the investor. Because the MERS recommended

procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan, the eviction may need to be brought in the name of MERS. Therefore, MERS may need to be the grantee of the trustee's deed. After the eviction is completed, MERS will then issue a deed to HUD.[40]

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[40] MERS should only be in the chain of title for as short of a time as possible. As soon as the eviction is completed, the deed to HUD should be recorded.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR TEXAS

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the mortgagee or beneficiary of record in the chain of title. It is through the power of sale in the deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially. Local counsel advises that a foreclosure can be brought in the name of MERS. The foreclosure is commenced the same way as if it were being brought in the servicer's name except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named the foreclosing entity as the mortgagee or beneficiary of record as the nominee for the current servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Appointment of Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS as the mortgagee of record. If the bid is the highest bid, then the trustee's deed is issued to MERS as the mortgagee of record and as the nominee for the current servicer. The servicer, as a duly appointed officer of MERS, can then convey the property by deed to the investor which is the same as the current practice that is used when foreclosing in the name of the servicer as mortgagee or

beneficiary of record. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of MERS and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR UTAH

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially. Local counsel advises that a foreclosure can be brought in the name of MERS. The Notice of Default and Election to Sell is filed with the county recorder. Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

After the reinstatement period expires, the Notice of Sale is published for the required length of time. Once this is completed, the foreclosure sale is held. The certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, the certifying officer will instruct the trustee to deed the property directly to the investor. We have been advised that this procedure is the same procedure used when foreclosing in the name of the servicer. Therefore, no additional taxes are incurred by foreclosing in the name of MERS in place of the servicer.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer can be substituted as the interested party.[41] This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

---

[41] MERS local counsel advises that an eviction is brought in the name of the party that takes title to the property following the foreclosure sale.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR VERMONT

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. When the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. MERS local counsel advises that a loan can be foreclosed in the name of MERS. Over 90% of the foreclosures are by strict foreclosures. When MERS has been assigned the mortgage, the caption of the complaint should state Mortgage Electronic Registration Systems, Inc. as the plaintiff. However, this changes slightly if MERS is the original mortgagee of record, meaning that MERS is named on the mortgage in a nominee capacity for the originating lender, its successors and assigns. The caption should then state Mortgage Electronic Registration Systems, Inc. as nominee for [insert name of the current servicer]. The key is how MERS is named as the mortgagee of record.

The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will still be the ultimate owner of the promissory note.[42]

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS unless it is legally required to be endorsed to the

---

[42] The servicer usually has physical custody of the note at the time of the foreclosure with a blank endorsement. This makes the servicer the noteholder for the purposes of foreclosing. However, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note.

foreclosing entity. If it is required to endorse the promissory note to the foreclosing entity, then the note may need to be endorsed to MERS. Local counsel has advised that it is essential that the Promissory Note be held in the name of the mortgage holder.[43]

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

Because the majority of the foreclosures are by strict foreclosure, title will vest in MERS momentarily.[44] The certifying officer will submit an affidavit of amounts due to the Clerk of Court, after which a default or summary judgment will be issued by the Court. The Clerk will prepare an accounting. Once the accounting is received, a judgment is prepared and served. The judgment is then signed by the Court. After the redemption period expires, a Certificate of Non-Redemption and Writ of Possession will be issued by the Court to MERS. The property will then be deeded from MERS to the investor. This is the same process that occurs when the servicer of the mortgage loan forecloses in its name. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional taxes are incurred by foreclosing in the name of MERS.

An alternative option is to file a Motion for Substitution of Parties after the judgment to MERS is entered. At this time, an unrecorded assignment of the mortgage needs to be shown to the judge. It should be noted that certain courts are not staffed with full time judges and there may be a slight increase in time before this Motion can be decided. It is recommended that this Motion be filed as soon as possible after the judgment is entered so that it is completed prior to the expiration of the redemption period. At the end of the redemption period, a Certificate of Non-Redemption is recorded which transfers the title. Prior to the Certificate being issued, the assignment of the mortgage is recorded.

Local counsel advises that Fannie Mae, Freddie Mac, VA and HUD are exempt from transfer taxes on the sheriff's deed.

---

[43] We have been advised that the named plaintiff in the foreclosure action should be both the record holder of the mortgage and the holder of the promissory note. This is typically considered to be the servicer because if the promissory note is endorsed in blank and the servicer has physical custody of the note, the servicer will technically be the note holder as well as the record mortgage holder. By virtue of having the servicer's employees be certifying officers of MERS, there can be an in-house transfer of possession of the note so that MERS is considered the note holder for purposes of foreclosing the loan.

