## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSE TREVINO and LORI S. TREVINO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Merscorp Inc., et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:    Case No. 07-00568 (JJF)<br>:<br>:<br>:<br>:<br>:<br>: |

## OPENING BRIEF OF DEFENDANT GMAC-RFC
## HOLDING COMPANY, LLC
## IN SUPPORT OF ITS MOTION TO DISMISS

Katharine V. Jackson (No. 4800)
**REED SMITH LLP**
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7510
Facsimile: (302) 778-7575
E-mail: kjackson@reedsmith.com

**Of Counsel:**

Henry F. Reichner, Esquire
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone: (215) 851-8266
Facsimile: (215) 851-1420
E-mail: hreichner@reedsmith.com
*Admitted pro hac vice*

*Attorneys for Defendant GMAC-RFC
Holding Company, LLC*

Dated: February 15, 2008

## TABLE OF CONTENTS

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ....................1

II.    SUMMARY OF ARGUMENT .....................................................................................2

III.   STATEMENT OF ALLEGED FACTS .........................................................................3

IV.    ARGUMENT .................................................................................................................5

       A.    Plaintiffs' Amended Complaint Should Be Dismissed Based On The
             Issues Raised In The Motion To Dismiss Filed By Merscorp And MERS .............5

       B.    Plaintiffs Have Not Alleged Sufficient Facts To Make Out A Plausible
             Alter Ego Claim Against GMAC.............................................................................5

             1.    Absent Extraordinary Circumstances, Courts Respect Corporate
                   Boundaries .......................................................................................................6

             2.    To Pierce The Corporate Veil, Plaintiffs Must Allege Facts Making
                   It Plausible That MERS And Merscorp Are Sham Corporations
                   That Exist Solely As Vehicles For Fraud Or Injustice ................................7

             3.    Plaintiffs Have Failed To Allege Facts Sufficient To Make
                   Plausible The Conclusion That MERS And Merscorp Exist Solely
                   As Vehicles Used By GMAC For Fraud Or Injustice .................................8

             4.    Plaintiffs Have Failed To Allege Facts Sufficient To Make
                   Plausible The Conclusion That MERS And Merscorp Are Sham
                   Corporations...............................................................................................10

                   a.    Control Allegations Are Nonexistent............................................11

                   b.    The Capitalization Allegations Are Woefully Inadequate.............13

V.     CONCLUSION.............................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007) ................................................. 6

*Bell Helicopter Textron v. C&C Helicopter Sales*, 295 F. Supp.2d 400 (D.Del. 2002) ................ 7

*Bowen v. First Family Fin. Servs.*, 233 F.3d 1331 (11th Cir. 2000) ....................................... 5

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 38 Del.Ch. 490, 154 A.2d 684 (1959).... 6

*Crosse v. BCBSD, Inc.*, 836 A.2d 492 (Del. 2003) ........................................................... 7

*Geller v. Transamerica Corp.*, 53 F. Supp. 625 (D.Del. 1943) .............................................. 7

*Harper v. Del. Valley Broadcasters, Inc.*, 743 F. Supp. 1076 (D.Del. 1990) ............................. 13

*HMG/Courtland Properties, Inc. v. Gray*, 729 A.2d 300 (Del.Ch. 1999) ................................. 6

*Johnson v. Geico Casualty Co.*, 516 F. Supp.2d 351 (D.Del. 2007) ....................................... 6

*Klaxon v. Stentor Elc. Mfg. Co.*, 313 U.S. 487 (1941) ...................................................... 6

*Leslie v. Telephonics Office Technologies, Inc.*, 1993 WL 547188
   (Del.Ch. Dec. 30, 1993) ......................................................................................... 11

*Liafail, Inc. v. Learning 200, Inc.*, 2002 WL 31667861 (D.Del. November 25, 2002) ............... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................... 5

*Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954 (Del.Ch. July 1, 2005) .......... 7, 10, 13

*Medi-Tech of Egypt Corp. v. Bausch & Lomb Surgical, Inc.*, 2004 WL 415521
   (Del.Ch. March 4, 2004) ......................................................................................... 8

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D.Del. 1989) ............................. 8, 11

*Nat'l Elevator Indus. Pension Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188 (3d
   Cir.2003) ......................................................................................................... 13

*Outokumpo Engineering Enterprises v. Kvaerner Enviropower, Inc.*, 685 A.2d 724
   (Del.Super. 1996) ............................................................................................... 11

*Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629 (Del. 1968) ............................... 8

*Schenley Distillers Corp. v. U.S.*, 61 F. Supp. 981 (D.Del. 1945) ........................................ 11

*Scott–Douglas Corp. v. The Greyhound Corp.*, 304 A.2d 309 (Del.Super. 1973) ................... 6, 7

*Skouras v. Admiralty Enterprises, Inc.*, 386 A.2d 674 (Del.Ch. 1978) ................................. 11

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................. 6

*United States v. Del Campo Baking Mfg. Co.*, 345 F. Supp. 1371 (D.Del. 1972)......................... 7

*United States v. Golden Acres, Inc.,* 702 F. Supp. 1097 (D.Del. 1988)....................................... 10

*Zubik v. Zubik*, 384 F.2d 267 (3d Cir.1967), *cert. denied*, 390 U.S. 988 (1969)........................... 8

## Rules

Rule 9(b) of the Federal Rules of Civil Procedure ......................................................................... 8

Rule 12(b)(1) of the Federal Rules of Civil Procedure.................................................................. 5

Rule 12(b)(6) of the Federal Rules of Civil Procedure............................................................. 1, 5

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs, citizens of Missouri, filed this putative class action on September 20, 2007. The stated basis for jurisdiction in this Court is diversity of citizenship. Plaintiffs allege that Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), the grantee under a Deed of Trust to Plaintiffs' residence, overcharged them for attorneys' fees and expenses in connection with an event of default under their loan documents. Plaintiffs' original Complaint (D.I. #1) asserted state law claims – breach of contract, unjust enrichment, and breach of the duty of good faith and fair dealing – against MERS as well as its parent corporation, Merscorp, Inc. ("Merscorp").

Plaintiffs filed an Amended Complaint (D.I. #10) on November 8, 2007. At that time, Plaintiffs expanded the named defendants to also include 9 of some 26 shareholders of Merscorp (the "Shareholder Defendants") that Plaintiffs term the "principal" or "controlling" shareholders. Plaintiffs claim that each one of the 9 Shareholder Defendants is an alter ego of Merscorp, apparently that Merscorp in turn is the alter ego of MERS, and that each of the 9 Shareholder Defendants is consequently liable to Plaintiffs for MERS' alleged contractual breaches.

All defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Defendant GMAC-RFC Holding Company, LLC submits this Memorandum of Law in support of its Motion to Dismiss. To the extent that the other defendants' motions raise additional grounds that would also warrant dismissal of GMAC, those motions are incorporated herein by reference.

## II.     SUMMARY OF ARGUMENT

1.     To state a viable alter ego claim, Plaintiffs must plead sufficient facts to support a plausible inference that GMAC (and the other Shareholder Defendants) created Merscorp as a sham entity designed to visit injustice on creditors.  Plaintiffs have not met this standard.

2.     Plaintiffs, however, acknowledge that Merscorp and its wholly-owned subsidiary, MERS, are separate entities that serve a legitimate business purpose: to facilitate the tracking and processing of residential and commercial mortgage assignments and lien releases and to reduce the costs associated with such activities.  Indeed, as the Amended Complaint makes clear, the services offered by MERS – similar to those offered by DTC in the securities industry – have become wildly popular in the mortgage industry.

3.     Plaintiffs also fail to allege that MERS and Merscorp do not observe corporate formalities, that either of them is insolvent, that either is unable to meet its obligations in the normal course of business, that their funds are being siphoned off by GMAC (or any other shareholder), or that GMAC – just 1 of a number of shareholders of Merscorp – controls Merscorp's (or MERS') day-to-day operations.

4.     Plaintiffs assert only that MERS is undercapitalized.  Standing alone, this is no basis to pierce the corporate veil of either MERS or Merscorp.  This conclusion also lacks support in the Amended Complaint.  Indeed, Plaintiffs themselves admit that these entities have managed to operate successfully for almost 12 years.  At the end of the day, Plaintiffs' undercapitalization argument boils down to this: Plaintiffs believe that, if they are successful in maintaining a class action and on the merits, they will not be able to enforce their judgment against MERS.  As a matter of law, that does not justify piercing a corporate veil.

