# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSE TREVINO and LORRY S. TREVINO,　　)
Individually and On Behalf Of All Others　)
Similarly Situated,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　)　　C.A. No. 07-568-JJF
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
MERSCORP, INC., MORTGAGE　　　　　　)
ELECTRONIC REGISTRATION SYSTEMS,　)
INC., CITIGROUP INC., COUNTRYWIDE　)
FINANCIAL CORPORATION, FANNIE MAE,　)
FREDDIE MAC, GMAC-RFC HOLDING　　)
COMPANY, LLC d/b/a GMAC RESIDENTIAL　)
FUNDING CORPORATION, HSBC FINANCE　)
CORPORATION, JPMORGAN CHASE & CO.　)
WASHINGTON MUTUAL BANK, and　　　　)
WELLS FARGO & COMPANY,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

## OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT WITH RESPECT TO SHAREHOLDER DEFENDANTS

BAYARD, P.A

**Of Counsel :**
Thomas M. Hefferon
Scott B. Nardi
Goodwin Procter LLP
901 New York Ave., NW
Washington, DC  20001
(202) 346-4000
thefferon@goodwinprocter.com
snardi@goodwinprocter.com

Richard D. Kirk (No. 922)
Stephen B. Brauerman (No. 4952)
222 Delaware Ave., Suite 900
Wilmington, DE  19899-5130
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com

*Attorneys for Defendants Countrywide*
*Financial Corp., Washington Mutual Bank,*
and Wells Fargo & Co.

RICHARDS, LAYTON & FINGER, P.A.

**Of Counsel:**

Irene Freidel

Bruce Allensworth

K&LGates

State Street Financial Center

One Lincoln Street

Boston, MA 02111-2950

(617) 951-9154

bruce.allensworth@klgates.com

irene.freidel@klgates.com

Stephen E. Herrmann (No. 691)

One Rodney Square

P.O. Box 551

Wilmington, DE 19899

(302) 658-6541

herrmann@rlf.com

*Attorneys for Defendant HSBC Finance Corporation*

YOUNG CONAWAY STARGATT & TAYLOR LLP

**Of Counsel:**

William McKenna

Jill Murch

Foley & Lardner LLP

321 North Clark

Suite 2800

Chicago, IL 60610

(312) 832-4541

WMcKenna@foley.com

jmurch@foley.com

John T. Dorsey (No. 2988)

The Brandywine Building

1000 West Street, 17th Floor

Wilmington, DE 19801

(302) 571-6600

jdorsey@ycst.com

*Attorneys for Defendant Fannie Mae*

KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP

**Of Counsel:**

LeAnn Pedersen Pope

Danielle Szukala

Burke, Warren, MacKay & Serritella, P.C.

330 N. Wabash Avenue

22nd Floor

Chicago, Illinois 60611

(312) 840-7000

lpope@burkelaw.com

dszukala@burkelaw.com

/s/ Kelly A. Green (de4095)

David S. Eagle (No. 3387)

Kelly A. Green (No. 4095)

919 Market Street, Suite 1000

Wilmington, DE 19801

(302) 426-1189

deagle@klehr.com

kgreen@klehr.com

*Attorneys for Defendant JPMorgan Chase & Co.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

**Of Counsel:**
Lucia Nale
Thomas V. Panoff
Mayer, Brown
71 S. Wacker Drive
Chicago, IL 60606
(312) 706-0600
lnale@mayerbrown.com
tpanoff@mayerbrown.com

/s/ Kenneth J. Nachbar (kn2067)
Kenneth J. Nachbar (No. 2067)
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 351-9294
knachbar@mnat.com

*Attorneys for Defendant Citigroup, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ..............................................................1

SUMMARY OF ARGUMENT .....................................................................................2

STATEMENT OF FACTS ............................................................................................3

ARGUMENT.................................................................................................................4

I.    The Amended Complaint Must Allege Facts Sufficient To Support Every
      Element Of Plaintiffs' Veil Piercing Claim In Order To Survive A Motion
      to Dismiss...........................................................................................................4

II.   The Trevinos Completely Ignore the Corporate Veil Between MERS and
      Merscorp. ...........................................................................................................5

III.  The Trevinos Do Not Allege Facts That Would Justify Piercing The
      Corporate Veil....................................................................................................7

      A.    Plaintiffs Bear a Heavy Burden in Attempting to Pierce MERS's
            Corporate Veil......................................................................................... 8

      B.    The Amended Complaint Is Plainly Insufficient To State a Claim
            That The Corporate Veil Should Be Pierced. ........................................... 9

            1.    The Trevinos Fail to Allege the Elemental Requirement of
                  Veil Piercing—that MERS's Corporate Form was Created
                  to Perpetrate Fraud or Injustice.................................................... 9

            2.    The Amended Complaint Does Not Invoke the Multiple
                  Factors Considered by Courts in Veil Piercing Claims. .............. 12

            3.    Even the assertion of undercapitalization is too weak to
                  stand. ........................................................................................ 15

IV.   MERS's Corporate Situation Doesn't Present A Scenario Ripe For Veil
      Piercing. ...........................................................................................................17

V.    The Shareholder Defendants Join In The Grounds For Dismissal Presented
      In The Motion Filed By MERS. ........................................................................18

CONCLUSION...............................................................................................................19

# TABLE OF AUTHORITIES

**CASES:**                                                                                **Page**

Am. Bell, Inc. v. Fed'n of Tel. Workers, 736 F.2d 879 (3d Cir. 1984)................................8, 9, 12

Anderson v. Abbott, 321 U.S. 349 (1944) ........................................................................15

Baldwin v. Matthew R. White Invs., Inc., 669 F. Supp. 1054 (D. Utah 1987)............................18

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, ____ U.S. ____ (2007) ............... 4-5, 11, 14, 15, 17

Conley v. Gibson, 355 U.S. 41 (1957).............................................................................4

C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556 (D. Del. 1998)................................11

Crosse v. BCBSD, Inc., 836 A.2d 492 (Del. 2003) ................................................11

