## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Jose Trevino and Lori S. Trevino, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Merscorp Inc., et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:  Case No. 07-00568 (JJF)<br>:<br>:<br>:<br>:<br>:<br>: |

## REPLY BRIEF OF DEFENDANT GMAC-RFC
## HOLDING COMPANY, LLC
## IN SUPPORT OF ITS MOTION TO DISMISS

Katharine V. Jackson (No. 4800)
**REED SMITH LLP**
1201 Market Street, Suite 1500
Wilmington, DE  19801
Telephone: (302) 778-7510
Facsimile: (302) 778-7575
E-mail: kjackson@reedsmith.com


**Of Counsel:**

Henry F. Reichner
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
Telephone: (215) 851-8266
Facsimile: (215) 851-1420
E-mail: hreichner@reedsmith.com
*Admitted pro hac vice*

*Attorneys for Defendant GMAC-RFC
Holding Company, LLC*

Dated:  June 10, 2008

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ................................................................................................1

II. ARGUMENT......................................................................................................2

    A.  Plaintiffs Cannot Hold GMAC Liable Under An Agency Theory Because Plaintiffs' Cause Of Action And Claim Of Wrongdoing Does Not Arise Out Of GMAC's Alleged Arrangement With MERS.................................................2

    B.  There Continues To Be No Viable Alter Ego Claim Against GMAC....................4

        1.  That MERS And Merscorp Are Located In The Same Building And Allegedly Have Overlapping Employees And Managers Does Not Support Resort To Veil Piercing.........................................................4

        2.  Plaintiffs' Allegations Do Not Make It Plausible That "MERS" Is The Alter Ego Of GMAC .................................................7

            a.  Fear That "MERS" Might Not Be Able To Satisfy The Judgment Plaintiffs Hope To Obtain For The Proposed Class Does Not Support Veil Piercing.............................................7

            b.  That MERS Is Operated To Lower Its Members' Costs Instead Of Maximizing Its Own Profits Does Not Support Veil Piercing .................................................10

            c.  Nonpayment Of Dividends Is All Plaintiffs Have And That Factor Is Insufficient In And Of Itself ..........................................11

        3.  Plaintiffs Are Not Entitled To Discovery Or To Further Amend Their Complaint With Respect To GMAC .................................................12

III. CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arch v. American Tobacco Company, Inc.*, 984 F. Supp. 830 (E.D. Pa. 1997)............................. 7

*Arthur Jordan Piano Co. v. Lewis*, 154 A. 467 (Del. Super. 1930) ............................... 3

*Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007) ............................... 11

*CC Investors Corp. v. Raytheon Co.*, 219 F.R.D. 328 (D.Del. 2003) ......................... 2, 3

*Comcast Spectacor L.P. v. Chubb & Son, Inc.*, 2006 WL 2302686 (E.D. Pa. Aug. 8, 2006) ........ 4

*Divlus v. Churchill Valley Country Club*, 601 F. Supp. 677 (W.D. Pa. 1985) ............................ 11

*E.I. DuPont De Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates,*
*S.A.S.*, 269 F.3d 187 (3d Cir. 2001) ........................................................... 2

*In re Hillsborough Holdings Corp.*, 176 B.R. 223 (M.D.Fla. 1994) ............................... 7

*In re Silicone Gel Breast Implants Products Liability Litigation,*
837 F. Supp. 1128 (N.D.Ala. 1993) ........................................................... 7

*Kasprzak v. American General Life & Accident Ins. Co.*, 914 F. Supp. 144, (E.D. Tex. 1996) .... 5

*Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954 (Del.Ch. July 1, 2005) ..................... 6

*Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260 (D.Del. 1989) ......................... 3

*Nat'l Elevator Indus. Pension Health Benefit & Educ. Funds v. Lutyk,*
332 F.3d 188 (3d Cir.2003)..................................................................... 10

*Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir. 2001) ......................... 4

*Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 842 F.2d 1466 (3d Cir. 1988) ............................. 2

*Schenley Distillers Corp. v. U.S.*, 61 F. Supp. 981 (D.Del. 1945)................................. 9

*Skidmore, Owings & Merrill v. Canada Life Ass. Co.*, 907 F.2d 1026 (10th Cir. 1990)................ 7

*Smith v. S & S Dundalk Engineering Works, Ltd.*, 139 F. Supp.2d 610 (D. N.J. 2001)................ 5

*United States v. Bestfoods*, 524 U.S. 51 (1998) ........................................................ 4, 5, 9

## I.    **INTRODUCTION**

The problem with Plaintiffs' new agency theory with respect to Defendant GMAC-RFC Holding Company, LLC ("GMAC") is simple and inescapable:  Plaintiffs admit that GMAC never had anything to do with Plaintiffs' mortgage loan and that Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") was acting for another MERS member when MERS allegedly assessed improper charges on Plaintiffs' loan.  Thus, even assuming MERS and GMAC have an agency/principal arrangement for some purposes, Plaintiffs' own pleadings establish that their cause of action does not arise out of that relationship.  As Third Circuit precedent and this Court's own decisions require that Plaintiffs' cause of action arise out of the alleged agency arrangement, Plaintiffs cannot state a claim against GMAC under this theory.

With respect to the alter ego theory, Plaintiffs concede that fraud or manifest injustice is required and further concede there is no fraud.  More to the point, Plaintiffs admit that "MERS" has a legitimate business purpose.  Plaintiffs' papers in fact confirm that their claim of injustice is based solely on a fear that "MERS is ill-equipped to handle its potential liability" to the proposed class.  However, the law is quite clear that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice that warrants piercing the corporate veil. Against this backdrop, there can be alter ego claim against GMAC.  Finally, Plaintiffs' effort to prop up their alter ego theory with materials and assertions extraneous to the Amended Complaint does nothing other than to demonstrate that there is no reason to allow fishing expedition discovery or a further amendment of Plaintiffs' pleading.

Against this backdrop, one thing is clear:  GMAC does not belong in this case and the Court should grant its Motion to Dismiss without leave to amend.

## II.  ARGUMENT

As a preliminary matter, GMAC notes that Plaintiffs have asked the Court to take judicial notice of a number of documents.  *See Plaintiffs' Request for Judicial Notice* (D.I. #57). Regardless of whether the Court takes judicial notice of the existence of these materials or merely considers them as something Plaintiffs would allege in yet another amendment to their complaint, the end result remains the same and GMAC' Motion to Dismiss should be granted. Indeed, all these materials establish is that any further amendment would be futile with respect to GMAC.

### A.  Plaintiffs Cannot Hold GMAC Liable Under An Agency Theory Because Plaintiffs' Cause Of Action And Claim Of Wrongdoing Does Not Arise Out Of GMAC's Alleged Arrangement With MERS

Even assuming that Plaintiffs have adequately alleged that an agency relationship exists[1] between MERS and GMAC, Plaintiffs have failed to allege that that arrangement is relevant to Plaintiffs' cause of action and claim of wrongdoing.  For this reason, the Court should reject Plaintiffs' agency theory of liability as it pertains to GMAC.

As this Court has observed, "[t]o establish an agency relationship to hold a principal liable for its agent's breach of contract, a party must show that an 'arrangement exists between the two corporations…[and] **the arrangement must be relevant to the plaintiff's claim of wrongdoing**.'"  *CC Investors Corp. v. Raytheon Co.*, 219 F.R.D. 328, 330 (D.Del. 2003) (Farnan, J.) (emphasis added)  (quoting *Phoenix Canada Oil Co., Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476-78 (3d Cir. 1988)).  *See also E.I. DuPont De Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001) ("To bind a principal by

---

[1]    GMAC incorporates by reference the arguments made by the other Shareholder Defendants to the effect that Plaintiffs have made no such showing.

its agent's acts, the **plaintiff must demonstrate** that the agent was acting on behalf of the principal and **that the cause of action arises out of that relationship**") (applying Delaware law; emphasis added).

