## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF DELAWARE

JOSE TREVINO and LORRY S. TREVINO,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

v.

MERSCORP, INC. and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC., CITIGROUP, INC., COUNTRYWIDE
FINANCIAL CORPORATION, FANNIE MAE,
FREDDIE MAC, GMAC-RFC HOLDING
COMPANY, LLC d/b/a GMAC RESIDENTIAL
FUNDING CORPORATION, HSBC FINANCE
CORPORATION, JPMORGAN CHASE & CO,
WASHINGTON MUTUAL BANK, and WELLS
FARGO & COMPANY,

        Defendants.

C. A. No. 07-568-JJF

_____/

## DEFENDANTS MERSCORP, INC. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S REPLY TO PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

CONNOLLY BOVE LODGE & HUTZ LLP
Kevin F. Brady (No. 2248)
Jeremy D. Anderson (No. 4515)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
302-658-9141
kbrady@cblh.com
janderson@cblh.com

*Attorneys for Defendants MERSCORP Inc.
And Mortgage Electronic Registration Systems, Inc.*

OF COUNSEL:
Robert M. Brochin
Sean M. O'Neill
MORGAN LEWIS & BOCKIUS LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL  33131-2339

Dated: June 10, 2008

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..............................................................................................1

II.   LEGAL DISCUSSION ......................................................................................3

    A.    PLAINTIFFS REFER TO THE WRONG STANDARD OF REVIEW FOR A RULE 12 (B)(6) MOTION TO DISMISS .............................................3

    B.    PLAINTIFFS' BREACH OF CONTRACT CLAIM ...............................4

        1.    MERS' Standing to Enforce the Note Does Not Make MERS Obligated Under the Note..................................................................6

        2.    MERS' Status as Mortgagee Does Not Make MERS Obligated Under the Note ............................................................................8

        3.    The Alleged Excess Fees and Costs Were Not Alleged to be Paid to MERS as a Result of the Breach of Contract............................9

        4.    A Demand for Excess Fees is Not Factually Sufficient to State Breach of Contract Claim ....................................................12

    C.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL ...................14

    D.    GOOD FAITH AND FAIR DEALING CLAIM FAILS .......................15

## <u>TABLE OF CITATIONS</u>

**Cases**

*3D Global Solutions, Inc. v. MVM, Inc.*,
    No. 06-722 (GK),  2008 WL 2009877 (D.D.C. May 12,2008) .............................................. 15

*APAC – Georgia, Inc. v. Dept. of Transp.*,
    472 S.E. 2d 97 (Ga. App. 1996) ............................................................................................ 5

*Bell Atlantic v. Twombly*,
    127 S.Ct 1955 (2007) ....................................................................................................... 2, 3

*Birdsong v. Bydalek*,
    953 S.W.2d 103 (Mo. App. S.D. 1997) ............................................................................... 16

*C.I.T. Corp. v. Elliott*,
    159 P.2d 891 (Idaho 1945) ..................................................................................................... 6

*Caballero v. Wilkinson*,
    367 So. 2d 349 (La. 1979) ...................................................................................................... 6

*Childress Painting & Assoc. v. John Q Hammons Hotels Two, L.P.*,
    106 S.W. 3d 558, 562 (Mo. App. W.D. 2003) ..................................................................... 15

*Christopher v. First Mut. Corp.*,
    No. 05-01149, 2006 WL 166566 (E.D. Pa. Jan. 20, 2006) ................................................... 14

*Conley v. Gibson*,
    355 U. S. 41 (1957) .......................................................................................................... 3, 4

*Cont'l & Commercial Nat'l Bank of Chicago v. Jefferson*,
    215 N.W. 533 (S.D. 1927) ...................................................................................................... 7

*Continental Cas. Co. v. Campbell Design Group*,
    914 S.W. 2d 43 (E.D. Mo. 1996) ........................................................................................... 9

*Dawsey v. Kirven*,
    83 So. 338 (Ala. 1919) ........................................................................................................... 6

*Econo-Travel Motel Hotel Corp. v. Taylor*, 271 S.E.2d 54 (N.C. 1980) ....................................... 6

*Hay v. Hudson*,
    224 P. 840 (Wyo. 1924) .......................................................................................................... 7

*Hills Stores Co. v. Bozic*,
    769 A.2d 88 (Del. Ch. 2000) ......................................................................................... 12, 13

*Hoff v. Dougherty,*
   243 Ill. App. 159, 1927 WL 4002 (Ill. App. 1927)...................................................6

*Holloway v. Ameristar Casino St. Charles, Inc.,*
   No. 4:07 CV 218 DDN, 2008 WL 762086 (E.D. Mo. Mar. 19, 2008).....................3

*Howell v. Flora,*
   127 P.2d 721 (Kan. 1942) ......................................................................................6

*Hubby v. Willis Agency, Inc.,*
   283 P.2d 1080 (Colo. 1955) ...................................................................................6

*Hull v. Brandywine Fibre Prods. Co.,*
   121 F. Supp. 108 (D.Del. 1954) .............................................................................6

*In re Sheskey,*
   263 B.R. 264 (Bankr. N.D. Iowa 2001) .................................................................6

*In re Sina,* No.
   A06-200, 2006 WL 2729544 (Minn. App. Sept. 26, 2006) .....................................7

*Intel Corp. Microprosessor v. Intel Corp.,* 496 F. Supp. 2d 404 (D. Del. 2007) ...........3

*John Davis & Co. v. Cedar Glen No. Four, Inc.,*
   450 P.2d 166 (Wash. 1969) ....................................................................................7

*Kahn v. Prahl,*
   414 S.W. 2d 269 (Mo. 1967)..................................................................................9

*Kaiser v. W. States Adm'rs.,*
   702 A.2d 609 (Pa. 1997) ........................................................................................5

*Kroger v. Hartford Life Ins. Co.,*
   28 S.W.3d 405 (Mo. App. W.D. 2000)................................................................15

*Lazare v. Hoffman,*
   444 S.W. 2d 446 (Mo. 1967)................................................................................12

*Leavings v. Mills,*
   175 S.W. 3d 301 (Tex. App.—Houston [1st Dist.] 2004......................................7

*Leeward Petroleum, Ltd. v. Mene Grande Oil Co.,*
   415 F. Supp. 158 (D. Del. 1976)............................................................................3

*Lurline Gardens Ltd. Hous, P'ship v. U.S.,*
   37 Fed.Cl. 415 (Fed. Cl. 1997) ..............................................................................8

*MacPherson v. Schwinn,*
   89 A.2d 99 (N.J. Super. App. 1952) .......................................................................6

*McGowan v. People's Bank*,
　　213 S.W. 579 (Ky. 1919) ........................................................................................6