[44] MERS should only remain the titleholder for as short as time as possible. A subsequent deed should be executed to the investor immediately.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR VIRGINIA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures.   The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially by a power of sale given to the Trustee upon default. Local counsel advises that a foreclosure can be brought in the name of MERS.[45] The same procedure that is followed when foreclosing in the name of the servicer is followed when foreclosing in the name of MERS except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Because the original note is required to be shown to the Commissioner at the time of the final accounting, the note is usually endorsed to the servicer when foreclosing in the name of the servicer. Therefore, local counsel advises that the note may need to be endorsed to MERS as the foreclosing entity. The endorsement of the note to the servicer is the same procedure that is followed when foreclosing in the name of the servicer.

---

[45] Local Counsel advises that the promissory note is endorsed to the servicer prior to commencing a foreclosure so that the servicer becomes the noteholder. In order for a foreclosure to be brought in the name of MERS, the note should be endorsed to MERS so that MERS is the noteholder.

At the trustee sale, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then the trustee will be instructed to deed the property directly to the investor. We have been advised that this procedure is the same used when foreclosing in the name of the servicer. Therefore, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer can be deeded the property so that the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR WASHINGTON

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are used and are foreclosed non-judicially by conferring a power of sale on the trustee in the event of default by the borrower. MERS local counsel advises that a loan can be foreclosed in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the substitution of trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

The only change to the foreclosure procedure is to name Mortgage Electronic Registration Systems, Inc. as the foreclosing entity. The Notice of Default and Notice of Trustee's Sale is still required to be sent and published and all requirements related to these Notices must be followed. At the trustee's sale, a bid will be entered on behalf of MERS. The bid is entered the same way it is entered for the servicer when foreclosing in the servicer's name. If the bid is the highest bid, then the trustee's deed can be issued directly to the investor. This is the same procedure that is followed when commencing a foreclosure in the name of the servicer. The Trustee's deed will identify the investor as the grantee under the trustee's deed and will recite that MERS, as nominee, successfully bid for the

property at the trustee's sale. Because the MERS recommended procedure follows the same procedure that is used when the servicer forecloses in its name, no additional recording or transfer taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to HUD. This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR WEST VIRGINIA

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Deeds of Trust are foreclosed non-judicially. Local counsel advises that a foreclosure can be brought in the name of MERS. The notice of sale is served on the grantor of the Deed of Trust by certified mail. The foreclosure sale is published according to the same requirements followed when foreclosing in the name of the servicer. Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents, such as the Substitution of Trustee, as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the trustee auction, the certifying officer will instruct the trustee regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then the certifying officer will instruct the trustee on how to deed the property. A three-party deed can be used with the trustee transferring the property to the investor. MERS simply signs the deed and states that it has assigned its right in its bid to the investor. We have been advised that this procedure is the same procedure used when foreclosing

in the name of the servicer.    Therefore, no additional taxes are incurred by foreclosing in the name of MERS.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the property can be deeded to the servicer. This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR WISCONSIN

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like a servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed in conjunction with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are typically used and are foreclosed judicially. The caption of the complaint should name Mortgage Electronic Registration Systems, Inc. (MERS) as the plaintiff. The body of the complaint should be the same as when foreclosing in the name of the servicer. MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. A secondary market investor will still be the owner of the promissory note. A paragraph can be added to the complaint to explain the role of MERS as being the mortgagee of record with the authority to foreclose.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when a seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

After a foreclosure judgment in favor of MERS is entered and after expiration of the redemption period, a foreclosure sale is held. The certifying officer will provide local counsel with bid instructions. A bid will be entered on behalf of MERS, and if it is the highest bid, MERS will assign its bid to the investor and the investor can appear as the grantee on the Sheriff's Deed. The Sheriff's deed is then issued

directly to the investor. The assignment of the bid is the method that is being used when the servicer forecloses in its name. The sheriff's deed is exempt from transfer tax as are sheriff's deeds following an assignment of bid. Certain other transfers, as between "principal and agent for no consideration may also be exempt from transfer tax. Because the MERS recommended procedure follows the procedure used when foreclosing in the servicer's name, no additional taxes are incurred.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the bid assignment is given to the servicer instead of to the investor (HUD). This way, the servicer will proceed with the eviction the same way it would if the foreclosure were filed in its own name.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

## MERS RECOMMENDED FORECLOSURE PROCEDURE
## FOR WYOMING

Foreclosing a loan in the name of Mortgage Electronic Registration Systems, Inc. is something new in the foreclosure arena. However, when the role of MERS is examined, it becomes clear that MERS stands in the same position to foreclose as the servicer. MERS, like the servicer, will be the record mortgage holder. It is through the mortgage or deed of trust that MERS is given the authority to foreclose.