III.    **STATEMENT OF ALLEGED FACTS**

Plaintiffs allege that MERS, the grantee under a Deed of Trust to Plaintiffs' residence, overcharged them for attorneys' fees and expenses after they defaulted on their loan. *See Amended Complaint, ¶¶7, 19, 21.* Plaintiffs make no claim that GMAC is directly liable to them: there is no allegation that GMAC had anything to do with Plaintiffs' loan at any time, either as a lender, investor, or servicer.[1] There is likewise no allegation that GMAC and Plaintiffs were parties to any contract. The sole claim against GMAC is based on an alter ego theory.

"MERS was created in 1996 by the mortgage banking industry to create a secondary mortgage market, internally administer the buying and selling of mortgages, and to simplify the administration of home mortgages, including foreclosure proceedings. When a mortgage is registered on the MERS System . . . title is held in the name of MERS and MERS acts as mortgagee of record in county land records. While Mortgages may get assigned many times over the life of the loan, MERS remains holder of record." *See Amended Complaint, ¶8(e).* "The beneficiaries of MERS [include] lenders, mortgage originators, mortgage servicers, document custodians, settlement agents, title companies, insures, and investors." *See Amended Complaint, ¶21.*

As reflected in the Exhibits attached to the Amended Complaint, MERS was formed in response to a lack of industry-wide standards for the processing of residential and commercial mortgage assignments and lien releases. *See MERS Quality Assurance Procedures Manual, Exhibit D to the Amended Complaint, at p. 3.* ("many assignments and lien releases were not recorded in a timely manner, were improperly recorded, or were never recorded at all. This

_____

[1]    As a holding company, GMAC neither originates nor services mortgages.

created a number of problems and costs for buyers and sellers of servicing rights. The majority of mortgage industry participants that helped MERS define standards for processing recording documents believed the entire industry would benefit"). Thus, MERS facilitates the tracking and processing of residential and commercial mortgage assignments and lien releases and at the same time it reduces the costs associated with such activities. *See MERS Quality Assurance Procedures Manual, Exhibit D to the Amended Complaint, at p. 1.*

MERS is a wholly-owned subsidiary of Merscorp and both entities are Delaware corporations. *See Amended Complaint, ¶8(a) and (b).* Plaintiffs allege that (a) MERS has 40 employees and reports almost $9.5 million in annual income and (b) Merscorp has approximately 20 employees and reports yearly income of approximately $1.9 million. *Id. at ¶8(a).* Plaintiffs do not allege that Merscorp and MERS are burdened with substantial fixed costs, that either MERS or Merscorp is insolvent, that either has been or is unable to meet its obligations in the normal course, or that their funds are being siphoned off by GMAC (or any other shareholder of Merscorp). Plaintiffs nonetheless allege that MERS is "grossly undercapitalized" because it serves as the holder of record of "tens of millions" of mortgages. *See Amended Complaint, ¶9(m).*

Plaintiffs admit that Merscorp is managed by a Board of Directors consisting of 16 directors divided into 3 separate classes. *See Amended Complaint at ¶8(d).* Class A consists of 3 directors, one each from the Mortgage Bankers Association of America and Defendants Freddie Mac and Fannie Mae. *Id.* Class B consists of at least 9 directors elected by the shareholders from the mortgage servicing and lending business. *Id.* Class C consists of at least 2 directors elected by all shareholders. *Id.*

- 4 -

There are no allegations in the Amended Complaint that Merscorp (or MERS) does not maintain books and records or otherwise fails to observe corporate formalities. There are likewise no allegations that Merscorp's Board of Directors does not function or that GMAC's officers and directors overlap those of Merscorp. There are no factual allegations in the Amended Complaint suggesting in any way that GMAC controls or dominates Merscorp's (or MERS') daily operations.

IV.    **ARGUMENT**

A.    **Plaintiffs' Amended Complaint Should Be Dismissed Based On The Issues Raised In The Motion To Dismiss Filed By Merscorp And MERS**

The Court need read no further should it decide to grant the Motion to Dismiss filed by MERS and Merscorp, which motion addresses Plaintiffs' substantive state law claims. Should the Court grant that motion, the entire case must be dismissed given the totally derivative nature of the claims asserted against GMAC and the other Shareholder Defendants.[2]

B.    **Plaintiffs Have Not Alleged Sufficient Facts To Make Out A Plausible Alter Ego Claim Against GMAC**

"Federal Rule of Civil Procedure 12(b)(6) provides that the Court may dismiss a complaint if it fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Although a complaint does not need detailed factual allegations, the plaintiff has an 'obligation