Doug Grant, Inc. v. Great Bay Casino Corp., 232 F.3d 173 (3d Cir. 2000) ...................................5

Doyle v. Hoyle, Civ. No. 92-244-SD, 1995 U.S. Dist. LEXIS 10347
     (D.N.H. Jul. 20, 1995)..........................................................................................15

Harco Nat'l Ins. Co. v. Green Farms, Inc., C.A. No. 1131,
     1989 Del. Ch. LEXIS 114 (Sept.19, 1989) ..........................................................12

Harper v. Delaware Valley Broadcasters, Inc., 743 F. Supp. 1076 (D. Del. 1990)......................13

Haspel v. State Farm Mut. Auto. Ins. Co., 241 Fed. Appx. 837 (3d Cir. 2007) .............................5

HMG/Courtland Props., Inc. v. Gray, 729 A.2d 300 (Del. Ch. 1999).........................................8-9

In re Foxmeyer Corp., 290 B.R. 229 (Bankr. D. Del. 2003) ........................................................16

In re Prairie Trunk Ry., Bankr. No. 85 B 09421, 1991 Bankr. LEXIS 1474
     (Bankr. N.D. Ill. Sept. 27, 1991)..........................................................................16

Labadie Coal Co. v. Black, 672 F.2d 92 (D.C. Cir. 1982).......................................................15-16

Landgarten v. York Research Corp., No. 8417, 1988 Del. Ch. LEXIS 20 (Feb. 3, 1988) .............6

LaSalle Nat'l Bank v. Perelman, 82 F. Supp. 2d 279 (D. Del. 2000)...........................................10

Liafail, Inc. v. Learning 2000, Inc., No. 01-599, 2002 U.S. Dist. LEXIS 22620
     (D. Del. Nov. 25, 2002) ...............................................................................6, 13

Local Union No. 98, IBEW v. Garney Morris, Inc., C.A. No. 03-5272,
     2004 U.S. Dist. LEXIS 9528 (E.D. Pa. May 21, 2004)..........................................16

Mason v. Network of Wilmington, C.A. No. 19434-NC,
    2005 Del. Ch. LEXIS 99 (Jul. 1, 2005) .............................................................9, 12, 13, 14, 17

Medi-Tech of Egypt Corp. v. Bausch & Lomb Surgical, C.A. No. 19760-NC,
    2004 Del. Ch. LEXIS 21 (Mar. 4, 2004) .................................................................11

Midland Interiors, Inc. v. Burleigh, No. CIV.A. 18544, 2006 WL 3783476
    (Del. Ch. Dec. 19, 2006).....................................................................8, 12, 13, 18

Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260 (D. Del. 1989) .............................8, 10, 11

Outokumpu Eng'g Enter. v. Kvaerner Enviropower, Inc., 685 A.2d 724
    (Del. Super. 1996)...............................................................................................11

Pauley Petroleum Inc. v. Cont'l Oil Co., 239 A.2d 629 (Del. 1968).........................................8, 18

Pearson v. Component Tech. Corp., 247 F.3d 471 (3d Cir. 2001) .................................................12

Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466 (3d Cir. 1988)....................................6, 7

Stevenson v. Carroll, 495 F.3d 62 (3d Cir. 2007).................................................................5

Trs. of the Nat'l Elevator Indus. Pension Health Benefit & Educ. Funds v. Lutyk,
    332 F.3d 188 (3d Cir. 2003)..................................................................................passim

United States v. Bestfoods, 524 U.S. 51 (1998) .................................................................6

United States v. Golden Acres, Inc., 702 F. Supp. 1097 (D. Del. 1988) .......................................12

United States v. Pisani, 646 F.2d 83, 88 (3d Cir. 1981) .......................................................13

Wallace v. Wood, 752 A.2d 1175 (Del. Ch. 1999).................................................................9

Weidner v. Carroll, No. 06-CV-782-DRH, 2007 U.S. Dist. LEXIS 72604
    (S.D. Ill. Sept. 28, 2007) ...................................................................................15

Wellman v. Dow Chem. Co., Civ. No. 05-280-SLR, 2007 U.S. Dist. LEXIS 19527
    (D. Del. Mar. 20, 2007)........................................................................................9

Zubik v. Zubik, 384 F.2d 267 (3d Cir. 1967) ................................................................8, 10

**RULES AND REGULATIONS:**

Fed. R. Civ. P. 12(b)(6)..................................................................................................18

**OTHER AUTHORITIES:**

Donald J. Wolfe and Michael A. Pittenger, <u>Corporate and Commercial Practice in the Delaware Court of Chancery</u> § 2-3[b][iii] (2007)................................................... 8-9

## NATURE AND STAGE OF PROCEEDINGS

Defendants Countrywide Financial Corporation, Washington Mutual Bank, Wells Fargo & Company, CitiMortgage, Inc., Fannie Mae, HSBC Finance Corporation, and JPMorgan Chase & Co (referred to herein as the "Shareholder Defendants")[1] hereby move to dismiss the Amended Class Action Complaint ("Amended Complaint") because Plaintiffs Jose and Lorry Trevino ("Trevinos") have alleged no legal basis to pierce the corporate veil of the entity whose stock the Shareholder Defendants own, Merscorp, Inc., or even to pierce the corporate veil between Merscorp, Inc. and Mortgage Electronic Registration System, Inc. ("MERS"), the entity actually accused of wrongdoing in the Amended Complaint.

On January 29, 2008, Merscorp., Inc. and MERS separately filed a Motion to Dismiss the Amended Complaint. As of February 14, 2008, no other parties have Answered or otherwise responded to the Amended Complaint, although it is anticipated that other defendants will file motions to dismiss on February 15, 2008.