Thus, "[a] vital prerequisite to imposing liability based upon customary agency principles is finding a close connection between the relationship of the two corporations and the cause of action." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D.Del. 1989) (citation omitted). *See also Arthur Jordan Piano Co. v. Lewis*, 154 A. 467, 469 (Del. Super. 1930) (the "[e]xistence of agency for one purpose will not establish existence for another") (citation omitted). Accordingly, "the relevant question is whether the alleged principal [GMAC] directed the specific actions of the alleged agent [MERS] which resulted in [Plaintiffs' injury]." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271-272 (D.Del. 1989). *See also CC Investors Corp. v. Raytheon Co.*, 219 F.R.D. 328, 330 (D.Del. 2003) (Farnan, J.) (alleged principal directed the assignment that led to the cause of action).

There is not one allegation that GMAC had anything to do with Plaintiffs' loan at any time, either as a lender, investor, or servicer. Here, it is clear from the pleadings that GMAC gave MERS no direction with respect to MERS' activities regarding Plaintiffs and their loan.[2]

---

2    Plaintiffs instead allege that Washington Mutual "was the original lender and loan servicer on Plaintiffs' Mortgage Note," *Am. Compl.* at ¶ 9(h), and continued in that capacity through the time MERS undertook enforcement proceedings against Plaintiffs. *Ans. Br.* at p. 5 n. 4. Plaintiffs further allege that "with respect to each mortgage loan for which MERS is the mortgagee...*the beneficial owner...or its servicer* shall determine whether foreclosure proceedings...shall be conducted." *Ans. Br.* at p. 43 (internal citations omitted) (emphasis added)*; see also Am. Compl.* at ¶ 28. Plaintiffs specifically assert that "Washington Mutual possessed the right to foreclose with respect to Plaintiffs' mortgage loan at the time enforcement proceedings were commenced against them." *Ans. Brief* at p. 46 (citing *MERS' Rules of Membership*). Indeed, Plaintiffs assert that they "made efforts to work with Washington Mutual" and "entered into a loan modification agreement with Washington Mutual." *Id.* at pp. 5-6. Plaintiffs in fact go so far as to argue that Washington Mutual is directly liable to them. *Id.* at pp. 46-47.

That being the case, the Court must reject Plaintiffs' agency theory of liability as it pertains to GMAC.

**B.    There Continues To Be No Viable Alter Ego Claim Against GMAC**

That Plaintiffs felt compelled to (1) offer up their new agency theory and (2) seek judicial notice of a large number of exhibits amply demonstrates that the Amended Complaint on its face is inadequate to state a claim against GMAC for alter ego liability.

**1.    That MERS And Merscorp Are Located In The Same Building And Allegedly Have Overlapping Employees And Managers Does Not Support Resort To Veil Piercing**

Plaintiffs trumpet (in a footnote) that MERS and Merscorp "are, for all intents and purposes, the identical entity sharing the same employees, address, management, etc. . . . MERS' own description of itself which makes no distinction between entities." *See Ans. Br.* at p. 24 n. 16! The Court can readily reject these assertions as grounds for piercing MERS to get to Merscorp.