*Mortgage Elec. Registration Sys. Inc. v. Azize*,
　　465 So. 2d 151 (Fla. 2d DCA 2007) .......................................................................7

*Mortgage Elec. Registration Sys., Inc. v. Coakley*,
　　838 N.Y.S.2d 622 (App. Div. 2d Dep't 2007) ........................................................7

*Ninth RMA Partners, L.P. v. Krass*,
　　746 A.2d 826 (Conn. App. 2000) ...........................................................................6

*Norwest Bank Indiana, N.A.  v. Friedline*, 591 N.E. 2d 599 (Ind. App. 3 Dist. 1992)................14

*Nw. Nat. Bank & Trust Co. v. Hawkins*,
　　286 N.W. 717 (Minn. 1939) ...................................................................................6

*Owen v. Gen. Motors Corp.*,
　　No. 06-4067-CV-C-NKL, 2006 WL 2808632  (W.D. Mo. Sept. 28, 2006) ...........................15

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
　　998 F.2d 1192 (3rd Cir. 1993)...............................................................................11

*Robinson v. Motivation Excellence, Inc.*,
　　No. 02:08cv0484, 2008 WL 2096957 (W.D. Pa. May 16, 2008).....................................11, 16

*Rose-Derry Corp. v. Proctor & Schwartz* , 193 N.E. 50 (Mass. 1934) .........................................6

*Ruddy v. Equitable Life Assurance Soc'y*, No. DKC00-70, 2000 WL 964770 (D. Md. June 20,
　　2000) .....................................................................................................................14

*Ryan v. Underwriters Labs, Inc.*,
　　No. 1:06-cv-1770-JDT-TAB, 2007 WL 2316474 (S.D. Ind.  Aug. 8, 2007)...........................4

*Scheuer v. Rhodes*,
　　416 U.S. 232 (1974)................................................................................................3

*Scott v. Sec. Title*,
　　72 P. 2d 143 (Cal. 1937) ........................................................................................5

*Spears v. Sutherland*,
　　23 P.2d 622 (N.M. 1933).........................................................................................6

*Turner v. McCormick*,
　　56 W.Va. 161, 49 S.E. 28........................................................................................7, 12

*United States v. Pisani*,
　　646 F.2d 83 (3d Cir. 1981)......................................................................................14

*W. Title Ins. & Guar. Co. v. Bartolacelli*,
   269 P.2d 165 (Cal. App. 1954) ........................................................................6

*Webster v. Carter*,
   138 S.W. 1006 (Ark. 1911) ...........................................................................6

*Westwacker K-Parcel LLC v. Pac. Mut. Life Ins. Co.*,
   No. 05C4988, 2007 WL 2743588 (N.D. Ill. Sept. 11, 2007) .......................13

*Wick v. Cleveland Secs. Corp.*
   50 N.E.2d 351 (Ohio App. 1943) ..................................................................6

## Statutes

6 Del. C. § 3-301 ..................................................................................................7

6 Del. C. § 3-305 ..................................................................................................8

Mo. Rev. Stat. § 400-003.301 ..............................................................................7

Mo. Rev. Stat. § 400-003.305 ..............................................................................8

## Other Authorities

17 Am.Jur.2d Contracts § 443 ............................................................................12

MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. (collectively "MERS") reply to the Memorandum Opposing MERS' Motion to Dismiss (D.I. 58, "Memorandum" or "Plaintiffs' Memorandum") submitted by Plaintiffs Jose and Lorry Trevino ("Plaintiffs" or the "Trevinos").

## I.    <u>INTRODUCTION</u>

The Plaintiffs first breached the contract – that is, the Promissory Note – when they defaulted on their monthly payments.  The holder of the Promissory Note, which Plaintiffs allege MERS breached, had the right to be paid for the expenses it incurred to enforce the Note. A right conferred in a contract cannot form the basis for a breach of contract claim, and a demand for excessive fees based on a contractual right to such fees is not sufficient to state a valid breach of contract claim.  Further, a claim for a breach of a promissory note must identify the terms of the contract or note **that establish an obligation**.  The Amended Complaint (D.I. 10) fails to allege that MERS breached any of its obligations in the Note, and that is fatal to the Plaintiffs' claim.

To cure this deficiency, Plaintiffs attempt to persuade the Court that a demand for excess payments alone is sufficient to state a breach of contract claim.  Plaintiffs are traveling on this legal cruise to nowhere, because while the Amended Complaint alleges MERS demanded excessive fees, it does not allege, and it cannot allege, that the **payment** of such excessive fees **was caused** by MERS' breach of the contract.  In fact, the Trevinos state in their Memorandum that the excessive fees (or damages) were paid as a result of a Loan Modification Agreement – **not** as a result of any breach of the contract.  The Trevinos explain that the alleged excess fees were paid to their mortgage servicer – not to MERS.  The fact that the alleged excessive fees (or damages) were paid under a different contract to a different party underscores the futility of the

Plaintiffs' breach of contract claim based on the Promissory Note. With no alleged obligations existing under the contract, with no obligations alleged to be breached by Defendant MERS, and with the monies representing the damages being paid pursuant to a Loan Modification Agreement, Plaintiffs do not state a breach of contract claim that is "plausible on its face."

The plausibility standard was recently articulated by the Supreme Court in *Bell Atlantic v. Twombly*, 127 S.Ct 1955, 1974 (2007), which Plaintiffs ignore in their Memorandum. Instead, Plaintiffs direct the Court to the "no set of facts" standard for a Rule 12(b)(6) Motion. But the pleading standard relied on by Plaintiffs in their Memorandum has been "thrown into the trash bin" as a standard that is "best forgotten, as an incomplete negative gloss as an accepted pleading standard." *Id*. The Court in *Twombly* held that Plaintiffs must allege facts that show they are entitled to relief; they can no longer generally assert that they are entitled to such relief. *Id*. It is the Amended Complaint filed by the Trevinos that the Court in *Twombly* had in mind when it made clear that labels, conclusions, and a formulaic recitation of a cause of action's elements will no longer do. While the Amended Complaint here is replete with pages of irrelevant, inflammatory and bizarre allegations, they are not sufficient to show that the Plaintiffs are entitled to relief because MERS breached the terms of the Promissory Note.

Plaintiffs also assert in this class action that MERS was unjustly enriched. But the Plaintiffs have and are seeking remedies under a valid, enforceable contract. Indeed, Plaintiffs allege that MERS was unjustly enriched as a result of the breach of the Promissory Note. Under such circumstances, claims for unjust enrichment are not available. Plaintiffs counter that their unjust enrichment claim is cognizable because MERS is challenging the validity of the Promissory Note. MERS does not take issue with the validity of the Note, nor does MERS claim that the Note is not enforceable. In fact, the Note is valid and enforceable.