To help make a smooth transition from foreclosing loans in the name of the servicer to foreclosing loans in the name of MERS, we have developed state by state recommended guidelines to follow. These guidelines were developed with experienced foreclosure counsel in your state. We have been able to keep the MERS recommended procedures consistent with the existing foreclosure procedures. The goal of the recommended procedures is to avoid adding any extra steps or incurring any additional taxes or costs by foreclosing in the name of MERS instead of the servicer.

MERS will continually review the guidelines and, if necessary, will issue revisions. The recommended guidelines to follow in your state are as follows:

Mortgages are foreclosed non-judicially by a power of sale contained in the mortgage. Local counsel advises that a foreclosure can be brought in the name of MERS. Notice of the sale is recorded in the real estate records and mailed by certified mail to all interested parties. The same procedures followed when foreclosing a mortgage loan in the name of the servicer is followed when foreclosing in the name of MERS except that Mortgage Electronic Registration Systems, Inc. (MERS) will be named as the foreclosing entity instead of the servicer. Publication of the sale occurs ten (10) days after the recording and mailing of the Notice.

Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution of MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

The agencies (Fannie Mae, Freddie Mac and Ginnie Mae) require a blank endorsement of the promissory note when the seller/servicer sells a mortgage loan to them. Therefore, the note should remain endorsed in blank when the foreclosure is commenced in the name of MERS.

At the sheriff's sale, the certifying officer will instruct the sheriff regarding the bid to be entered on behalf of MERS. If the bid is the highest bid, then MERS will be issued a Certificate of Purchase. The Certificate of Purchase will be assigned to the investor.   We have been advised that this is the same procedure used when foreclosing in the name of the servicer. Because the MERS recommended procedure

Version 1.1
November 1999

110

follows the same procedure that is used when the servicer forecloses in its name, no additional recording costs are incurred by foreclosing in the name of MERS. Wyoming does not have transfer taxes.

Evictions are handled the same way they are handled when the servicer commences the foreclosure as the foreclosing entity. If it is an FHA-insured loan and an eviction is necessary, then the servicer can be assigned the Certificate. This way, the eviction can be brought in the name of the servicer. Once the eviction is completed, then the servicer can issue a deed to HUD. Again, you should follow the same procedures you follow when foreclosing in the name of the servicer.

If the debtor declares bankruptcy, the proof of claim should be filed jointly in the name of Mortgage Electronic Registration Systems, Inc. and the servicer. It is advised to file in both names in order to disclose to the court the relationship of MERS and the servicer. The address to be used is the servicer's address so that all trustee payments go directly to the servicer, not to MERS. The Motion for Relief from Stay may be filed either solely in the name of MERS or jointly with the servicer. If MERS is the foreclosing entity, then it is MERS that needs the relief from the bankruptcy.

℘JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| JOSE TREVINO and LORRY S. TREVINO, Individually and on behalf of all others similarly situated | MERSCORP, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. |

**(b)** County of Residence of First Listed Plaintiff  **St. Louis**
(EXCEPT IN U.S. PLAINTIFF CASES) **County, MO**

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number) **(302) 656-4433**
**Carmella P. Keener, Esq.,Rosenthal,**
**Monhait & Goddess, P.A., PO Box 1070**
**Wilmington, DE  19899-1070**

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
    Plaintiff

☐ 3  Federal Question
    (U.S. Government Not a Party)

☐ 2  U.S. Government
    Defendant

☒ 4  Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Med. Malpractice | ☐ 625 Drug Related Seizure |    28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 365 Personal Injury - |    of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |    Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |    Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |    Liability |    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** |    Safety/Health | | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |    Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle |    Property Damage |    Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract |    Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) |    12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury | |    & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment |    Sentence | ☐ 791 Empl. Ret. Inc. |    or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** |    Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land |    Accommodations | ☐ 530 General | |    26 USC 7609 |    Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | |    Under Equal Access |
| |    Employment | ☐ 550 Civil Rights | | |    to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| |    Other | | | |    State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

Appeal to District Judge from

☒ 1  Original
    Proceeding

☐ 2  Removed from
    State Court

☐ 3  Remanded from
    Appellate Court

☐ 4  Reinstated or
    Reopened

☐ 5  Transferred from
    another district
    (specify)

☐ 6  Multidistrict
    Litigation

☐ 7  Magistrate
    Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:  **Breach of contract**

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 9/20/07 | *Carmella P. Keener* (DSBA No. 2810) |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. ____0 7 - 5 6 8____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____2____ COPIES OF AO FORM 85.

____9/20/07____
(Date forms issued)

_____
(Signature of Party or their Representative)

____Jose    Sanchez____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action