---

[2]    If Plaintiffs were to try to assert a direct claim against GMAC, such a claim would have to be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing. Simply stated, Plaintiffs have not alleged facts that would establish that any injury they purportedly suffered is traceable to any action by GMAC or that such injury could be redressed by a favorable decision against GMAC. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). *See also Bowen v. First Family Fin. Servs.*, 233 F.3d 1331, 1339 n.6 (11th Cir. 2000) ("a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue'") (quoted case omitted). Again, GMAC neither originates nor services mortgages.

to provide the grounds of his entitle[ment] to relief,' and that obligation requires more than labels, conclusions, and formulaic recitation of the elements of a cause of action. To state a claim, the plaintiff must allege sufficient facts 'to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'" *Johnson v. Geico Casualty Co.*, 516 F. Supp.2d 351, 355 (D.Del. 2007) (Farnan, J.) (quoting *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, ___ 127 S.Ct. 1955, 1964-5 (2007) (internal quotation marks omitted)). "Stated another way, heightened fact pleading is not required, but enough facts must be alleged to state a claim to relief that is plausible on its face." *Id*. (citing *Twombly*, 127 S.Ct. at 1974).

### 1.    Absent Extraordinary Circumstances, Courts Respect Corporate Boundaries

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citing, *inter alia, Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 38 Del.Ch. 490, 494, 154 A.2d 684, 687 (1959)). *See also Scott–Douglas Corp. v. The Greyhound Corp.*, 304 A.2d 309 (Del. Super. 1973) ("As a general rule, the corporation is an entity distinct from its shareholders even if its stock is wholly owned by one person or corporation") (citation omitted).[3]

---

[3]    A federal court having diversity jurisdiction applies the choice of law of the forum in which it sits. *Klaxon v. Stentor Elc. Mfg. Co.*, 313 U.S. 487, 496 (1941). Delaware law applies to the alter ego theory since both MERS and Merscorp are Delaware corporations. *See, e.g.*, *HMG/Courtland Properties, Inc. v. Gray*, 729 A.2d 300, 309 (Del. Ch. 1999) (citation omitted) ("this court has looked to the law of the entity in determining whether the entity's separate existence is to be disregarded.").

Thus, "[i]n the absence of extraordinary circumstances," courts will not disregard the separate corporate entity. *Geller v. Transamerica Corp.*, 53 F. Supp. 625, 631 (D.Del. 1943), *aff'd*, 326 U.S. 432 (1946). *See also United States v. Del Campo Baking Mfg. Co.*, 345 F. Supp. 1371, 1378 (D.Del. 1972) (corporate entities may only be disregarded "in unusual circumstances"); *Scott–Douglas Corp.*, *supra*, 304 A.2d at 324 (citation omitted) ("It requires a strong case to induce a court to consider two corporations as one on account of one owning all the capital stock of the other.").

In this case, Plaintiffs face the additional barrier of having to plead extraordinary circumstances that would warrant piercing both the corporate veils of MERS and Merscorp in order to reach GMAC. They have not done so.

> **2.     To Pierce The Corporate Veil, Plaintiffs Must Allege Facts Making It Plausible That MERS And Merscorp Are Sham Corporations That Exist Solely As Vehicles For Fraud Or Injustice**

"To state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (affirming dismissal of consumer class action alter ego claim) (citation omitted). *See also Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, *3 (Del.Ch. July 1, 2005) ("'Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.'") (quoted case omitted); *Bell Helicopter Textron v. C&C Helicopter Sales*, 295 F. Supp.2d 400, 408 (D.Del. 2002) (Farnan, J.) (a court may disregard corporate boundaries "only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are

involved") (quoting *Pauley Petroleum, Inc. v. Continental Oil Co*., 239 A.2d 629, 633 (Del. 1968)).    As discussed below, Plaintiffs do not allege facts sufficient to make plausible the conclusion that MERS and Merscorp were created and exist solely as vehicles for fraud or injustice.