---

[1]    The entities alleged to be shareholders of Merscorp, Inc. are Countrywide Financial Corporation, Washington Mutual Bank, Wells Fargo & Company, Citigroup, Inc., Fannie Mae, Freddie Mac, GMAC-RFC Holding Company, LLC, d/b/a GMAC Residential Funding Corporation, HSBC Finance Corporation, and JPMorgan Chase & Co. In several instances the shareholders are not properly identified in the Amended Complaint, but that is not material for this Motion. Plaintiffs' counsel has informed the Defendants that they will file a Second Amended Class Action Complaint naming the proper corporate entities as defendants. Accordingly, the Shareholder Defendants expressly reserve all rights to challenge the naming of the proper corporate entities until the Second Amended Class Action Complaint is filed with the Court. In particular, for example, Citigroup, Inc. is not a proper defendant; the "Citi" entity that owns stock in Merscorp, Inc. is CitiMortgage, Inc., and CitiMortgage, Inc. is the only "Citi" entity that joins in this brief. Likewise, JPMorgan Chase & Co. is improperly identified as a shareholder; Morserv, Inc., a company affiliated with JPMorgan Chase & Co., is the current shareholder of Merscorp, Inc., and should replace JPMorgan Chase & Co. as a defendant when and if Plaintiffs file their proposed second amended complaint.

## SUMMARY OF ARGUMENT

1.      The Trevinos fail to establish that the corporate form should be disregarded to hold the Shareholder Defendants directly liable for the acts of the wholly owned subsidiary of the company whose shares they own.  To hold the Shareholder Defendants liable, Plaintiffs must overcome a steep burden.

2.      First, Plaintiffs must pierce the corporate veil between MERS—the company alleged to have committed wrong against the Trevinos—and Merscorp, Inc.—its parent.  The Amended Complaint does not contain a single factual allegation from which the Court could conclude that Merscorp and MERS operated as a single economic entity.

3.      Second, even if the Court ignores the corporate distinction between MERS and Merscorp, Plaintiffs must pierce the veil between Merscorp and its corporate shareholders.  The Amended Complaint, however, fails to allege facts to support any claim that either MERS or Merscorp's corporate structure was erected so the shareholders could commit fraud or visit injustice on the Trevinos and others.

4.      Moreover, Plaintiffs have not alleged facts sufficient to pierce the veil between MERS and the Shareholder Defendants.  Of the seven factors identified by the Third Circuit to determine the propriety of veil piercing, Plaintiffs' factual allegations mention only one—undercapitalization—but the law is clear that no one factor can support veil piercing relief.  Furthermore, even if that single element could be sufficient to pierce the corporate veil, Plaintiffs fail to allege facts sufficient to support the assertion that MERS is undercapitalized.

5.      Plaintiffs' efforts to pierce the corporate veil fall predictably short because MERS does not fit within the mold for such a claim.  The Amended Complaint does not portray a single, dominant shareholder using a corporate entity for his own purposes as the Court might expect.

Rather, it seeks to hold the Shareholder Defendants, who are competitors in the market place, liable for the alleged actions of the wholly-owned subsidiary, MERS—a properly functioning company set up for a legitimate purpose.

6.     For all of these reasons, the Amended Complaint fails to state a claim for piercing the corporate veil and imposing liability on the Shareholder Defendants. All claims against the Shareholder Defendants should therefore be dismissed.

## STATEMENT OF FACTS[2]

Plaintiffs Jose and Lorry Trevino, Missouri residents, borrowed $134,000 from NBank, N.A. in 2003. As part of the loan, they executed a Deed of Trust which named Plaintiffs as mortgagors on the loan and MERS as mortgagee. Am. Compl. ¶¶ 7, 19, Exs. A, B. As more fully explained in its pending motion to dismiss, Merscorp, Inc. was formed in 1993 by various participants in the real estate finance industry. The Shareholder Defendants are all current shareholders in Merscorp. Am. Compl. ¶ 8(c). MERS, in turn, is a wholly owned subsidiary of Merscorp. Id. ¶ 8(b). Both MERS and Merscorp are Delaware corporations. Id. ¶¶ 8(a),(b). MERS is an electronic registration system and clearinghouse that tracks both beneficial ownership interests in, and servicing rights to, mortgage loans as they change hands throughout the life of the loan. Id. ¶ 8(e). This tracking assists the mortgage banking industry by reducing questions regarding these contractual interests as they are bundled into mortgage-backed securities. To enable this system to work most efficiently, MERS is named as mortgagee of record—and remains so notwithstanding transfers of interest in the underlying loan. Id.

The Trevinos did not pay their loan on time, and defaulted by failing to make several payments. Am. Compl. ¶ 7. As a result of that default, MERS initiated foreclosure proceedings

in Missouri, using a Missouri lawyer. Id. The Trevinos stopped the foreclosure proceeding by

entering a loan modification agreement under which they agreed to cure their default and pay the

fees and costs associated with the foreclosure. Id. ¶ 60. Plaintiffs allege that MERS overcharged

them because those foreclosure fees and costs charged in connection with this reinstatement

allegedly were excessive. Id. ¶¶ 1, 37-39, 51.

     Plaintiffs sued MERS for breach of contract, unjust enrichment, and breach of the duty of

good faith and fair dealing—all claims essentially designed to obtain a refund of the fees. Am.

Compl. ¶¶ 71-73, 75-77, 81-82. For good measure, the Trevinos seek a nationwide class action.

Id. The Trevinos do not allege that the Shareholder Defendants took any of the actions at issue,

and they do not assert any direct liability against the Shareholder Defendants.[3] Thus, Plaintiffs'

only assertion of liability against the Shareholder Defendants is their contention that Merscorp's

corporate veil should be pierced, and the Shareholder Defendants ultimately held liable for the

alleged wrongdoing of MERS. Id. ¶¶ 9(j)-(m).

## ARGUMENT

### I. The Amended Complaint Must Allege Facts Sufficient To Support Every Element Of Plaintiffs' Veil Piercing Claim In Order To Survive A Motion to Dismiss.

     As the Supreme Court recently explained, in order to survive a motion to dismiss, a

complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell

Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974, ____ U.S. ____ (2007). In explaining this

standard, the Court repudiated the outdated rule of Conley v. Gibson, 355 U.S. 41 (1957), that a

complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no

---

[2]    While the Shareholder Defendants do not concede the validity of the allegations in the Amended Complaint, for purposes of this Motion they are assumed to be true.