First, the Supreme Court has recognized that parents and subsidiaries often have joint officers and directors and that this fact cannot justify veil piercing. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (citations omitted). Second, the courts – including the Third Circuit – have made it quite clear that alter ego liability does not flow from the fact that a parent corporation and a subsidiary corporation operate out of the same building and use the same logo. *See, e.g., Pearson v. Component Technology Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("courts have refused to pierce the corporate veil even when subsidiary corporations use the trade name of the parent, accept administrative support from the parent, and have a significant economic relationship with the parent") (citation omitted); *Comcast Spectacor L.P. v. Chubb & Son, Inc.*, 2006 WL 2302686, *9 (E.D. Pa. Aug. 8, 2006) ("Mere identity of corporate logos, without more,

cannot be sufficient to establish that one company dominated another's business activities or acted as the alter ego of it.") (quoting *Smith v. S & S Dundalk Engineering Works, Ltd.*, 139 F. Supp.2d 610, 621 (D. N.J. 2001)); *Kasprzak v. American General Life & Accident Ins. Co.*, 914 F. Supp. 144, (E.D. Tex. 1996) ("Merely showing a blending of activities between the parent and the subsidiary, such that they may have had some or all of the same directors or officers, filed consolidated income tax returns, shared the same corporate logo, conducted inter-corporate business, or officed in the same building, is not alone sufficient to make the parent liable.") (citations omitted).

Finally, Plaintiffs make much (*see Ans. Br.* at p. 7 and at p. 24 n. 16) of an excerpt from a deposition of R.K. Arnold (the President of MERS and Merscorp) but do not manage to actually quote it in their brief. This is not surprising as Mr. Arnold simply testified that Merscorp's reason for existence was to hold the stock of MERS:

> Q.    So, is there any business or trade or activity of the parent, Merscorp, Inc., other than to hold the ownership of MERS? Is there any separate function that it performs?
>
> A.    The -- I believe the answer to that question would be no. The two corporations operate synchronized, but the operating (sic) company is Merscorp, Inc.

*See Excerpt from Deposition of R.K. Arnold, Exhibit B to Plaintiffs' Request for Judicial Notice* at pp. 573-74. This testimony does nothing for Plaintiffs as the structure it describes is commonplace, involves no fraud or injustice, and has been recognized as utterly appropriate by the courts. *See, e.g., United States v. Bestfoods, supra*, at 61 ("A corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary").

In short, Plaintiffs have offered nothing but conclusory assertions to support their attempt to reach through MERS to Merscorp. Their effort is patently insufficient. Since Plaintiffs cannot pierce MERS to get to Merscorp, it ineluctably follows that GMAC (a minority shareholder in Merscorp) cannot be held liable for MERS' alleged misconduct. For this reason alone, the Court can reject Plaintiffs' alter ego claim against GMAC and GMAC should be dismissed from this case.

### 2. Plaintiffs' Allegations Do Not Make It Plausible That "MERS" Is The Alter Ego Of GMAC

Even if Plaintiffs could pierce MERS to get to Merscorp, they can go no further. Boiled down to its essence, Plaintiffs' argument is this: the Court should allow their alter ego claim to proceed simply because they have alleged that (1) MERS may not be able to satisfy the judgment they hope to secure for the proposed class, (2) MERS is a façade that is operated to lower its members' costs instead of maximizing its own profits, and (3) MERS does not pay dividends. None of this supports any inference of the injustice that would authorize ignoring corporate boundaries.

### a. Fear That "MERS" Might Not Be Able To Satisfy The Judgment Plaintiffs Hope To Obtain For The Proposed Class Does Not Support Veil Piercing

While Plaintiffs admit that "MERS is currently solvent," Plaintiffs nonetheless urge the Court to pierce MERS' corporate veil because it may not be able to satisfy the judgment they hope to secure for the proposed class. *Ans. Br.* at p. 34. This argument is frivolous.

In making their argument, Plaintiffs do not even try to address *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954 (Del.Ch. July 1, 2005), a case that is directly on point and which was cited in GMAC's opening brief. In that case, the court made it clear that the fact that

a corporation might become unable to pay debts as they come due does not support piercing its corporate veil:

> If creditors could enter judgments against shareholders every time a corporation becomes unable to pay its debts as they become due, the limited liability characteristic of the corporate form would be meaningless.

2005 WL 1653954, *3. *See also In re Hillsborough Holdings Corp.*, 176 B.R. 223, 250-51 (M.D.Fla. 1994) (potential lawsuit liabilities is no basis to pierce the corporate veil) (applying Delaware law).