The Plaintiffs, however, have not shown any obligations in the valid, enforceable contract that were breached by MERS.  Finally, Plaintiffs' claim for breach of good faith and fair dealing must also be dismissed in this class action – for the same reasons that Plaintiffs failed to allege payments were made as a result of the breach of contract.  Plaintiffs do not (and cannot) allege that it was MERS who denied Plaintiffs the expected benefits of the contract.  As such, the good faith and fair dealing count must also be dismissed

## II.    LEGAL DISCUSSION

### A.    PLAINTIFFS REFER TO THE WRONG STANDARD OF REVIEW FOR A RULE 12 (B)(6) MOTION TO DISMISS

Plaintiffs claim their Amended Complaint should survive the Motion to Dismiss (D.I. 40) because MERS is put "'on notice as to the nature of the claims…and the Court cannot say as a matter of law that the plaintiff is entitled to **no relief under any provable state of facts**.'"  (D.I. 58) (emphasis added).  Errantly, Plaintiffs cite to and rely on the "no set of facts" standard that was initially set forth in *Conley v. Gibson*, 355 U. S. 41, 45-46 (1957).[1]

"In 2007, the Supreme Court issued a new standard for evaluating motions to dismiss." *Holloway v. Ameristar Casino St. Charles, Inc*., No. 4:07 CV 218 DDN, 2008 WL 762086, at * 2 (E.D. Mo. Mar. 19, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, __, 127 S. Ct. 1955, 1974 (2007) (overruling the "no set of facts" standard set forth in *Conley v. Gibson*));  *see also Intel Corp. Microprosessor v. Intel Corp.,* 496 F. Supp. 2d 404, 408, n. 2 (D. Del. 2007) ("The Court understands *Twombly* to primarily be a decision aimed at bringing the standard of dismissal back to its 'roots' by undoing the literal reading of *Conley v. Gibson*

---

[1]    In their Memorandum (D.I. 58), Plaintiffs refer to the district court's opinion in *Leeward Petroleum, Ltd. v. Mene Grande Oil Co*., 415 F. Supp. 158, 162 (D. Del. 1976), which sets forth the "no set of facts" standard for a motion to dismiss by citing to *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The decision in *Scheuer*, in turn, cites to the "no set of facts" standard in *Conley v Gibson*.  *Id.*

(citation omitted) engaged in by some courts."); *Ryan v. Underwriters Labs, Inc.*, No. 1:06-cv-1770-JDT-TAB, 2007 WL 2316474, at *2 (S.D. Ind. Aug. 8, 2007) (The Supreme Court sent the "no set of facts" standard "which sprang from *Conley v. Gibson* … to the trash bin.").

Under *Twombly*, a complaint must include sufficient facts to state a claim for relief that is plausible on its face. *Twombly*, 127 S. Ct. at 1974. To meet the "plausibility standard," the complaint must contain "more than labels and conclusions." *Id*. at 1965. Additionally, the allegations must be sufficient to "raise a right of relief above the speculative level." *Id*. Here, the Amended Complaint fails to meet the *Twombly* "plausible on its face" pleading standard because the relevant provision in the promissory note (herein referred to as the "Promissory Note" or "Note"), confers rights – not obligations – and the exercise of such rights cannot form the necessary factual basis to state a breach of contract claim. The Amended Complaint makes no allegations that the Plaintiffs paid excess fees and costs as a result of the breach of the provision contained in the Note – leaving one to only speculate how the Plaintiffs are entitled to relief.

## B.    PLAINTIFFS' BREACH OF CONTRACT CLAIM

At its core, Plaintiffs attempt to allege a straightforward breach of contract claim. They allege that MERS breached the following contractual provision:

> 6.    BORROWER'S FAILURE TO PAY AS REQUIRED
>
> (E)    Payment of Note Holder's Costs and Expenses
>
> If the Note Holder has required me to pay immediately in full as described above, **the Note Holder will have the right to be paid back** by me for all of its interests and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

(D.I. 10 ¶ 34) (emphasis added). The clear language of the contractual provision that MERS

allegedly breached gives the note holder the **right** to be paid the interest and expenses for enforcing the Promissory Note.

    To state a cause of action for breach of contract, Plaintiffs must allege facts showing that MERS had a contractual obligation that MERS failed to meet or perform. The elements necessary to state a claim for breach of a promissory note are: (1) the existence of the note; **(2) terms of note establishing an obligation**; (3) occurrence of any conditions precedent to enforcement of the obligation at issue; (4) breach of that obligation; and (5) **damages resulting from the breach of the obligation**. *See Kaiser v. W. States Adm'rs.,* 702 A.2d 609, 613 (Pa. 1997) (under California law).[2] Plaintiffs failed to plead facts in support of the second, fourth and fifth elements – that is, the terms of a note establishing an obligation, the breach of that obligation, and damages suffered as a result of the breach. The provision of the Note that Plaintiffs allege was breached by MERS does not impose any obligations on MERS. It is axiomatic that MERS cannot be in breach of contractual provisions where the plain language of such provisions do not impose any obligations. *See e.g., APAC – Georgia, Inc. v. Dept. of Transp.*, 472 S.E. 2d 97, 100 (Ga. App. 1996) ("In the absence of a contractual duty, there can be no breach of contract."); *Scott v. Sec. Title*, 72 P. 2d 143, 147-48 (Cal. 1937) ("Breach of contract rests upon a failure to perform an enforceable obligation, and **if there is no such obligation, there can be no breach."** (emphasis added)).[3]

---

[2] Plaintiffs maintain that there is no material difference in the contract laws of the various states suggesting that a choice of law analysis is not necessary. (D.I 58 at 11, n.10). MERS generally agrees that the principles relating to contract law as they would be applied to the Motion to Dismiss are fundamentally the same in the various states.

[3] As aptly stated by the California Supreme Court in *Scott*:

    The case rests upon these accepted principles. Since that complaint is
    founded upon an alleged breach of contract to make a valid sale of the

(cont.)

1.    **MERS' Standing to Enforce the Note Does Not Make MERS Obligated Under the Note.**

It is generally the law in the fifty United States that the holder of a note or one in

possession of a note has standing in court to enforce the terms of the note.[4]   MERS does indeed

---

property on February 7, 1931, **and since the contract did not obligate the defendant to sell at that time, or on any other particular date, the complaint fails to plead a cause of action in breach of contract.**

*Id.* at 147 (emphasis added).