### 3.    Plaintiffs Have Failed To Allege Facts Sufficient To Make Plausible The Conclusion That MERS And Merscorp Exist Solely As Vehicles Used By GMAC For Fraud Or Injustice

"Limiting one's personal liability is a traditional reason for a corporation.  Unless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity."    *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir.1967), *cert. denied*, 390 U.S. 988 (1969).  Thus, the fraud or injustice must relate to the intentional misuse of the corporate form.  *Medi-Tech of Egypt Corp. v. Bausch & Lomb Surgical, Inc.*, 2004 WL 415521, *7 (Del. Ch. March 4, 2004).  Plaintiffs' alter ego argument fails because they have not alleged that the corporate form of either MERS or Merscorp in and of itself operates to serve some fraud or injustice committed by GMAC.

Plaintiffs fail to articulate any fraud[4] or injustice, asserting only that MERS overcharged them for attorneys' fees in relation to their loan default.  This allegation is patently insufficient under the law: "allegations of breach of contract by a subsidiary do not suffice to supply the necessary fraud or injustice to hold the subsidiary to be the alter ego of the parent, especially where [as is the situation with GMAC] there is no evidence of wrong-doing by the parent." *Medi-Tec of Egypt Corp.*, *supra*, 2004 WL 415251, *4.  *See also Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D.Del. 1989) ("Any breach of contract and any tort . . . is, in

---

[4]    GMAC observes that Rule 9(b) of the Federal Rules of Civil Procedure contains a heightened pleading standard for fraud.  The Amended Complaint contains no allegations that satisfy this pleading standard.

some sense, an injustice. Obviously this type of 'injustice' is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud . . . . to hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.").

Further, the Amended Complaint on its face acknowledges that MERS and Merscorp exist for a legitimate business reason. Merscorp and its subsidiary, MERS, were formed (a) to facilitate the tracking and processing of residential and commercial mortgage assignments and lien releases and (b) to reduce the costs associated with such activities. *See Amended Complaint, ¶8(e) and MERS Quality Assurance Procedures Manual, Exhibit D to the Amended Complaint at pp. 1 and 3.* Plaintiffs expressly acknowledge that MERS benefits "lenders, mortgage originators, mortgage servicers, document custodians, settlement agents, title companies, insurers, and investors." *See Amended Complaint, ¶21.* Indeed, as the Amended Complaint makes clear, the services offered by MERS over the past decade – similar to those offered by DTC in the securities industry – have become wildly popular in the mortgage industry. *See, e.g., Amended Complaint at ¶¶8(e), 8(f), and 8(g).*

Against this backdrop, Plaintiffs have utterly failed to allege facts that remotely suggest that MERS and Merscorp are vehicles that GMAC uses for the purpose of perpetrating fraud or injustice. For this reason alone, Plaintiffs' alter ego theory is nothing more than speculation and the Amended Complaint must be dismissed as to GMAC.

4.    **Plaintiffs Have Failed To Allege Facts Sufficient To Make Plausible The Conclusion That MERS And Merscorp Are Sham Corporations**

Plaintiffs' Amended Complaint can be dismissed for an additional, independent reason: Plaintiffs have failed to allege facts from which one could plausibly infer that MERS and Merscorp are "sham" entities.

An alter ego analysis typically includes "an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." *United States v. Golden Acres, Inc.,* 702 F. Supp. 1097, 1104 (D.Del. 1988). In this analysis, no single factor is dominant. *Id.* Moreover, no one of the foregoing factors is sufficient, on its own, to assert a claim against a corporation's shareholders. Rather, a plaintiff must allege a combination of factors to justify their effort to ignore the defendant's corporate structure. *See Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, *10-14 (Del.Ch. July 1, 2005).

Plaintiffs refer to the Shareholder Defendants as the "Controlling Shareholders." Beyond that, Plaintiffs baldly assert that MERS is "undercapitalized." They make no other allegations concerning the elements courts consider in determining whether a corporation is a sham (e.g., they do not allege that MERS and Merscorp fail to follow corporate formalities, etc.). On the contrary, their allegations (and lack thereof) only support the conclusion that MERS and Merscorp are valid, independent corporations.

- 10 -

a.    **Control Allegations Are Nonexistent**

"The degree of control required [for an alter ego claim] is 'exclusive dominion and control . . . . to the point that [the subsidiary] no longer ha[s] legal or independent significance of [its] own." *Outokumpo Engineering Enterprises v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 n.2 (Del.Super. 1996) (quoted case omitted). *See also Liafail, Inc. v. Learning 200, Inc.*, 2002 WL 31667861, *11 (D.Del. November 25, 2002) ("To prevail on an alter ego claim [Plaintiffs] must first show that the parent and subsidiary 'operated as a single economic entity.'") (quoted case omitted).