[3]    Most Shareholder Defendants do not have any relationship at all with the Plaintiffs—they are not parties to any loan agreement or other contract with the Plaintiffs.

set of facts in support of his claim which would entitle him to relief." Twombly, 127 S. Ct. at

1968-69. Rather, the Court emphasized that, "plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." Id. at 1965; Haspel v. State Farm Mut. Auto. Ins.

Co., 241 Fed. Appx. 837, 839 (3d Cir. 2007) ("In considering whether the complaint survives a

motion to dismiss, we review whether it 'contain[s] either direct or inferential allegations

respecting all the material elements necessary to sustain recovery under some viable legal

theory.'"). Indeed, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level" and the court is "not bound to accept as true a legal conclusion couched as a

factual allegation." Twombly, 127 S. Ct. at 1965; Stevenson v. Carroll, 495 F.3d 62, 66 (3d Cir.

2007) (plaintiffs have an obligation to provide grounds for their entitlement to relief by

presenting factual allegations sufficient to raise their right to relief above a speculative level); see

also Doug Grant, Inc. v. Great Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (in

considering a motion to dismiss, the Court need not accept unwarranted inferences and

unsupported conclusions).

The Twombly standard is easy to apply to this case. To state a claim against the

Shareholder Defendants, the Amended Complaint must allege facts that, if proven, would present

a plausible basis not only to disregard the separate corporate existences of MERS and Merscorp,

but also to pierce Merscorp's corporate veil to hold the Shareholder Defendants, as shareholders

of Merscorp, liable for MERS's alleged misconduct. Plaintiffs cannot allege such facts, and

therefore the Amended Complaint fails to state a claim.

## II.    The Trevinos Completely Ignore the Corporate Veil Between MERS and Merscorp.

The critical first step in establishing the Shareholder Defendants' liability would be to

pierce the corporate veil between MERS and Merscorp. Plaintiffs completely ignore this

requirement, however, and fail to allege a single fact concerning the corporate veil that shields Merscorp from the liability of its wholly owned subsidiary, MERS. For this reason alone, the Amended Complaint fails to state a claim against the Shareholder Defendants.

As the Supreme Court has held, "[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." United States v. Bestfoods, 524 U.S. 51, 61 (1998) (citations omitted). In order to pierce the corporate veil between a parent corporation and its subsidiary, even a wholly owned subsidiary, a plaintiff must establish that the parent and subsidiary "operated as a single economic entity" and that there was an "overall element of injustice or unfairness." Liafail, Inc. v. Learning 2000, Inc., No. 01-599, 2002 U.S. Dist. LEXIS 22620, at *34 (D. Del. Nov. 25, 2002); see also Landgarten v. York Research Corp., No. 8417, 1988 Del. Ch. LEXIS 20, *12 (Feb. 3, 1988). Indeed, the veil should not be pierced unless "circumstances indicate that the subsidiary is merely the shadow of the parent." Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1476 (3d Cir. 1988).

The Amended Complaint alleges only that MERS is a wholly owned subsidiary of Merscorp. Am. Compl. ¶ 8(b). Significantly, it contains no allegations concerning why the corporate structure of Merscorp should be disregarded so that it—and its shareholders—may be held directly liable for the alleged wrongdoing of MERS. Rather, the Trevinos appear to try and gloss over the distinction between MERS and Merscorp by simply defining the term "MERS" to include both entities. Id. at Intro. It is clear, however, that Merscorp is not the entity that Plaintiffs allege took improper actions. Rather, the Trevinos allege that MERS (Merscorp's subsidiary) is "the record mortgage holder" that "has the authority to foreclose." Id. ¶ 8(f). Thus, while Plaintiffs fail to distinguish between Merscorp and MERS in their substantive

allegations, it is clear that allegations concerning the institution of foreclosure proceedings, the directing or permitting of attorneys to collect improper fees, and the breach of the Mortgage Note must only refer to the entity with the authority to foreclose—the subsidiary company, MERS. Any reading of the Amended Complaint to suggest direct liability on the part of Merscorp would be nonsensical.

In the absence of any allegation of direct liability, to hold Merscorp directly liable for the actions complained of the Trevinos must demonstrate that MERS "is merely the shadow of" Merscorp. See Phoenix Canada Oil Co., 842 F.2d at 1476. But other than observing that it is a wholly owned subsidiary, the Trevinos make absolutely no allegations about the relationship between Merscorp and MERS. Since there are no facts alleged in the Amended Complaint that, if proven, would support piercing the veil between Merscorp and its subsidiary, the Trevinos have failed to state a claim against Merscorp. And, as the Shareholder Defendants are owners only of Merscorp (Am. Compl. ¶ 8(c)) not its wholly owned subsidiary, MERS (Id. ¶ 8(b)), Plaintiffs' failure to allege facts that would allow the piercing of the MERS-Mercorp. corporate veil is fatal to their claims against the Shareholder Defendants.[4]

## III.    The Trevinos Do Not Allege Facts That Would Justify Piercing The Corporate Veil.

Even if this Court accepts the Trevinos' overbroad definition of "MERS," and determines that the distinction between Merscorp and MERS can be disregarded so that the two are considered a single entity owned by the Shareholder Defendants, the Amended Complaint

---

[4]    Given the fact that Plaintiffs fail to allege even a single fact to support piercing the veil between Merscorp and its subsidiary, the Shareholder Defendants will not address the various factors that would need to be considered to pierce the veil between Merscorp and MERS unless requested to by this Court.

nevertheless fails to state a claim because it does not allege facts sufficient to pierce the

corporate veil between MERS[5] and the Shareholder Defendants.

### A.    Plaintiffs Bear a Heavy Burden in Attempting to Pierce MERS's Corporate Veil.

Both the Third Circuit and Delaware Courts recognize that "[P]iercing the corporate veil

is an exception reserved for extreme situations, rather than the rule." Trs. of the Nat'l Elevator

Indus. Pension Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 197 (3d Cir. 2003); see

also Midland Interiors, Inc. v. Burleigh, No. CIV.A. 18544, 2006 WL 3783476, at *3 (Del. Ch.