Other jurisdictions that have considered the issue have likewise concluded that the possibility that a plaintiff may have difficulty enforcing a judgment against a defendant is not enough to justify piercing the corporate veil. *See, e.g., Skidmore, Owings & Merrill v. Canada Life Ass. Co.*, 907 F.2d 1026, 1028 (10th Cir. 1990) (possibility that plaintiffs may have difficulty enforcing judgment is not the type of injustice that warrants piercing corporate veil) (citation omitted); *Arch v. American Tobacco Company, Inc.*, 984 F. Supp. 830, 840 (E.D. Pa. 1997) ("the possibility that a plaintiff may have difficulty enforcing a judgment against a defendant is not enough to justify piercing the corporate veil") (citation omitted); *In re Silicone Gel Breast Implants Products Liability Litigation*, 837 F. Supp. 1128, 1138 (N.D.Ala. 1993) (a company is not undercapitalized merely because it is "confronted with potential tort liabilities that could exceed its assets"). Plaintiffs have not cited any case to the contrary.

Further, the terms and conditions a company must agree to in becoming a member of MERS demonstrate that Plaintiffs' purported concerns are misplaced. Section 9 of the MERS Terms and Conditions requires that "Members" will indemnify MERS where it follows the Member's instructions or where the matter involves a breach of contract, negligence and willful misconduct on the part of that Member:

. . . . MERS shall not be liable or responsible under the terms of this paragraph for any losses or claims resulting from the actions or omissions of any person other than an employee, director, officer (who is not an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS )"MERS Party"), for any Indemnified Payments which . . . such MERS Party incurs (i) from the negligence, error and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Clam").

*See Section 9 of the MERS Terms and Conditions*, available on the Internet at http://www.mersinc.com/membership/WinZip/residentialmembershipkit2007.pdf.    *See also Section 4(b) of Rule 14 of MERS' Rules and Procedures, Exhibit E to Plaintiffs' Request for Judicial Notice* at 45 ("It is the Member's responsibility to pay the amount of the judgment . . . on behalf of MERSCORP, Inc. or [MERS] (as applicable)").[3] Since Plaintiffs allege that it is the Member who is directing the foreclosure process (*Ans. Br.* at p. 40-46), this indemnity provision undercuts Plaintiffs' argument on collectability.

Given the foregoing, Plaintiffs' suggestion that MERS may not be able to satisfy the judgment they hope to secure for the proposed class provided no basis to impose alter ego liability on GMAC.

---

[3]    Section 10 of the MERS Terms and Conditions further provides that "MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions policy and a fidelity bond. MERS shall not be required to maintain insurance coverage for persons who may be appointed at the request of the Member as certifying officers of MERS." *See Section 10 of the MERS Terms and Conditions*, at http://www.mersinc.com/membership/WinZip/residentialmembershipkit2007.pdf.

**b.      That MERS Is Operated To Lower Its Members'
          Costs Instead Of Maximizing Its Own Profits
          Does Not Support Veil Piercing**

The Court can also put aside Plaintiffs' assertion that alter ego liability is appropriate

because MERS is operated to lower its members' costs.[4]  As pointed out in GMAC's opening

brief, even if a company's sole reason for existence is to provide a service for its corporate

parent, that is insufficient to disregard its corporate form.  *See GMAC Op. Br.* at p. 11 (citing

*Schenley Distillers Corp. v. U.S.*, 61 F. Supp. 981, 988 (D.Del. 1945)).  *See also United States v.*

*Bestfoods*, 524 U.S. 51, 61 (1998) ("A corporation which chooses to facilitate the operation of its

business by employment of another corporation as a subsidiary will not be penalized by a

judicial determination of liability for the legal obligations of the subsidiary").  Indeed, Plaintiffs

fail to cite any case that holds that alter ego liability is appropriate where a company's sole

reason for existence is to provide a service for its shareholders.  That should be the end of the

Court's analysis.