[4]    By virtue of the Uniform Negotiable Instruments Act and then the Uniform Commercial Code, it is the "holder" of the negotiable instrument who has standing to enforce its terms.  *See e.g., Hull v. Brandywine Fibre Prods. Co.*, 121 F. Supp. 108 (D.Del. 1954) (under Delaware law, suit on a negotiable note can be maintained be the possessor or holder of the note); *see, e.g., In re Sheskey*, 263 B.R. 264 (Bankr. N.D. Iowa 2001) (under Wisconsin law, a holder or a person in possession of promissory note is entitled to enforce the note); *Dawsey v. Kirven*, 83 So. 338 (Ala. 1919) (note holder's lack of interest in the proceeds of the judgment is no defense to enforcement action by note holder); *Webster v. Carter*, 138 S.W. 1006 (Ark. 1911) (holder of note by delivery, and not by written assignment, may nonetheless sue on the note); *W. Title Ins. & Guar. Co. v. Bartolacelli*, 269 P.2d 165 (Cal. App. 1954) (holder-payee of check may sue thereon in his own name even though he is not the beneficial owner); *Hubby v. Willis Agency, Inc.*, 283 P.2d 1080, 1082 (Colo. 1955) ("The payee and holder of a promissory note may maintain an action thereon even if he is not the beneficial owner of the negotiable instrument sued on, even though he is only a nominal payee and the beneficial interest of equitable ownership is another person."); *Ninth RMA Partners, L.P. v. Krass*, 746 A.2d 826 (Conn. App. 2000) (plaintiff's status as a holder of the instrument, or as a non-holder with the rights of a holder, is an element of an action to enforce a negotiable instrument); *C.I.T. Corp. v. Elliott*, 159 P.2d 891 (Idaho 1945) (anyone in possession of a negotiable instrument may maintain an action thereon); *Hoff v. Dougherty*, 243 Ill. App. 159, 1927 WL 4002 (Ill. App. 1927) ("In a suit on a promissory note, proof that the plaintiff has no beneficial interest in the note is not a bar to the suit."); *Howell v. Flora*, 127 P.2d 721, 721 (Kan. 1942) ("Under Negotiable Instruments Law, it is the legal title to negotiable paper and not the beneficial interest therein which controls as to proper parties plaintiff in suit for collection thereof."); *McGowan v. People's Bank*, 213 S.W. 579 (Ky. 1919) (denial of beneficial ownership is no defense to enforcement of a promissory note); *Caballero v. Wilkinson*, 367 So. 2d 349 (La. 1979) (although holder of bearer note was not the owner, he could sue makers for payment notwithstanding that record did not show that he was specifically authorized by the owners to sue for payment); *Rose-Derry Corp. v. Proctor & Schwartz*, 193 N.E. 50 (Mass. 1934) (plaintiff need not have legal title to or beneficial interest in notes on which it sues); *Nw. Nat. Bank & Trust Co. v. Hawkins*, 286 N.W. 717 (Minn. 1939) ("Even a nominal payee or title holder, although having no beneficial interest, may maintain an action on a promissory note."); *MacPherson v. Schwinn*, 89 A.2d 99 (N.J. Super. App. 1952) (action on a negotiable instrument cannot be maintained by person who is not the holder of the instrument); *Spears v. Sutherland*, 23 P.2d 622 (N.M. 1933) (payee in possession of notes was "real party in interest" to sue thereon irrespective of ownership interest in the notes); *Econo-Travel Motel Hotel Corp. v. Taylor*, 271 S.E.2d 54 (N.C. 1980) (to bring suit on an instrument, plaintiff must first establish that he is actually the holder of the instrument); *Wick v. Cleveland Secs. Corp.* 50 N.E.2d 351, 352 (Ohio App. 1943) ("A person who is a holder within the meaning of pertinent provisions of (cont.)

have standing to enforce the Note, as a note holder or as one in possession of the Note. *See, e.g.*, *Mortgage Elec. Registration Sys. Inc. v. Azize*, 465 So. 2d 151 (Fla. 2d DCA 2007) (As holder of the Note, MERS has standing to foreclose). The Plaintiffs seem to suggest that simply because MERS has standing to enforce the Note that MERS is, in turn, *ipso facto* liable for any breach of the Note. *See* D.I. 58 at 13-14 ("MERS cannot enforce the Mortgage Note to collect costs, fees, and expenses associated with enforcement proceedings and then take the position that it is not liable for a breach of contract . . . .").

First, it is wrong, as a matter of law, to suggest that as a result of action taken to enforce the terms of a promissory note, MERS must be the appropriate party for any alleged breach of the same note. The legal rights to enforce the Promissory Note are proscribed by the Uniform Commercial Code. Mo. Rev. Stat. § 400-003.301; Del. Code Ann. tit. 6, § 3-301 ("A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."). Thus, the standing of MERS to enforce the Note arises from its status as **holder of the Note**.[5] *See* D.I. 58 at 12.

_____

the Negotiable Instruments Act is entitled to sue notwithstanding he is without beneficial interest and a general code provision required every action to be prosecuted in the name of the real party in interest."); *Turner v. Crowder*, 273 P. 349 (Okla. 1928) (holder of negotiable instrument could sue on the instrument even though another is the beneficial owner); *Cont'l & Commercial Nat'l Bank of Chicago v. Jefferson*, 215 N.W. 533 (S.D. 1927) (holder of negotiable instrument could sue thereon); *Leavings v. Mills*, 175 S.W. 3d 301 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (a "holder" of an instrument is a person entitled to enforce the instrument); *John Davis & Co. v. Cedar Glen No. Four, Inc.*, 450 P.2d 166 (Wash. 1969) (holder of negotiable instrument may sue thereon in his own name and payment to him in due course discharges instrument; it is not necessary for holder to first establish that he has some beneficial interest in proceeds); *Hay v. Hudson*, 224 P. 840 (Wyo. 1924) (possessor of a note indorsed in blank may sue on the note, even though he has no interest in the proceeds).

[5]    Plaintiffs apparently agree that such standing arises from a note holder status, as the cases cited by Plaintiffs stand for that proposition. *See* D.I. 58 at 12; *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 838 N.Y.S.2d 622 (App. Div. 2d Dep't 2007) (MERS was lawful holder of promissory note and therefore had standing to bring foreclosure action); *In re Sina*, No. A06-200, 2006 WL 2729544 (Minn. App. Sept. 26, 2006) (MERS has standing as record mortgagee); *Mortgage Elec. Registration*

(cont.)

Because one is the holder of a note does not make that party liable for its breach. In fact, the Uniform Commercial Code sets forth the claims and defenses that an obligor, such as the Trevinos, may assert against a holder of the note. Mo. Rev. Stat. § 400-003.305; Del. Code Ann. tit. 6, § 3-305.