Mere dominion and control of the parent over the subsidiary will not support alter ego liability. *See, e.g., Mobil Oil Corp.*, *supra*, 718 F. Supp. at 271 n.15. Similarly, "a common central management alone is not a proper basis for disregarding separate corporate existence." *Skouras v. Admiralty Enterprises, Inc.*, 386 A.2d 674, 681 (Del.Ch. 1978). In fact, "more often than not, Delaware courts have upheld the legal significance of corporate form, in a corporate-subsidiary complex, despite the fact of substantial overlap in the management and control of the two entities." *Leslie v. Telephonics Office Technologies, Inc.*, 1993 WL 547188, *8 (Del.Ch. Dec. 30, 1993) (citations omitted). Moreover, even if a company's sole reason for existence is to provide a service for its corporate parent, that is insufficient to disregard its corporate form. *See Schenley Distillers Corp. v. U.S.*, 61 F. Supp. 981, 988 (D.Del. 1945).

Plaintiffs have alleged no facts in support of any claim that GMAC and Merscorp operate as a single economic entity. Plaintiffs have not even tried to allege that GMAC and Merscorp have a central common management or that there is any overlap in the management and control of the two entities. There is (and can be) no claim that GMAC controls the board or day-to-day operations of Merscorp (or MERS for that matter).

Indeed, any assertion that GMAC and Merscorp (and MERS) are a single economic entity or that GMAC exclusively dominates and controls those entities is frivolous and completely at odds with the allegations of the Amended Complaint: all that is alleged in this regard is that GMAC is just 1 of a number of shareholders of Merscorp. Plain and simple, the Amended Complaint fails to state an alter ego claim against GMAC based on some "control" theory.

**b.    The Capitalization Allegations Are Woefully Inadequate**

Likewise, Plaintiffs' assertion that MERS is undercapitalized fails to push their alter ego claim into the realm of the plausible. The sole allegation in support of this notion is the claim that MERS acts as the nominal holder of "millions" of deeds of trusts and mortgages and has $9.5 million in annual income while its parent, Merscorp, reports yearly income of approximately $1.9. *See Amended Complaint at ¶¶8(a), 8(b), and 9(k).*

The easiest response to Plaintiffs' assertion that MERS is undercapitalized is that both MERS and Merscorp have been continuously engaged in the same business for the past 12 years. *See Amended Complaint, ¶8(e).* That should be the end of the analysis.

The reality is that Plaintiffs' undercapitalization contention is unsupported by any factual allegation of the Amended Complaint. For example, there are no allegations that Merscorp and MERS are burdened with substantial fixed costs such that they need to be highly capitalized. Further, there are no allegations that MERS incurs substantial costs in rendering services to its members that are not covered by annual membership fees or transaction fees. There are no allegations that creditors are routinely (or ever) stiffed. In short, one cannot reasonably infer based on what Plaintiffs have alleged that GMAC has used Merscorp or MERS to unjustly shields its assets from its creditors.

- 12 -

Even were MERS undercapitalized, that in and of itself does not permit a court to disregard corporate boundaries. *See Trs. of the Nat'l Elevator Indus. Pension Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir.2003) (holding that gross undercapitalization, like all the other factors involved in piercing the corporate veil, without more, is not a *per se* reason to pierce the corporate veil); *Harper v. Del. Valley Broadcasters, Inc.*, 743 F. Supp. 1076, 1085 (D.Del. 1990) ("no single factor [such as undercapitalization] could justify a decision to disregard the corporate entity").

At the end of the day, Plaintiffs' undercapitalization argument boils down to this: Plaintiffs believe that, if they are successful in maintaining a class action and on the merits, they will not be able to enforce their judgment against MERS.  That fear is clearly not a basis to conclude that MERS is undercapitalized and certainly does not justify piercing the corporate veil. *See, e.g., Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, *3 (Del.Ch. July 1, 2005) ("If creditors could enter judgments against shareholders every time a corporation becomes unable to pay its debts as they become due, the limited liability characteristic of the corporate form would be meaningless.").

For these reasons, Plaintiffs' claim that MERS is undercapitalized provides this Court with no basis to allow Plaintiffs' alter ego claim against GMAC to proceed.