Dec. 19, 2006.)[6]  Courts will not pierce the corporate veil and disturb the legal attributes of a

corporation "absent compelling cause" (Midland Interiors, Inc., 2006 WL 3783476, at *3 ), and

only in "specific unusual circumstances." Am. Bell, Inc. v. Fed'n of Tel. Workers, 736 F.2d

879, 886 (3d Cir. 1984) (citing Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967)).  The

reluctance of courts to pierce the corporate veil is based on sound public policy considerations.

The corporate form exists to "limit the liability of investors to the capital they pay in." Lutyk,

332 F.3d at 195; see also Zubik, 384 F.2d at 273 ("Limiting one's personal liability is a

traditional reason for a corporation.  Unless done deliberately, with specific intent to escape

liability . . . the cause of justice does not require disregarding the corporate entity."); Donald J.

---

[5]    The Shareholder Defendants do not concede that the corporate distinction between Merscorp and MERS may be disregarded.  As Plaintiffs appear to treat Merscorp and MERS as a single entity owned by the Shareholder Defendants, however, the Shareholder Defendants will demonstrate that veil piercing even based on such an assumption is not supported by the Amended Complaint.

[6]    As Plaintiffs are attacking the corporate form of two Delaware corporations (Merscorp and MERS) in a Delaware court, there is no question that the veil piercing analysis used by state and federal courts in this jurisdiction applies to their claims. See Mobil Oil, 718 F. Supp. at 267 (Delaware law applies "when it is a Delaware corporation that would be ignored"); Pauley Petroleum Inc. v. Cont'l Oil Co., 239 A.2d 629 (Del. 1968) (applying Delaware law where the plaintiffs sought to pierce the veil of a Delaware corporation); HMG/Courtland Props., Inc. v.

Wolfe and Michael A. Pittenger, <u>Corporate and Commercial Practice in the Delaware Court of Chancery</u> § 2-3[b][iii] at 2-34 – 2-35 (2007) ("It is a fundamental tenet of corporate law . . . that corporations are entities separate and distinct from their stockholders, and therefore that stockholders ordinarily are insulated from personal liability for the debts and obligations of the corporation.").

The requirements the Trevinos will need to satisfy here "are demanding ones." <u>Am. Bell, Inc.</u>, 736 F.2d at 886. Delaware federal and state courts have held that a plaintiff's claims for veil piercing must be dismissed where the complaint fails to allege facts sufficient to satisfy this heavy burden. <u>See</u> <u>Wellman</u> v. <u>Dow Chem. Co.</u>, Civ. No. 05-280-SLR, 2007 U.S. Dist. LEXIS 19527, at *5-6 (D. Del. Mar. 20, 2007); <u>Wallace</u> v. <u>Wood</u>, 752 A.2d 1175, 1183-84 (Del. Ch. 1999).

> **B.    The Amended Complaint Is Plainly Insufficient To State a Claim That The Corporate Veil Should Be Pierced.**
>
> > **1.    The Trevinos Fail to Allege the Elemental Requirement of Veil Piercing—that MERS's Corporate Form was Created to Perpetrate Fraud or Injustice.**

The Shareholder Defendants are entitled to dismissal, first and foremost, because the Trevinos do not even allege that MERS was established or operated for the purposes of committing fraud or visiting some other injustice upon them and other borrowers. <u>See</u> <u>Mason</u> v. <u>Network of Wilmington</u>, C.A. No. 19434-NC, 2005 Del. Ch. LEXIS 99, at *10-11 (Jul. 1, 2005) (to pierce the corporate veil "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud") (internal quotations omitted). At the heart of any veil piercing analysis is the central question of whether the corporation whose form is to be disregarded was established

---

<u>Gray</u>, 729 A.2d 300, 309 (Del. Ch. 1999) ("this court has looked to the law of the entity in determining whether the entity's separate existence is to be disregarded.")

or operated in the corporate form for some fraudulent purpose.  LaSalle Nat'l Bank v. Perelman,

82 F. Supp. 2d 279, 295 (D. Del. 2000) ("In order to prevail on a claim to pierce the corporate

veil . . . a plaintiff must prove that the corporate form causes fraud or similar injustice."); see also

Lutyk, 332 F.3d at 197 (recognizing the importance of establishing that the corporation was

created "to defraud its creditors or other improper purpose").  Nowhere in their Amended

Complaint, however, do the Trevinos assert that MERS is intended to be a sham corporation

using the corporate formalities to perpetrate fraud or injustice.

     This Court's decision in Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260 (D. Del.

1989) illustrates the critical importance of allegations of fraud or injustice.  In Mobil Oil, the

court refused to pierce the veil and hold a parent company liable for patent infringement, even

though the plaintiff (unlike here) had alleged facts supporting a number of factors in support of

their veil piercing claim.  The court rested its conclusion on the sole fact the plaintiff had failed

to allege—in addition to those factors—that the defendant used the allegedly improper corporate

form for the purpose of committing fraud or injustice.  718 F. Supp. at 267.  The court explained

that a finding of fraud or injustice in the defendant's use of the corporate form was a necessary

element in the piercing inquiry.  Id. at 269-70.  Thus, the court granted the defendant parent

company's motion for summary judgment, finding that in the absence of such evidence it could

not disregard the corporate entity.  Id. at 269-71.

     Mobil Oil establishes that if a piercing claim is not based on, or supported by, allegations

that the form was used with the purpose of committing fraud or injustice, the claim will fail.  See

also Zubik, 384 F.2d at 273-74 (refusing to pierce the veil, despite evidence of commingling,

control by dominant shareholder and a lack of corporate formalities, where nothing in the record

indicated corporation was used to commit fraud).  The Trevinos fail to make the necessary

allegations of fraud or injustice and, therefore, the amended complaint cannot survive dismissal. See, e.g., C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 559 (D. Del. 1998) (citing Mobil Oil and finding that where the complaint included no allegations of "fraud, injustice or inequity in the use of the corporate form" the subsidiary was not the alter ego of its parent); Medi-Tech of Egypt Corp. v. Bausch & Lomb Surgical, C.A. No. 19760-NC, 2004 Del. Ch. LEXIS 21, at *30-34 (Mar. 4, 2004) (same). The Trevinos' pleading deficiencies are even more glaring under the recent standards mandated by the Supreme Court in Twombly requiring a plaintiff not only to allege the required elements for piercing the corporate veil, but also to assert sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." 127 S. Ct. at 1965.