An example of a company that functions only to benefit its owners may clarify the

weakness of Plaintiffs' position.  The Vanguard Group, Inc. ("Vanguard") is a client-owned

mutual fund company whose sole purpose is to keep costs to its owners "as low as possible:"

> Most investment firms are either publicly traded or privately
> owned. Vanguard is different: We're client-owned. Helping our
> investors achieve their goals is literally our sole reason for
> existence.  With no other parties to answer to and therefore no
> conflicting loyalties, we make every decision—like keeping
> investing costs as low as possible—with only your needs in mind.

https://personal.vanguard.com/us/content/Home/WhyVanguard/AboutVanguardWhyInvestConte

nt.jsp.  Thus, one of Vanguard's selling points is that its low cost leaves most of the return for the

---

4       It is worth keeping in mind that MERS has many members, the majority of whom are not
        shareholders in Merscorp.

investor, *i.e.*, the shareholders of the Vanguard Mutual Funds that own it.  Like MERS, Vanguard operates to provide maximized profits to its owners while keeping costs as low as possible.  No reasonable person would suggest that Vanguard's separate corporate identity is a "legal fiction," and no one would reasonably assert that Vanguard's fund shareholders should be personally liable for Vanguard's misconduct.  MERS deserves the same consideration.

In short, it is clear that the fact MERS is operated to lower costs and not to maximize profit does not support alter ego liability.

### c.    Nonpayment Of Dividends Is All Plaintiffs Have And That Factor Is Insufficient In And Of Itself

As pointed out in GMAC's opening brief, a plaintiff must allege a combination of factors to justify their effort to ignore a defendant's corporate structure; no one factor – such as the nonpayment of dividends – is sufficient.  *See GMAC Op. Br.* at p. 10 (citations omitted).  For this reason alone, MERS' alleged nonpayment of dividends does not justify permitting this case to proceed.

Further, payment of dividends at times has been considered a factor supporting alter ego liability (*see, e.g., Local 397 v. Midwest Fasteners, Inc.*, 779 F. Supp. 788, 794 (D.N.J. 1992) (suggesting that in context of case payment of dividends would show parents were siphoning funds from the subsidiary)) and at times non-payment of dividends has been considered a factor counseling against piercing the corporate veil.  *See, e.g., Trs. of the Nat'l Elevator Indus. Pension Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir.2003).  There are simply no allegations in this case that corporate formalities have not been observed or that funds have been siphoned off by repayment of shareholder loans or through above market pay to corporate officers who are also shareholders.  In the circumstances of this case, GMAC submits that the non-payment of dividends is of little relevance to the Court's alter ego analysis.

- 10 -

**3.    Plaintiffs Are Not Entitled To Discovery Or To Further
Amend Their Complaint With Respect To GMAC**

Finally, "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process . . . given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, ____, 127 S. Ct. 1955, 1967 (2007) (internal citations omitted).  It is noteworthy that virtually all the authorities cited by Plaintiffs on their purported right to discovery were issued pre-*Twombly*.

Plaintiffs cannot avoid a meritorious motion to dismiss merely because additional discovery might help them meet their pleading obligations and the Court should reject their request to burden GMAC in this fashion.  And, the materials Plaintiffs have asked the Court to consider in evaluating the pending motions to dismiss demonstrate only that further amendment of their pleading would be futile with respect to GMAC.  *Divlus v. Churchill Valley Country Club*, 601 F. Supp. 677, 679 (W.D. Pa. 1985) (district courts may properly deny leave to amend where amendment would not withstand a motion to dismiss).