**2.    MERS' Status as Mortgagee Does Not Make MERS Obligated Under the Note**

Recognizing that MERS is not obligated under the terms of the Note, Plaintiffs point to MERS' status as the mortgagee claiming that MERS' obligations under the mortgage contract ("Mortgage") should be considered obligations under the Note.[6] In support of their theory to transfer liability under the terms of the Note to the terms of the Mortgage, Plaintiffs rely on the legal principle that documents executed in the course of the same transaction should be construed as one instrument. Indeed, the terms and conditions of the Promissory Note and Mortgage should be read together, as if they constituted one transaction. But the obligations of a party contained in one instrument (i.e., MERS obligations under the Mortgage) are not transferred as obligations under the second instrument (i.e., the Note) just because the two instruments – here the Note and Mortgage – are to be read and construed together. *See Lurline Gardens Ltd. Hous, P'ship v. U.S.*, 37 Fed.Cl. 415, 420 (Fed. Cl. 1997) ("[P]rinciple that writings are to be interpreted together merely ensures that the transaction as a whole be properly and consistently understood, not that all obligations of a party to one writing be ascribed to all the parties to every other writing."). MERS is not obligated to the Trevinos under the terms of

---

*Sys., Inc. v. Azize*, 965 So.2d 151 (Fla. App. 2 Dist. 2007) (so long as MERS can show it is holder of the note, it has standing to enforce it).

[6]    *See* D.I. 58 at 12-14 ("Although it is technically correct that MERS does not appear on the Mortgage Note, the Deed of Trust [] specifically nominates MERS to stand in the shoes of the lender… [O]nce the loan was issued, the [Mortgage] Note became an enforceable contract, whereby MERS… became contractually bound by the terms of the Mortgage Note.").

the Note simply because MERS may be obligated to the Plaintiffs under the Mortgage. MERS is not a party to the Promissory Note, and the fact that the Note and Mortgage were entered into at the same time in the same transaction does not make MERS a party to the Note such that MERS becomes obligated under the Note. MERS did not contractually promise to perform any obligations under the Note, and thus it cannot be liable for the failure to perform any of the obligations of the Note. *See e.g., Continental Cas. Co. v. Campbell Design Group*, 914 S.W. 2d 43, 44 (E.D. Mo. 1996) (There is a "basic legal premise that a contract generally binds no one but the parties thereto, and it cannot impose any contractual obligation or liability on one not a party to it."); *Kahn v. Prahl,* 414 S.W. 2d 269, 278 (Mo. 1967) (Third party was "not directly responsible to Plaintiff" for any breach of contract "because one not a party to a contract is not bound thereby and is not liable for breach of a contract to which he is not a party.").

3.     **The Alleged Excess Fees and Costs Were Not Alleged to be Paid to MERS as a Result of the Breach of Contract.**

Plaintiffs would have this Court believe that their Amended Complaint alleges that these Plaintiffs, the Trevinos, actually paid excess fees because MERS' demanded the Trevinos to do so **pursuant to the terms of the Note**. In their Memorandum, Plaintiffs point to some eight different paragraphs for the proposition that the Trevinos paid MERS fees and costs in excess of what was incurred. But upon reading those eight paragraphs, they reveal that they do **not** allege that the **Trevinos paid these improper fees to MERS because MERS breached the contract or any provision of the Promissory Note**.[7]

---

[7]    Plaintiffs refer to Amended Complaint paragraphs 1, 3, 61, 62, 69, 73, 76 and 77. Generally, those paragraphs relate to boilerplate allegations claiming that the Trevinos and members of the class have been damaged, **or** they relate to MERS receiving such excess fees and costs. But nowhere does the Complaint allege **the Trevinos paid MERS** those excess fees and costs. *See, e.g.,* D.I. 10 ¶ 1 ("MERS extracted . . . improper costs, fees and expenses from Plaintiffs . . . in excess of sums they actually incurred."); D.I. 10 ¶ 3 ("Plaintiffs . . . seek to recover compensatory damages in the amount (cont.)

The Amended Complaint alleges that MERS demanded and collected fees in amounts that were in excess of what were incurred in order to enforce the Note.  The Amended Complaint alleges that the Trevinos have incurred damages as a result of MERS demanding such excess fees.  The essential missing allegation is that, **as a result of the breach of contract (which was a demand for fees in excess of those incurred), Plaintiffs Jose and Lorry Trevino actually paid monies to MERS of a sum certain**.  The failure to make this allegation means the element of damages has not been stated, and the Amended Complaint fails to state a breach of contract claim.

According to Plaintiffs' Memorandum, the reason the Amended Complaint fails to make this necessary allegation is because any such excess payments were delivered to their mortgage servicer pursuant to a Loan Modification Agreement.  Apparently, the Trevinos did pay some fees and costs, but they were paid under a contract signed by the Trevinos and their mortgage servicer.  In other words, the Trevinos negotiated and signed a contract that was different than the Promissory Note, and it was pursuant to this contract that the Trevinos paid the fees that they allege to be excessive.  Critically, it is the payment of these excessive fees that the Plaintiffs allege caused damages as a result of the breach of contract.  At page six of their Memorandum, Plaintiffs itemize the very excessive fees they allegedly paid:

> The Trevinos entered into a Loan Modification Agreement with
> Washington Mutual providing for revised payment terms and

---

of costs, fees and expenses . . . collected by . . . MERS . . . that exceeded any sums MERS actually incurred."); D.I. 10 ¶ 73 ("As a result of Defendants' breach of the Mortgage Notes, Plaintiffs . . . were damaged by the amount of costs, fees, and expenses . . . .  Plaintiffs . . . are therefore entitled to recover such amounts that were improperly demanded and paid."); D.I. 10 ¶ 76 ("Defendants wrongfully over-charged Plaintiffs . . . and directed their agents . . . to retain the fees and expenses that were in excess of those agreed upon, which was unlawfully received from Plaintiffs."); D.I. 10 ¶ 77 ("Plaintiffs . . . are entitled to the return of the sums paid in excess of the costs, fees and expenses actually incurred . . . to be paid by the Defendants.").

reimbursement of over $3,000.00 in fees and expenses, including:

| | | |
|---|---|---|
| § | "Title Update & Recording Fees" | $  310.00 |
| § | "Foreclosure Fees & Costs" | $1,270.00 |
| § | "Administrative Fee" | $  300.00 |
| § | "Appraisal/BPO Fee" | $  300.00 |
| § | "Late charged Balance" | $  823.36 |
| § | "Property Inspection Fees" | $    68.40 |
| § | Total Costs, Fees Expenses | $ 3,072.32 |

*See* D.I. 58 at 6.