## V.     CONCLUSION

Plaintiffs' alter ego theory is courageous or outrageous, depending on your point of view. First, Plaintiffs seek to pierce the veils of not one but two corporations.  Second, their ultimate target is not one controlling shareholder who has used the corporate form to visit injustice on creditors and investors but, rather, a subset of shareholders in the parent corporation who (a) directly compete with each other in the marketplace and (b) came together with others in the real

estate industry some 12 years ago to create what is now a widely used system to facilitate and streamline the tracking and processing of mortgage assignments and lien releases.  Against this backdrop, the Court should reject Plaintiffs' alter ego theory and dismiss the Amended Complaint with prejudice.

/s/ Katharine V. Jackson
Katharine V. Jackson (No. 4800)
**REED SMITH LLP**
1201 Market Street
Suite 1500
Wilmington, DE  19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kjackson@reedsmith.com

**Of Counsel:**

Henry F. Reichner, Esquire
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
Telephone: (215) 851-8266
Facsimile: (215) 851-1420
E-mail: hreichner@reedsmith.com

*Attorneys for Defendant GMAC-RFC Holding Company, LLC*

Dated:  February 15, 2008

- 14 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSE TREVINO and LORI S. TREVINO,
Individually and On Behalf of All Others
Similarly Situated,

                Plaintiffs,

        v.

Merscorp Inc., et al.,

                Defendants.

Case No. 07-00568 (JJF)

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 15, 2008, true and correct copies of the

foregoing proposed Order and Defendant GMAC-RFC Holding Company, LLC's Opening Brief

in Support of GMAC-RFC Holding Company, LLC's Motion to Dismiss were served via e-mail

upon the following counsel:

Robert M. Brochin
Sean M. O'Neill
Morgan Lewis & Bockius LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2339
rbrochin@morganlewis.com
so'neill@morganlewis.com

David S. Eagle
Kelly A. Green
Klehr, Harrison, Harvey, Branzburg & Ellers
919 Market Street
Suite 1000
Wilmington, DE 19801
deagle@klehr.com
kgreen@klehr.com

Jeffrey M. Norton, Esq.
Robert I. Harwood, Esq.
Harwood Feffer LLP
488 Madison Avenue
New York, NY 10022
jnorton@hfesq.com
rharwood@hfesqu.com

Matthew S. Chase, Esq.
The Chase Law Firm, PC
8123 Delmar Boulevard
University City, MO 63130-3729
matthew@chaselawpc.com

Kenneth J. Nachbar
Morris, Nichols, Arsht & Tunnell LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
knachar@mnat.com

Thomas Hefferon
Scott Nardi
Goodwin Procter
901 New York Avenue, NW
Washington, DC 20001
thefferson@goodwinproctor.com
snardi@goodwinproctor.com

John Dorsey
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jdorsey@ycst.com

Richard D. Kirk
Bayard, P.A.
222 Delaware Ave.
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardlaw.com

Stephen E. Herrmann
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
herrmann@rlf.com

Lucia Nale
Thomas V. Panoff
Mayer, Brown
71 S. Wacker Drive
Chicago, IL 60606
lnale@mayerbrown.com
tpanoff@mayerbrown.com

William McKenna
Jill Murch
Foley & Lardner LLP
321 North Clark
Suite 2800
Chicago, IL 60610
wmckenna@foley.com
jmurch@foley.com

Irene Freidel
Bruce Allensworth
K&LGates
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
bruce.allensworth@klgates.com
irene.freidel@klgates.com

David Baldwin
Peter J. Walsh Jr.
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE 19801
dbaldwin@potteranderson.com
pwalsh@potteranderson.com
dmoore@potteranderson.com

LeAnn Pedersen Pope
Danielle Szukala
Burke, Warren, MacKay & Serritella
330 N. Wabash Avenue
22nd Floor
Chicago, IL 60611
lpope@burkelaw.com
dszukala@burkelaw.com


Carmella P. Keener
Rosenthal, Monhait & Goddess, P.A.
Mellon Bank Center, Suite 1401
P.O. Box 1070
919 Market Street
Wilmington, DE 19899-1070
ckeener@rmgglaw.com

Kevin F. Brady
Jeremy D. Anderson
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
kbrady@cblh.com
janderson@cblh.com


                                         /s/ Katharine V. Jackson
                                         Katharine V. Jackson (No. 4800)