The Trevinos cannot rely upon their vague allegations that MERS breached its contract with Plaintiffs and otherwise acted improperly by supposedly overcharging certain fees in order to establish the required elements for an alter ego claim, because the element of "injustice" must be "more than the breach of contract alleged in the complaint." See Outokumpu Eng'g Enter. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 729 (Del. Super. 1996) ("'[I]njustice' must be more than the breach of contract alleged in the complaint."). Rather, the Trevinos must allege that the very structure and design of MERS was designed to visit fraud or injustice upon others by manipulating otherwise appropriate corporate formalities. Crosse v. BCBSD, Inc., 836 A.2d 492, 497 (Del. 2003) ("To state a veil-piercing claim, the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." (internal quotations omitted)); Medi-Tech of Egypt Corp., 2004 Del. Ch. LEXIS 21, at *30-34 (veil piercing claim dismissed because plaintiff did not plead that alleged fraud was related to a misuse of the corporate structure). The absence of any assertion

(and alleged factual support) that MERS was designed to commit fraud or injustice is fatal to Plaintiffs' veil piercing efforts.

>    **2.    The Amended Complaint Does Not Invoke the Multiple Factors Considered by Courts in Veil Piercing Claims.**

In cases where there is some allegation that the corporate form has been misused, courts in Delaware and the Third Circuit examine a number of factors to determine whether the corporate veil between shareholders and the corporation could be pierced.  Specifically, the Third Circuit examines:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a façade for the operations of the dominant stockholder.

Pearson v. Component Tech. Corp., 247 F.3d 471, 484-85 (3d Cir. 2001); see also Am. Bell, Inc., 736 F.2d at 886; United States v. Golden Acres, Inc., 702 F. Supp. 1097, 1104 (D. Del. 1988).  Delaware's state courts consider these same factors when a plaintiff seeks to pierce the corporate veil.  See, e.g., Midland Interiors, 2006 WL 3783476, at *4-6 (considering corporate formalities, business practices of the corporation after it was legally void, and fraud); Mason, 2005 Del. Ch. LEXIS 99, at *10-17 (considering insolvency, undercapitalization, and corporate formalities); Harco Nat'l Ins. Co. v. Green Farms, Inc., C.A. No. 1131, 1989 Del. Ch. LEXIS 114, at *15-16 (Sept. 19, 1989) (considering corporate formalities, commingling of assets, and undercapitalization).

Dismissal is required because the Amended Complaint fails to meet these elemental pleading standards.  Despite clear law cited above that a plaintiff seeking to pierce the veil bears a heavy burden and must set forth facts to meet a multi-factor test, the Trevinos omit all but one factor, and even their allegations as to that factor do not raise an issue worthy of further

litigation.  Nowhere do they plead the elements to establish that any shareholder defendant is a single economic entity with MERS or Merscorp.  Likewise, there is no allegation that MERS (1) fails to observe corporate formalities; (2) fails to pay dividends; (3) fails to keep corporate records; (4) is insolvent; or (5) has dominant shareholders siphoning off their funds.  <u>United States</u> v. <u>Pisani</u>, 646 F.2d 83, 88 (3d Cir. 1981); <u>Liafail, Inc.</u>, 2002 U.S. Dist. LEXIS 22620, at *34-35.[7]  Ignoring the facts (as well as the requirements, discussed above, that the suit be based on an intentional misuse of formalities), the Amended Complaint instead alleges only that MERS is "undercapitalized."  Am. Compl. ¶ 9(l).  This is not enough to state a claim.

While capitalization (or lack thereof) is one of the recognized factors, no one factor is sufficient, on its own, to state a claim against shareholders.  Rather, plaintiffs must allege a combination of factors to justify their effort to ignore the defendant's corporate structure.  <u>See</u> <u>Mason</u>, 2005 Del. Ch. LEXIS 99, at *10-14; <u>Harper</u> v. <u>Delaware Valley Broadcasters, Inc.</u>, 743 F. Supp. 1076, 1085 (D. Del. 1990) (holding that "no single factor could justify a decision to disregard the corporate entity, but that some combination of them was required"); <u>see also</u> <u>Midland Interiors</u>, 2006 WL 3783476, at *3.  Even if Plaintiffs could prove that MERS was undercapitalized—and they cannot—as a matter of law that factor alone would not be enough to pierce the corporate veil.  <u>Lutyk</u>, 332 F.3d at 197 ("A shortage of capital, as with all the factors of the alter ego doctrine, is not *per se* a reason to pierce the corporate veil.").

Several cases have held that allegations of undercapitalization on their own are insufficient to pierce the corporate veil.  In <u>Mason</u> v. <u>Network of Wilmington, Inc.</u>, for example,

---

[7]    Indeed, to the extent the Amended Complaint says anything about the corporate formalities of MERS, it indicates that it is a properly constituted corporation that is separate and distinct from the shareholder defendants.  <u>See, e.g.</u>, Am. Compl., ¶¶ 8(c)-(e) (stating, *inter alia*, that MERS is has multiple institutional stockholders that are unrelated to MERS, different classes of stock, a board of directors and a legitimate business purpose and function).

the Delaware Court of Chancery refused to pierce the corporate veil despite allegations that the

defendant corporation was insolvent, undercapitalized, and did not adhere to corporate

formalities. 2005 Del. Ch. LEXIS 99, at *10-17. In <u>Mason</u>, the plaintiff sought to pierce the veil

of a closely held corporation to hold the sole owner liable for employment discrimination. The

court denied the plaintiff's motion for summary judgment holding that the plaintiff had not

adequately asserted facts sufficient to support any of her allegations (<u>id.</u> at *11-17), but that even

if plaintiff had asserted facts to show the corporation was undercapitalized or insolvent, this

would not be enough to pierce the veil. <u>Id.</u> at *14. As such, the <u>Mason</u> Court rejected the

plaintiff's piercing claim and granted summary judgment to the defendant shareholder. <u>Id.</u> at

*17.