## III.    <u>CONCLUSION</u>

It is undisputed that MERS has a legitimate business purpose, has numerous shareholders and non-shareholder members, and has been in business for 12 years.  It is also undisputed that GMAC had nothing to do with Plaintiffs' loan.  Just because Plaintiffs are concerned that they will not be able to collect (if they are successful in maintaining a class and in obtaining a judgment) does not mean they should be allowed to proceed on a speculative complaint that seeks to pierce the veils of not one but two corporations in order to hold GMAC liable.  The Court should dismiss the Amended Complaint with prejudice.

<div style="margin-left:45%">

<u>/s/ Katharine V. Jackson</u>
Katharine V. Jackson (No. 4800)
**REED SMITH LLP**
1201 Market Street
Suite 1500
Wilmington, DE  19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kjackson@reedsmith.com

**Of Counsel:**

Henry F. Reichner
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
Telephone: (215) 851-8266
Facsimile: (215) 851-1420
E-mail: hreichner@reedsmith.com

*Attorneys for Defendant GMAC-RFC*
*Holding Company, LLC*

</div>

Dated:  June 10, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Jose Trevino and Lori S. Trevino, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>Merscorp Inc., et al.,<br><br>     Defendants. | Case No. 07-00568 (JJF) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 10, 2008, true and correct copies of the foregoing Reply Brief of Defendant GMAC-RFC Holding Company, LLC in support of its Motion to Dismiss was served via e-mail upon the following counsel:

Robert M. Brochin
Sean M. O'Neill
Morgan Lewis & Bockius LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2339
rbrochin@morganlewis.com
so'neill@morganlewis.com

David S. Eagle
Kelly A. Green
Klehr, Harrison, Harvey, Branzburg & Ellers
919 Market Street
Suite 1000
Wilmington, DE 19801
deagle@klehr.com
kgreen@klehr.com

Jeffrey M. Norton, Esq.
Robert I. Harwood, Esq.
Harwood Feffer LLP
488 Madison Avenue
New York, NY 10022
jnorton@hfesq.com
rharwood@hfesqu.com

Matthew S. Chase, Esq.
The Chase Law Firm, PC
8123 Delmar Boulevard
University City, MO 63130-3729
matthew@chaselawpc.com

Kenneth J. Nachbar
Morris, Nichols, Arsht & Tunnell LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
knachar@mnat.com

Thomas Hefferon
Scott Nardi
Goodwin Procter
901 New York Avenue, NW
Washington, DC 20001
thefferson@goodwinproctor.com
snardi@goodwinproctor.com

John Dorsey
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jdorsey@ycst.com

Richard D. Kirk
Bayard, P.A.
222 Delaware Ave.
Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardlaw.com

Stephen E. Herrmann
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
herrmann@rlf.com

Lucia Nale
Thomas V. Panoff
Mayer, Brown
71 S. Wacker Drive
Chicago, IL 60606
lnale@mayerbrown.com
tpanoff@mayerbrown.com

William McKenna
Jill Murch
Foley & Lardner LLP
321 North Clark
Suite 2800
Chicago, IL 60610
wmckenna@foley.com
jmurch@foley.com

Irene Freidel
Bruce Allensworth
K&LGates
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
bruce.allensworth@klgates.com
irene.freidel@klgates.com

David Baldwin
Peter J. Walsh Jr.
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE 19801
dbaldwin@potteranderson.com
pwalsh@potteranderson.com
dmoore@potteranderson.com

LeAnn Pedersen Pope
Danielle Szukala
Burke, Warren, MacKay & Serritella
330 N. Wabash Avenue
22nd Floor
Chicago, IL 60611
lpope@burkelaw.com
dszukala@burkelaw.com


Carmella P. Keener
Rosenthal, Monhait & Goddess, P.A.
Mellon Bank Center, Suite 1401
P.O. Box 1070
919 Market Street
Wilmington, DE 19899-1070
ckeener@rmgglaw.com

Kevin F. Brady
Jeremy D. Anderson
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
kbrady@cblh.com
janderson@cblh.com


/s/ Katharine V. Jackson
Katharine V. Jackson (No. 4800)