A copy of the Loan Modification Agreement ("Modification Agreement") is attached as Exhibit A.  *See Robinson v. Motivation Excellence, Inc.*, No. 02:08cv0484, 2008 WL 2096957, at *1 (W.D. Pa. May 16, 2008) (court may look beyond complaint to documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion to dismiss) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993)).  Quite noteworthy is the fact that the Modification Agreement "amends and supplements" the Mortgage and the Promissory Note which Plaintiffs claim MERS breached.  The Modification Agreement also increased the amount of the unpaid principal balance from $118,015 to $123,639.[8]  According to the Plaintiffs themselves, they contractually agreed to amend the Note and Mortgage, and pursuant to that very contractual agreement, *i.e.*, the Modification Agreement, the Plaintiffs agreed to pay certain fees -- which Plaintiffs now allege to be excessive.  What the Plaintiffs are essentially alleging is that their contractual agreement to pay fees under the Modification Agreement amounted to a breach of the Promissory Note by MERS.  Such allegations do not state a plausible claim for a breach of

---

[8]    It appears that the Trevinos did not, in fact, actually pay to MERS these so-called excessive fees, but rather the Plaintiffs borrowed the monies, pursuant to the terms of the Modification Agreement, to pay their mortgage servicer for these alleged excessive fees.

contract. It simply cannot be said that a right to collect fees and costs under the Note amounts to breach of that Note when those allegedly excessive fees and costs are paid pursuant to another written agreement.

4.    **A Demand for Excess Fees is Not Factually Sufficient to State Breach of Contract Claim**

By urging that a **demand** pursuant to a contractual **right** constitutes a breach of contract, Plaintiffs attempt to divert attention away from the critical fact that the alleged damages were paid pursuant to the Modification Agreement, rather than as a result of a breach of the Note. A demand for payment that is the note holder's right to collect does not state a breach of contract cause of action. Fundamentally, a demand for a payment falls short of a viable contract claim because Plaintiffs suffer no damages as a result of a demand for payment. As noted by the Missouri Supreme Court:

> At most, by advising sellers that he expected the warranty deed to be signed by the respective spouses of sellers the purchaser requested more than he was entitled to and **the mere making of such a request is not a breach of the contract** which gave the sellers the right to rescind.

*Lazare v. Hoffman*, 444 S.W. 2d 446, 452 (Mo. 1967) (citing 17 Am.Jur.2d Contracts § 443, *Turner v. McCormick*, 56 W.Va. 161, 49 S.E. 28) (emphasis added).

The cases relied on by the Plaintiffs[9] do not stand for the extraordinary proposition that a demand for the collection of fees alone states a breach of contract claim. For example, Plaintiffs cite to *Hills Stores Co. v. Bozic*, 769 A.2d 88, 110-113 (Del. Ch. 2000), where the Court reviewed the contractual provisions that addressed what the non-breaching party was **entitled** to receive as compensation, rather than what an allegedly breaching party had a

---

[9]    *See* D.I. 58 at 17-19.

right to demand.  The employment agreements at issue in *Hills Stores* covered what the Executive **"shall receive"** in the form of bonuses, and "such bonuses **shall be paid to the Executive** within sixty days . . . ." *Id.* at 111-12 (emphasis added).  Moreover, unlike MERS, the breaching party in *Hills Stores* had fiduciary duties to the employees to pay the bonuses, and such fiduciary relationship formed the basis for the breach of contract claim.[10]  In *Westwacker K-Parcel LLC v. Pac. Mut. Life Ins. Co.,*  No. 05C4988, 2007 WL 2743588, at *5, 7-8 (N.D. Ill. Sept. 11, 2007)[11], which was also relied on by the Plaintiffs, the Court carefully reviewed the plain language of the contract and made quite clear that a **demand** for a payment or the exercise of a right does not rise to a breach of the contract:

> The Loan documents provide for payment on the date of maturity or early payoff with payment of a prepayment premium. Accordingly, Pacific did not "force" a payoff.  **Mere creation of economic pressure does not suffice** to establish acceleration of a loan … Instead, **Pacific exercised what it believed to be its right under the Loan documents** to reject further transfers on the Kraft parcel and left it up to Westwacker to determine whether to not Westwacker would continue to pay the loan until maturity or pay it off early.  There was **no** acceleration of the Loan.  Accordingly, Pacific did not waive its prepayment premium and thereby breach the contract **by demanding payment** of the premium.

---

[10]    *Id.* at 110, n. 74 (emphasis added):

> "I deny the motion for summary judgment by defendants…against plaintiffs' breach of contract claims based on their receipt of excess severance payments.  **As fiduciaries of Hills, they are in no position to claim from Hills more than that to which they were contractually due**.  The funding of the Rabbi Trusts occurred while they were still on the Hills board, the Hills had ultimate responsibility to ensure compliance with the Agreements, and Reen (Bozic'suborinate) was the manager whose department calculated the Severance.  Section 102(b)(7)(iv) of Title 8 precludes Bozic, Reen and Matthews from claiming that they are insulated from any responsibility to repay overpayments made to them – overpayments that they were in a position to have avoided in the first instance."

*Id.* at \*6 (emphasis added) (citation omitted) .[12]

## C.    PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL

Plaintiffs agree that their claim for unjust enrichment cannot stand if there is a valid, enforceable contract. *See* D.I. 58 at 21 ("[I]t is true that unjust enrichment claims are often dismissed where the Plaintiff has an adequate remedy under an express written contract . . . ."). Rather, Plaintiffs maintain that MERS is challenging the validity and enforceability of the contract, and by so doing, it allows Plaintiffs to claim unjust enrichment. *Id.* at 21 ("MERS . . . takes the position that the Mortgage Note is not an enforceable contract," and as a result, Plaintiffs' may seek an alternative remedy by alleging a claim for unjust enrichment.).

Plaintiffs are wrong when they contend that MERS contests the validity of the Note. It does not. In fact, the parties agree that the Note is a valid and enforceable contract. MERS simply claims that there are no alleged obligations in the valid, enforceable contract that were breached by MERS, and more specifically, that the valid, enforceable contract did not impose any obligations on MERS to be breached. To say that MERS disputes that a valid contract exists is not accurate.

---

[12]    In their Memorandum, Plaintiffs string cite several cases that have no bearing on whether the **demand** for the payment of fees and costs that the note holder has a right to collect can state a cause of action for breach of contract. *See United States v. Pisani*, 646 F.2d 83, 90 (3d Cir. 1981) (obligation of parties based on federal statutory scheme for the payment and reimbursement of Medicare program as implemented and regulated by the Department of Health, Education and Welfare); *Christopher v. First Mut. Corp.*, No. 05-01149, 2006 WL 166566, at \*4 (E.D. Pa. Jan. 20, 2006) (court dismissed alleged breach of contract claims based on applicable statute of limitations); *Ruddy v. Equitable Life Assurance Soc'y*, No. DKC00-70, 2000 WL 964770, at \*5 (D. Md. June 20, 2000) (breach of contract was time barred based on statute of limitations, and no determination that demand itself constituted a claim for a breach of the contract); *Norwest Bank Indiana, N.A. v. Friedline*, 591 N.E. 2d 599 (Ind. App. 3 Dist. 1992) (No breach of contract claim alleged by borrower, and sole issue was whether costs incurred for environmental assessments were recoverable by the lender.).