Likewise, the court in <u>Lutyk</u> reviewed several factors to determine whether veil piercing

was appropriate, including undercapitalization, the siphoning of assets by the parent, lack of

corporate formalities and records, and injustice. <u>See</u> 332 F.3d at 195-97. In <u>Lutyk</u>, although the

Court ultimately determined that the veil was appropriately pierced, it found that the District

Court erred in concluding that the corporation was undercapitalized and "inappropriately gave

that finding significant weight." <u>Id.</u> at 196. The court reasoned that an inquiry into whether to

pierce the corporate veil involves a "consideration of relevant factors" and "a shortage of capital,

as with all factors of the alter ego doctrine, is not a *per se* reason to pierce the corporate veil."

<u>Id.</u> at 197.

In order to state a claim against corporate shareholders, a plaintiff must set forth facts that

make a plausible case based on a combination of the piercing factors. <u>Twombly</u>, 127 S. Ct. at

1974. Undercapitalization allegations alone—even when supported by facts—are not sufficient

to pierce the corporate veil. Plaintiffs' Amended Complaint cannot survive dismissal merely by

alleging that MERS was undercapitalized, and accordingly fails to state a claim against the Shareholder Defendants.

### 3.    Even the assertion of undercapitalization is too weak to stand.

Even if a single factor were sufficient to pierce the corporate veil, Plaintiffs' Amended Complaint still fails because it does not allege sufficient facts to support undercapitalization, the single factor pled.  Under Twombly, the mere conclusory assertion that MERS is undercapitalized is not enough—Plaintiffs must allege facts in the Amended Complaint that, if true, would render it plausible they could prove that assertion.  Twombly, 127 S. Ct. at 1965 (to state a claim sufficient to survive a motion to dismiss, a complaint must contain enough factual matter (taken as true) to suggest plaintiff's claim is true and that the defendant acted unlawfully); Weidner v. Carroll, No. 06-CV-782-DRH, 2007 U.S. Dist. LEXIS 72604, at *8-9 (S.D. Ill. Sept. 28, 2007) (examining specific factual allegations to determine if veil piercing claim could survive Motion to Dismiss).

Undercapitalization is not a simple measure of corporate income, or even a consideration of whether a defendant is in debt.  Rather, it is dependent upon an analysis of the purpose, nature, scope, and risks of the corporate undertaking.  Anderson v. Abbott, 321 U.S. 349, 362 (1944); Labadie Coal Co. v. Black, 672 F.2d 92, 99 (D.C. Cir. 1982); Doyle v. Hoyle, Civ. No. 92-244-SD, 1995 U.S. Dist. LEXIS 10347, *3-4 (D.N.H. Jul. 20, 1995).  To support an assertion that MERS was undercapitalized, the Trevinos will be required to prove that, in light of (a) the standard capitalization in the particular industry, (b) initial capital, (c) whether the corporation has met or can meet debts, and (d) anticipated revenues, MERS was not a financially legitimate enterprise.  See Doyle, 1995 U.S. Dist. LEXIS 10347, at *7 (determining company was not undercapitalized by looking to insurance industry generally and explaining that relatively small amounts of current fixed assets in excess of liabilities was typical); Labadie Coal Co., 672 F.2d

at 99 (looking to the brokerage industry generally and explaining that a broker in the pure

sense—one who simply arranges transactions—may have less reason for high capitalization than

a company that actually purchases commodities for resale); Local Union No. 98, IBEW v.

Garney Morris, Inc., C.A. No. 03-5272, 2004 U.S. Dist. LEXIS 9528, at *7-8 (E.D. Pa. May 21,

2004) (determining corporation was not undercapitalized by looking to its initial capitalization

and disregarding a financial setback due to a large unpaid receivable); In re Prairie Trunk Ry.,

Bankr. No. 85 B 09421, 1991 Bankr. LEXIS 1474, at *22-27 (Bankr. N.D. Ill. Sept. 27, 1991)

(looking to anticipated future revenue from long term contract and refusing to pierce corporate

veil despite auditor's opinion that there was a capital deficit).

Courts have explained further that undercapitalization is not relevant to a veil piercing

inquiry unless the corporation at issue was undercapitalized from its inception. See Lutyk, 322

F.3d at 197. In In re Foxmeyer Corp., for example, the court refused to pierce the corporate veil

despite evidence of insolvency. 290 B.R. 229 (Bankr. D. Del. 2003). In that case, the

bankruptcy trustee sought to pierce the corporate veil and hold a parent company liable for the

fraudulent conveyances of its subsidiary. The court examined several factors and held that the

trustee had not produced evidence sufficient to pierce the corporate veil. Id. at 244-46.

Moreover, the court specifically found that undercapitalization is only relevant from a veil

piercing standpoint if the corporation was inadequately capitalized or insolvent from its

inception, or the parent caused insolvency by its subsequent actions. Id. at 244. Where no such

evidence existed, inadequate capitalization could not be grounds for veil piercing.[8]

---

[8]    This rule of course makes sense, as events subsequent to incorporation could lead a
company to expend its capital but that would not mean the corporation was intended to be a
sham mechanism for fraud.

To establish undercapitalization in this case, the Trevinos will therefore have to prove, at least, that MERS was set up, and allowed to operate, with insufficient funding to support its business purpose of "[acting as] a secondary mortgage market, [to] internally administer the buying and selling of mortgages, and to simplify the administration of home mortgages including foreclosure proceedings." Am. Compl. ¶ 8(e). The Amended Complaint, however, is completely devoid of any allegations upon which the Trevinos could rest a case, even considering the undercapitalization allegations. It contains no allegation concerning the level of capitalization that is standard in MERS's industry, or required for its operations, let alone whether the company was sufficiently funded to satisfy its debts and to operate when it was formed fifteen years ago.