The Amended Complaint specifically alleges that "[a]s a **result of the breach of contract** described above, [MERS] will be and has been unjustly enriched at the expense of plaintiffs and the Class . . . ."  D.I. 10 ¶ 67 (emphasis added).  Because the Plaintiffs and MERS agree that the contract is valid and because Plaintiffs allege that **the breach of that valid contract will cause MERS to be unjustly enriched**, this claim must be dismissed.  *Owen v. Gen. Motors Corp.*, No. 06-4067-CV-C-NKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006) ("the existence of a valid contract would negate plaintiff's claim for unjust enrichment."); *see also 3D Global Solutions, Inc. v. MVM, Inc.*, No. 06-722 (GK),  2008 WL 2009877, at *1 (D.D.C. May 12,2008) ("a party to a valid contract cannot bring a claim for unjust enrichment related to the subject matter of an express contract between the parties.").[13]

**D.      GOOD FAITH AND FAIR DEALING CLAIM FAILS**

Plaintiffs fail to address in their Memorandum why the Amended Complaint fails to allege that MERS denied Plaintiffs the expected benefits of the contract.  Such allegation is necessary to a good faith and fair dealing claim.  *See Kroger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. App. W.D. 2000) (An allegation that the Defendant "den[ied] Plaintiffs the expected benefits of the contract," is the essence of the good faith and fair dealing claim.).  MERS in no way "hindered the performance" of Plaintiffs or failed to discharge any of its contractual duties or obligations (of which there are none) or unfairly frustrated the contracts purpose as required to state a claim.  *See Birdsong v. Bydalek*, 953 S.W.2d 103, 121 (Mo. App.

---

[13]   The Amended Complaint also fails to allege that MERS accepted or retained any alleged **benefit**, a necessary element for an unjust enrichment claim.  *See* D.I. ¶2; s*ee, e.g. Childress Painting & Assoc. v. John Q Hammons Hotels Two, L.P.*, 106 S.W. 3d 558, 562 (Mo. App. W.D. 2003).  Plaintiffs claim that the Amended Complaint makes such allegation.  But, as pointed out, Plaintiffs claim that such excess fees and costs were paid to Washington Mutual pursuant to the Modification Agreement.  D.I. 58 at 6 ("[T]he Trevinos entered into a loan modification agreement with Washington Mutual providing for revised payment terms and reimbursement of over $3,000 in [excessive] fees and expenses.").

S.D. 1997); *Robinson v. Powers*, 777 S.W.2d 675, 681 (Mo. App. S.D. 1989) (the obligation of

good faith requires that contracting parties not prevent or hinder performance by the other party).


CONNOLLY BOVE LODGE & HUTZ LLP


*/s/ Kevin F. Brady*
Kevin F. Brady (No. 2248)
Jeremy D. Anderson (No. 4515)
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899
302-658-9141
kbrady@cblh.com
janderson@cblh.com

*Attorneys for Defendants MERSCORP Inc.*
*And Mortgage Electronic Registration Systems, Inc.*


OF COUNSEL
Robert M. Brochin
Sean M. O'Neill
MORGAN LEWIS & BOCKIUS LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL  33131-2339

Dated: June 10, 2008
616086_1

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on June 10, 2008, I electronically filed the foregoing *Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.'s Reply To Plaintiffs' Omnibus Memorandum Of Law In Opposition To Defendants' Motions To Dismiss Plaintiffs' Class Action Complaint* with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Carmella P. Keener
Rosenthal, Monhait & Goddess, P.A.
Citizens Bank Center, Suite 1401
919 Market Street
Wilmington, DE 19899-1070
Tel: (302) 656-4433
Fax: (302) 658-7567
ckeener@rmgglaw.com
*Counsel for Plaintiffs*

Jeffrey M. Norton, Esq.
*Admitted Pro Hac Vice*
Robert I. Harwood, Esq.
Roy Shimon, Esq.
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY 10022
Tel: (212) 935-7400
Fax: (212) 753-3630
rharwood@hfesq.com
jnorton@hfesq.com
rshimon@hfesq.com
*Of Counsel for Plaintiffs*

Kenneth J. Nachbar
Morris, Nichols, Arsht & Tunnell LLP
Chase Manhattan Centre, 18th Floor
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
T: (302) 351-9294
F: (302) 658-3989
knachbar@mnat.com
*Counsel for Defendant Citigroup Inc.*

Katharine V. Jackson
Reed Smith LLP
1201 Market Street
Suite 1500
Wilmington, DE 19801
T: (302) 778-7500
F: (302) 778-7575
kjackson@reedsmith.com
*Counsel for Defendant GMAC-RFC Holding Company, LLC*

Stephen E. Herrmann
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
T: (302) 658-6541
F: (302) 651-7701
herrmann@rlf.com
*Counsel for Defendant HSBC Finance Corporation*

David S. Eagle
Kelly A. Green
Klehr, Harrison, Harvey, Branzburg & Ellers
919 Market Street
Suite 1000
Wilmington, DE 19801
T: (302) 426-1189
F: (302) 426-9193
deagle@klehr.com
kgreen@klehr.com
*Counsel for Defendant JP Morgan Chase & Co.*

Irene Freidel
Bruce Allensworth
K&LGates
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
T: (617) 951-9154
F: (617).261-3175
bruce.allensworth@klgates.com
irene.freidel@klgates.com
*Counsel for Defendant HSBC Finance Corporation*

Richard D. Kirk
The Bayard Firm
222 Delaware Ave.
Suite 900
P.O. Box 25130
Wilmington, DE 19899
T: (302) 655-5000
F: (302) 658-6395
rkirk@bayardfirm.com
*Counsel for Defendants Washington Mutual Bank, Countrywide Financial
Corporation, and Wells Fargo & Company*

John Dorsey
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
T: (302) 571-6600
F: (302) 571-1253
jdorsey@ycst.com
*Counsel for Defendant Fannie Mae*

William McKenna
Jill Murch
Foley & Lardner LLP
321 North Clark, Suite 2800
Chicago, IL 60610
T: 312.832.4541
F: 312.832.4700
WMcKenna@foley.com
jmurch@foley.com
*Counsel for Defendant Fannie Mae*