Plaintiffs, simply state that MERS must be undercapitalized because it had "only" $11 million in revenue and 40 employees while it stood as mortgagee for "tens of millions" of loans. Am. Compl. ¶ 9(k). In a vacuum, this does not make it a plausible claim of undercapitalization. Among other things, it does not explain how operational expenses or liabilities are likely to overwhelm capital, or allege that MERS is exposed to risks that otherwise are not indemnified by the companies that actually own or service the loans. Without more, the Trevinos have not satisfied Twombly even with respect to undercapitalization—the only veil piercing factor they allege—and their claims against the shareholders must be dismissed. See Mason, 2005 Del. Ch. LEXIS 99, at *10-17 (finding that the corporate veil could not be pierced where there were no facts demonstrating undercapitalization.).

## IV.     MERS's Corporate Situation Doesn't Present A Scenario Ripe For Veil Piercing.

It is not surprising that Plaintiffs cannot allege facts sufficient to support their veil piercing claim, because the relationship between MERS and the Shareholder Defendants is simply not conducive to such allegations. Veil piercing is most typically used as a remedy where

a corporation is closely held or dominated by a single shareholder, who uses it for his personal

benefit rather than as a legitimate business concern. See, e.g., Baldwin v. Matthew R. White

Invs., Inc., 669 F. Supp. 1054, 1056 (D. Utah 1987); see also Midland Interiors, 2006 WL

3783476, at *6 (piercing the veil where corporation's sole stockholder negotiated contracts on

behalf of legally void corporation). The purpose of ignoring the corporate form is to insure that

the acts of a single, dominant shareholder are not shielded by empty corporate formalities.

MERS does not fit that profile.

As recognized by Plaintiffs themselves, MERS was formed for (and performs) a

legitimate business purpose—to assist with the administration of mortgages in the secondary

mortgage market. Am. Compl. ¶ 8(e). That legitimate business purpose illustrates the

difficulties Plaintiffs face in piercing the corporate veil, and undermines their claims against the

Shareholder Defendants. See, e.g., Pauley Petroleum Inc., 239 A.2d at 633 (refusing to pierce

the veil where the record indicated that the corporation served a legitimate business purpose).

Moreover, MERS's shareholders consist of several competitors in the mortgage industry

(Am. Compl. ¶ 9)—hardly a group that could be characterized as a single functioning entity.

Plaintiffs' own description of MERS and its shareholders betrays any attempt to pierce the

corporate veil and assign MERS's alleged liability to the Shareholder Defendants.

## V.    The Shareholder Defendants Join In The Grounds For Dismissal Presented In The Motion Filed By MERS.

In addition to their failure to allege facts sufficient to state a claim for piercing MERS's

corporate veil, Plaintiffs' substantive claims must be dismissed under Rule 12(b)(6). As

demonstrated in the Motion to Dismiss filed by MERS on January 29, 2008, the allegations in

the Amended Complaint fail to state a claim for relief as to MERS itself. Rather than repeat

those arguments here, the Shareholder Defendants adopt the arguments included in the MERS's

brief. And as noted above, the claims against the Shareholder Defendants are entirely derivative; that is, they are alleged to be liable only if MERS is itself liable. Thus, even if Plaintiffs' veil piercing claims could survive, the Amended Complaint would not state any claims against the Shareholder Defendants. In addition, the Shareholder Defendants adopt the arguments raised by defendant GMAC in their separately filed motions to dismiss to the extent that those arguments apply to any or all of the Shareholder Defendants.

## CONCLUSION

For all of the foregoing reasons, the Amended Complaint must be dismissed with respect to the Shareholder Defendants.

BAYARD, P.A

**Of Counsel :**
Thomas M. Hefferon
Scott B. Nardi
Goodwin Procter LLP
901 New York Ave., NW
Washington, DC  20001
(202) 346-4000
thefferon@goodwinprocter.com
snardi@goodwinprocter.com

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (No. 922)
Stephen B. Brauerman (No. 4952)
222 Delaware Ave., Suite 900
Wilmington, DE  19899-5130
(302) 655-5000
RKirk@bayardlaw.com
sbrauerman@bayardlaw.com

*Attorneys for Defendants Countrywide*
*Financial Corp., Washington Mutual Bank,*
*and Wells Fargo & Co.*

RICHARDS, LAYTON & FINGER, P.A.

**Of Counsel:**
Irene Freidel
Bruce Allensworth
K&LGates
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
(617) 951-9154
bruce.allensworth@klgates.com
irene.freidel@klgates.com

/s/ Stephen E. Herrman (sh0691)
Stephen E. Herrmann (No. 691)
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 658-6541
herrmann@rlf.com

*Attorneys for Defendant HSBC Finance*
*Corporation*

{00739288;v1}                    19

YOUNG CONAWAY STARGATT & TAYLOR LLP

**Of Counsel:**
William McKenna
Jill Murch
Foley & Lardner LLP
321 North Clark
Suite 2800
Chicago, IL 60610
(312) 832-4541
WMcKenna@foley.com
jmurch@foley.com

/s/ John T. Dorsey (jd2988)
John T. Dorsey (No. 2988)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jdorsey@ycst.com

*Attorneys for Defendant Fannie Mae*


KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS  LLP

**Of Counsel:**
LeAnn Pedersen Pope
Danielle Szukala
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue
22nd Floor
Chicago, Illinois  60611
(312) 840-7000
lpope@burkelaw.com
dszukala@burkelaw.com

/s/ Kelly A. Green (de4095)
David S. Eagle (No. 3387)
Kelly A. Green (No. 4095)
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189
deagle@klehr.com
kgreen@klehr.com

*Attorneys for Defendant JPMorgan Chase & Co.*


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

**Of Counsel:**
Lucia Nale
Thomas V. Panoff
Mayer, Brown
71 S. Wacker Drive
Chicago, IL 60606
(312) 706-0600
lnale@mayerbrown.com
tpanoff@mayerbrown.com

/s/ Kenneth J. Nachbar (kn2067)
Kenneth J. Nachbar (No. 2067)
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 351-9294
knachbar@mnat.com

*Attorneys for Defendant Citigroup, Inc.*