David Baldwin
Peter J. Walsh Jr.
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street, 6th Floor
Wilmington, DE  19801
T: (302) 984-6017
F: (302) 658-1192
dbaldwin@potteranderson.com
pwalsh@potteranderson.com
dmoore@potteranderson.com
*Counsel for Defendant Freddie Mac*

Katharine V. Jackson
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
T: (215) 851-8100
F: (215) 851-1420
kjackson@reedsmith.com
*Counsel for Defendant GMAC-RFC Holding Company, LLC*

I further certify that a copy of the foregoing document and the notice of electronic

filing were sent by U.S. Mail to the following non-CM/ECF participants:

Matthew S. Chase, Esq.
The Chase Law Firm, PC
8123 Delmar Boulevard
University City, MO 63130-3729
Tel: (314) 726-4040
Fax: (314) 726-6543
matthew@chaselawpc.com
*Of Counsel for Plaintiff*

Thomas Hefferon
Scott Nardi
Goodwin Procter
901 New York Avenue, NW
Washington, DC 20001
T: (202) 346-4000
F: (202)-346-4444
thefferon@goodwinprocter.com
snardi@goodwinprocter.com
*Counsel for Defendants Washington Mutual Bank, Countrywide Financial
Corporation, and Wells Fargo & Company*

Lucia Nale
Thomas V. Panoff
Mayer, Brown
71 S. Wacker Drive
Chicago, IL 60606
T: (312) 706-0600
F: (312) 701-7711
lnale@mayerbrown.com
tpanoff@mayerbrown.com
*Counsel for Defendant Citigroup Inc.*

20

LeAnn Pedersen Pope
Danielle Szukala
Burke, Warren, MacKay & Serritella
330 N. Wabash Avenue
22nd Floor
Chicago, Illinois  60611
T: (312) 840-7013
F: (312) 840-7900
lpope@burkelaw.com
dszukala@burkelaw.com
*Counsel for Defendant JP Morgan Chase & Co.*


*/s/ Kevin F. Brady*
Kevin F. Brady (No. 2248)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF DELAWARE

JOSE TREVINO and LORRY S. TREVINO,
individually and on behalf of all others similarly
situated,

       Plaintiffs,

v.

MERSCORP, INC. and MORTGAGE              C. A. NO. 07-cv-00568-JJF
ELECTRONIC REGISTRATION SYSTEMS,
INC., CITIGROUP, INC., COUNTRYWIDE
FINANCIAL CORPORATION, FANNIE MAE,
FREDDIE MAC, GMAC-RFC HOLDING
COMPANY, LLC d/b/a GMAC RESIDENTIAL
FUNDING CORPORATION, HSBC FINANCE
CORPORATION, JPMORGAN CHASE & CO,
WASHINGTON MUTUAL BANK, and WELLS
FARGO & COMPANY,

       Defendants.
_____/

**EXHIBIT A TO DEFENDANTS MERSCORP, INC. AND MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.'S REPLY TO PLAINTIFFS'
OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# EXHIBIT A

Return Recorded Document To:
Washington Mutual Bank, FA
DATRICIA D. DRAYTON
Default Specialist II
7301 Baymeadows Way
Jacksonville, FL 32256
Mail Stop: JAXA2000
Loan # 0612206789/TREVINO

Mail Tax Statement To:
Transamerica
6053 S. Fashion Square Drive
Suite 200
Murray, UT 84107

_____(Space Above This Line for Recording Data)_____

# LOAN MODIFICATION AGREEMENT
## PROVIDING FOR FIXED INTEREST RATE

This Loan Modification Agreement ("Agreement"), made this 7TH day of JULY, 2006 between JOSE A. TREVINO AND LORRY S. TREVINO, HUSBAND AND WIFE, ("Borrower") residing at 7724 BURR OAK LANE, SAINT LOUIS MISSOURI, 63130, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as nominee for WASHINGTON MUTUAL BANK, FA, ("LENDER") with an address of c/o 7301 Baymeadows Way, Jacksonville, FL 32256, amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), dated MAY 16, 2003, recorded JUNE 12, 2003, in BOOK NO. 14957, PAGE NO. 611, in the Official Records of the Register of Deeds of SAINT LOUIS COUNTY, State of MISSOURI, in the original principal sum of $134,000.00 and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real personal property described in the Security Instrument and defined therein as the 'Property', located at 7724 BURR OAK LANE, SAINT LOUIS MISSOURI, 63130 the real property described being set forth as follows:

THE WEST 66.41 FEET OF LOT 9 AND THE EAST 1.67 FEET OF LOT 10 OF BLACKBERRY TERRACE SECOND ADDITION, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 48 PAGE 12 OT THE ST. LOUIS COUNTY RECORDS.

PARCEL ID NUMBER: 17K320511

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      The unpaid principal balance of this Mortgage prior to the execution of the Loan Modification Agreement was $118,015.19. As of JULY 1, 2006, the amount payable under the Note and the Security Instrument the ("Unpaid Principal Balance") is U.S. $123,639.72, consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date.

MERS# 1002527 0003040093 9                              VRU#888-679-6377

2.   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender or as Lender directs. Interest will be charged on the unpaid balance at the rate of 5.000%, as defined in the Note, commencing JULY 1, 2006 and Borrower agrees to make monthly payments of principal and interest in the amount of $1,149.37 commencing on AUGUST 1, 2006 and each and every month thereafter on the same day of each succeeding month until the principal and interest are fully paid. If on JUNE 1, 2018 (the "Maturity Date"), the borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity date.

     The Borrower will make such payments at P.O. Box 3200, Milwaukee, WI 53224 or at such other place as the Lender may require.

3.   If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

     If the Lender exercises this option, the lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4.   The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

5.   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.


By: _____
    JOSE A. TREVINO- Borrower

By: _____
    LORRY B. TREVINO- Borrower


By: _____
    WENDY A. WOODCOCK -Vice President
    WASHINGTON MUTUAL BANK, FA

2

_____(Space Below This Line for Acknowledgments)_____

** NOTARY FOR BORROWER

STATE OF ___Texas___

COUNTY OF ___Nueces___

On __July 18_____, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared  JOSE A. TREVINO  personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to be within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Valerie Mar_____

My Commission Expires: _11-06-2007_

> VALERIE MARTINEZ
> Notary Public
> State of Texas
> My Comm. Exp. 11-06-2007


** NOTARY FOR BORROWER

STATE OF _Missouri_

COUNTY OF _St. Louis County_

On __July  14_____, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared   LORRY S. TREVINO   personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to be within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

My Commission Expires:

> MATTHEW S. CHASE
> Notary Public - Notary Seal
> State of Missouri - County of St. Louis
> My Commission Expires May 31, 2009
> Commission #05403887

3