IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSE TREVINO and LORRY S. TREVINO, Individually and On Behalf Of All Others Similarly Situated, | ) ) ) | |
| | ) | C.A. No. 07-568-JJF |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| MERSCORP, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., CITIGROUP INC., COUNTRYWIDE FINANCIAL CORPORATION, FANNIE MAE, FREDDIE MAC, GMAC-RFC HOLDING COMPANY, LLC d/b/a GMAC RESIDENTIAL FUNDING CORPORATION, HSBC FINANCE CORPORATION, JPMORGAN CHASE & CO, WASHINGTON MUTUAL BANK, and WELLS FARGO & COMPANY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## REPLY BRIEF OF DEFENDANTS FREDDIE MAC AND FANNIE MAE IN SUPPORT OF THEIR MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (CORRECTED)

OF COUNSEL:

Wilma A. Lewis
Howard S. Lindenberg
Freddie Mac
8200 Jones Branch Drive
Mclean, VA 22102
Tel: (703) 903-2485
Wilma_Lewis@ freddiemac.com
Howard_Lindenberg@freddiemac.com

David J. Baldwin (#1010)
Peter J. Walsh, Jr. (#2437)
David E. Moore (#3983)
Michael B. Rush (#5061)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dbaldwin@potteranderson.com
pwalsh@potteranderson.com
dmoore@potteranderson.com
mrush@potteranderson.com

*Attorneys for Defendant Freddie Mac*

OF COUNSEL:

Jill Murch
William McKenna
Foley & Lardner LLP
321 North Clark
Suite 2800
Chicago, IL 60610
(312) 832-4700
jMurch@foley.com
wmckenna@foley.com

John T. Dorsey (#2988)
Erin Edwards (#4392)
YOUNG, CONAWAY, STARGATT
 & TAYLOR LLP
1000 West Street, 17th Floor
P. O. Box 392
Wilmington, DE 19899-0391
Tel: 302-571-6712
jdorsey@ycst.com

*Attorneys Defendant for Fannie Mae*

Dated: June 10, 2008

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................1

I.    PLAINTIFFS FAIL TO PLEAD WITH THE SPECIFICITY
REQUIRED BY THE UNITED STATES SUPREME COURT IN
*TWOMBLY*..........................................................................................................1

II.   THE COURT SHOULD NOT CONSIDER ANY ARGUMENTS
PLAINTIFFS RAISE FOR THE FIRST TIME IN THEIR
OMNIBUS MEMO..............................................................................................2

III.  EVEN CONSIDERING THE EXTRANEOUS "FACTS"
IMPROPERLY PUT FORTH BY PLAINTIFFS, PLAINTIFFS'
ALLEGATIONS ARE INSUFFICIENT AS A MATTER OF
LAW TO ESTABLISH LIABILITY OF THE SHAREHOLDER
DEFENDANTS ON A VEIL PIERCING OR AGENCY THEORY.....................3

     A.   Plaintiffs' Agency Theory Is Directly Contracted by the
Allegations of the Amended Complaint and Fails as a
Matter of Law. ........................................................................................3

     B.   Plaintiffs Confuse the Distinction Between the Alter Ego
and Agency Theories. ..............................................................................5

     C.   Plaintiffs Alter Ego Theory of Liability Fails as a Matter of
Law. .........................................................................................................6

          1.   Plaintiffs Cannot Allege Injustice as Required. ...............................6

          2.   Plaintiffs Cannot Allege that MERS and the
Shareholder Defendants Are a Single Economic
Entity as Required...........................................................................9

               a.   Plaintiffs' Allegation that MERS was
Undercapitalized is Insufficient as a Matter
of Law to Support Piercing the Corporate
Veil.........................................................................10

               b.   Plaintiffs' Allegations that MERS Paid No
Dividends are Insufficient as a Matter of
Law to Support Piercing the Corporate Veil.......................10

i

c.     Plaintiffs' Allegations on Insolvency are Insufficient as a Matter of Law to Support Piercing the Corporate Veil. ...............................................12

d.     Plaintiffs' Allegations on Whether MERS is a Façade for the Shareholder Defendants are Insufficient as a Matter of Law to Support Piercing the Corporate Veil ...............................................12

CONCLUSION............................................................................................................15

## TABLE OF AUTHORITIES

Page

**CASES**

*Arch v. American Tobacco Co., Inc., et al.,*
    984 F. Supp. 830 (E.D. Pa. 1997) ...........................................................10, 11

*Beauchamp v. Chichester Sch. Dist.,*
    C. A. No. 05-4141, 2005 WL 3110822 (E.D. Pa. 2005).........................................2

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (2007) ........................................................................ Passim

*Gabelli & Co., Inc. v. Liggett Group, Inc.,*
    479 A.2d 276 (Del. 1984) ...........................................................................12

*In re Foxmeyer Corp.,*
    290 B.R. 229 (Bankr. D. Del. 2003) ...............................................................10

*Isquith v. Middle South Utilities, Inc.,*
    847 F.2d 186 (5th Cir. 1988) ......................................................................8, 9

*Local 397 v. Midwest Fasteners, Inc.,*
    779 F. Supp. 788 (D.N.J. 1992)...............................................................11, 12, 13

*Mason v. Network of Wilmington, Inc.,*
    Civ. No. 19434-NC, 2005 WL 1653954 (Del. Ch. 2005).........................................11

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,*
    C.A. No. 19760-NC, 2004 WL 415251 (Del. Ch. 2004)...........................................8

*Mobil Oil v. Linear Films, Inc.,*
    718 F. Supp. 260 (D. Del. 1989) ............................................................. Passim

*Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.,*
    836 F.2d 173 (3d. Cir. 1988)....................................................................2, 4

*Phillips v. County of Allegheny,*
    515 F.3d 224 (3d Cir. 2007)........................................................................2

*Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,*
    842 F.2d 1466 (3d Cir. 1988) .......................................................................6

*Satellite Financial Planning Corp. v. First Nat'l Bank,*
    633 F. Supp. 386 (D. Del. 1986).....................................................................6

*Trustees of the Nat'l Elevator Indus. Pension Health Benefit & Educ. Funds v. Lutyk,*
    332 F.3d 188 (3d Cir. 2003)...........................................................................................10, 12

*United States of America v. Pisani,*
    646 F.2d 83 (3d Cir. 1981)...........................................................................................8, 9, 13

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................15

12 U.S.C. §§ 1451-59, 716-23, *et seq.* ...........................................................................................7

**INTRODUCTION**

Replying to the arguments raised in Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss Plaintiffs' Amended Class Action Complaint (D.I. 58) (the "Omnibus Memo") is an exercise in shooting moving targets. Tacitly conceding the insufficiency of their veil piercing claims against the Shareholder Defendants[1], Plaintiffs now try a new tack, and attempt to salvage their legally insufficient Amended Class Action Complaint (the "Amended Complaint") by arguing an unpleaded "agency" theory of shareholder liability and improperly seeking to introduce evidentiary material under the guise of a Request for Judicial Notice. As discussed more fully in the Shareholder Defendants' Objection to Request for Judicial Notice, these extraneous materials are not properly before the Court. With or without consideration of Plaintiffs' extraneous and improper materials, however, Plaintiffs' allegations still fail, as they are insufficient as a matter of law to support their putative claims.

**ARGUMENT**

I.     **PLAINTIFFS FAIL TO PLEAD WITH THE SPECIFICITY REQUIRED BY THE UNITED STATES SUPREME COURT IN *TWOMBLY*.**

*Bell Atlantic Corp. v. Twombly* requires that a plaintiff make a showing rather than a blanket assertion of entitlement to relief. *See* 127 S.Ct. 1955, 1965-1966 (2007). Plaintiffs simply ignore *Twombly* and refer instead to pre-*Twombly* decisions relying upon the superseded standard specifically rejected by the Supreme Court. *See* Omnibus Memo, p. 10. Plaintiffs' decision to ignore *Twombly* cannot change the applicable legal standard articulated by the

---

1 The "Shareholder Defendants," as used in this reply brief, refers to Fannie Mae and Freddie Mac.

Supreme Court or, as discussed below, remedy the failure of their Amended Complaint to meet that standard.

In *Twombly,* the Supreme Court rejected the previous standard, which allowed "a wholly conclusory statement of claim [to] survive a motion to dismiss whenever the pleading left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." 127 S.Ct. 1955, 1968 (2007). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should...be exposed at the point of minimum expenditure of time and money by the parties and the court,'" and "it is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process." *Id.* at 1966 (quoting 5 Wright & Miller §1216, at 233-234), 1968.

## II.    THE COURT SHOULD NOT CONSIDER ANY ARGUMENTS PLAINTIFFS RAISE FOR THE FIRST TIME IN THEIR OMNIBUS MEMO.

Plaintiffs' reliance upon an agency theory of liability and factual allegations not contained within the Amended Complaint is wholly improper and ultimately unpersuasive. *See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.,* 836 F.2d 173, 181 (3d. Cir. 1988) (internal citation omitted) ("[T]he legal theories set forth in Pennsylvania's brief are helpful only to the extent that they find support in the allegations set forth in the complaint. `[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'"); *Beauchamp v. Chichester Sch. Dist.,* C. A. No. 05-4141, 2005 WL 3110822, *4 (E.D. Pa. 2005) (noting that plaintiffs cannot amend their complaint through a legal brief submitted in opposition to a motion to dismiss). This Court should not consider any allegations by Plaintiffs not made in the Amended Complaint.

2

III.   **EVEN CONSIDERING THE EXTRANEOUS "FACTS" IMPROPERLY PUT FORTH BY PLAINTIFFFS, PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH LIABILITY OF THE SHAREHOLDER DEFENDANTS ON A VEIL PIERCING OR AGENCY THEORY.**

In an effort to avoid the weakness of their veil piercing arguments, Plaintiffs suddenly contend in their opposition that the court should pierce the corporate veil because the Shareholder Defendants are somehow principals and/or agents of MERS. Plaintiffs' newfound theory is directly contradicted by the allegations of the complaint and confuses agency and alter ego doctrine. Neither this eleventh hour agency theory nor Plaintiffs' veil piercing arguments can salvage their inadequate claims against the defendant shareholders.

A.     **Plaintiffs' Agency Theory Is Directly Contradicted by the Allegations of the Amended Complaint and Fails as a Matter of Law.**

In order to hold the Shareholder Defendants liable under an agency theory, Plaintiffs must allege (1) that the Shareholder Defendants were acting as the principal and MERS was acting as the Shareholder Defendants' agent and (2) that there was a close connection between the relationship of the Shareholder Defendants and MERS and the cause of action. *See Mobil Oil v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989). Plaintiffs have failed to do so, and as such, their newly minted agency theory fails.

Nowhere in the Amended Complaint do Plaintiffs allege, let alone "show" as required by *Twombly,* that MERS acted as the agent of the Shareholder Defendants. Nor do Plaintiffs show in their Amended Complaint or Omnibus Memo that MERS and the Shareholder Defendants "acted interchangeably" as "mutual agents" or each other. *See* Omnibus Memo, p. 41-42. In fact, as support for each of these agency theories, Plaintiffs allege that the exact opposite is true:

3

Plaintiffs allege that the Shareholder Defendants were the agents of MERS.  For example, the

following statements are scattered throughout the Amended Complaint:

- "In its directives to its members and agents regarding foreclosures, MERS
  states…" Am. Complaint, ¶ 8(f), 27

- "The number and identities of the loan borrowers whose Mortgage Notes are
  registered with MERS can easily be determined from the mortgage records
  maintained by MERS *or its agents*." Am. Complaint, ¶ 13 (emphasis added).

- "By setting forth rules and procedures for mortgage lenders, mortgage servicers,
  and other beneficiaries, ***MERS is acting through its agents***…" Am. Complaint,
  ¶ 33 (emphasis added).

- "Beyond acting as an agent of MERS, however, the attorneys have no
  contractual relationship with the borrowers…" Am. Complaint, ¶ 38.

- "Funds resulting from increased value that the borrowers are entitled to after
  satisfying the Mortgage Note now represent a windfall to ***MERS and its
  agents***…" Am. Complaint, ¶ 62 (emphasis added).

- "[T]he imposition by MERS ***through its loan servicers and agents***…" Am.
  Complaint, ¶ 68 (emphasis added).

Plaintiffs' bald assertion in their opposition papers cannot supplant the allegations to the

contrary in their Amended Complaint.  *See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*,

836 F.2d 173, 181 (3d. Cir. 1988) (internal citation omitted) ("[T]he legal theories set forth in

Pennsylvania's brief are helpful only to the extent that they find support in the allegations set

forth in the complaint. `[I]t is axiomatic that the complaint may not be amended by the briefs in

opposition to a motion to dismiss.'"); *Beauchamp v. Chichester Sch. Dist.*, C. A. No. 05-4141,

2005 WL 3110822, *4 (E.D. Pa. 2005) (noting that plaintiffs cannot amend their complaint

through a legal brief submitted in opposition to a motion to dismiss).

Moreover, even if Plaintiffs could show that MERS was the agent of the Shareholder

Defendants, or that the Shareholder Defendants were the agents of MERS in some matter or

instance, the Amended Complaint would still be insufficient as a matter of law, as Plaintiffs

nowhere show that Shareholder Defendants were part of an arrangement with MERS and that the arrangement was relevant to Plaintiffs' claim of wrongdoing.  *See* Reply Brief of Defendant GMAC (D.I. 60), II.A (incorporated and adopted herein by reference).

For this same reason, Plaintiffs effort to attribute to the Shareholder Defendants some unspecified, potential (not actual) actions that might be taken by a MERS <u>member</u> in a given foreclosure is likewise insupportable.  Plaintiffs cannot show that the distinct roles of shareholder and member are the same, let alone that the <u>shareholders</u> have taken any action available to a given <u>member</u>.  Instead, Plaintiffs simply flip back and forth between the text discussing the membership and conclusory assertions regarding the defendant shareholders  (see, e.g., Omnibus Memorandum at 43-44).  In fact, Plaintiffs effectively concede that they also have no direct claims against any of the Shareholder Defendants (except possibly Washington Mutual Bank) which, according to Plaintiffs Omnibus Memo, made the Plaintiffs' loan.  See Omnibus Memorandum, p. 46.   Plaintiffs simply have not shown that the Shareholder Defendants are liable under an agency theory.

**B.    Plaintiffs Confuse the Distinction Between the Alter Ego and Agency Theories.**

In an effort to support their "agency" theory, Plaintiffs make the conclusory allegation that "[a]t all relevant times, MERS was under the utter and complete dominion and control of the Control Defendants who own, operate, control, manage, and direct the activities of MERS."  *See* Omnibus Memo, p. 42 (*citing* Am. Complaint, ¶¶ 9(j), 15(c)).

In *Mobil Oil*, this Court drew a distinction between customary agency principles and an "agency" theory based on total domination and control over the subsidiary, recognizing that the latter is simply another way of pleading an alter ego theory.  718 F. Supp. at 271.  Courts have explained that an agency theory premised on domination and control is essentially the same as an

"alter ego" theory of piercing the corporate veil. *See Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 842 F.2d at 1466, 1476-77 (3d Cir. 1988) (explaining that concept of complete domination and control applied by district court is more useful in context of "piercing the corporate veil" than it is to determination of liability under general agency principles); *Mobil Oil,* 718 F. Supp. at 271 (stating that agency theory based on complete domination and control is generally identical to theory under which corporate veil is pierced because of alter ego relationship). Plaintiffs, therefore, must do more than allege "domination and control" to state a claim under an agency theory.[2]  Otherwise, there would be no distinction between the agency and the "alter ego" theories of liability. Plaintiffs' new agency theory of liability, based as it is on supposed domination and control, adds nothing new to Plaintiffs' claims. Those claims are properly analyzed under the principles of alter ego veil piercing law, discussed below.

**C.    Plaintiffs Alter Ego Theory of Liability Fails as a Matter of Law.**

**1.    Plaintiffs Cannot Allege Injustice as Required.**

In their opposition, Plaintiffs wrongly assert that the allegations of their Amended Complaint, combined with "judicially noticed" facts, are enough to warrant piercing the corporate veil. Omnibus Memo, pp. 36-40.

Plaintiffs rely primarily upon two paragraphs of their amended pleading. In paragraph 9(m), Plaintiffs make the following allegation:

> Accordingly, sufficient basis exists to pierce the corporate veil of MERS and hold the Control Defendants jointly and severally liable to Plaintiffs and the Class. Adherence to the fiction that MERS is an entity wholly independent from the Control Defendants would promote a grave injustice to those injured by the conduct alleged herein.

---

[2] *Satellite Financial Planning Corp. v. First Nat'l Bank,* 633 F. Supp. 386 (D. Del. 1986), which Plaintiffs reference as support for their argument that an agency theory is sufficiently pled by alleging "utter and complete domination" (Omnibus Memo, p. 42), predates *Mobil Oil, Phoenix,* and *Twombly.*

Amended Complaint; *see also* Omnibus Memo, p. 38. And in paragraph 12, Plaintiffs assert, in part, as follows:

> In the past ten (10) years, the number of loans held by MERS as lender, assignee or beneficiary in the MERS secondary market has multiplied exponentially. During the Class Period, hundreds of "thousands of these mortgages have fallen into foreclosure and were (or are currently) subject to imposition and collection of improper attorneys' fees and expenses.

Amended Complaint; *see also* Omnibus Memo, p. 38. Neither paragraph establishes the necessary injustice because neither is a "well-pleaded" allegation directed to the requirement that "fraud or injustice be found in the defendants' use of the corporate form," *Mobil Oil*, 718 F. Supp. at 269.

Plaintiffs assert conclusory allegations when *Twombly* clearly requires more. For example, paragraph 9(m) contains no explanation of why the use of the corporate form is improper, what injustice is being committed, or how the use of the corporate form causes that injustice. Furthermore, in the very same pleading, Plaintiffs concede that "MERS was created in 1996 by the mortgage banking industry to create a secondary market, internally administer the buying and selling of mortgages, and to simplify the administration of home mortgages, including foreclosure proceedings" and "MERS was created and established by the Control Defendants for the purpose of facilitating their own business interests and limiting their liability in that effort." Am. Complaint, ¶ 9(j).[3] As the Court explained in *Mobil Corp.*, these pursuits do not provide the necessary injustice:

> Limiting one's personal liability is a traditional reason for a corporation. Unless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity.

---

[3] Freddie Mac and Fannie Mae were formed by Congress to provide stability, liquidity and ready access to the residential mortgage market. *See* 12 U.S.C. §§ 1451-59, 716-23, *et seq.*

718 F. Supp. at 269 (citing *Zubik v. Zubik*, 384 F.2d 267 (3d Cir. 1967)), *cert. denied*, 390 U.S.

988, 88 S. Ct. 1183, 19 L.Ed.2d 1291).  Simply put, the allegations of the Amended Complaint

reveal that MERS was established for entirely proper purposes, not to perpetrate a wrong or

injustice.

In paragraph 12, Plaintiffs rely upon breach of contract language.  Such

allegations do not suffice to allege the necessary fraud or injustice. *See Medi-Tec of*

*Egypt Corp. v. Bausch & Lomb Surgical*, C.A. No. 19760-NC, 2004 WL 415251, at * 4

(Del. Ch. 2004) ("Allegations of breach of contract by a subsidiary do not suffice to

supply the necessary fraud or injustice to hold the subsidiary to be the alter ego of the

parent, especially where there is no evidence of wrong-doing by the parent." (citing

*Mobil Oil*)).

Finally, Plaintiffs' attempt to cobble together *Pisani* factors to satisfy the injustice

prong falls considerably short of the mark.  *United States of America v. Pisani*, 646 F.2d

83 (3d Cir. 1981).  Rather than establishing the presence of multiple *Pisani* factors, as

required under their own authority (*see* Omnibus Memo, p. 36 (citing *Golden Acres*)),

Plaintiffs assert only that "MERS barely has the capital to conduct its own business, let

alone cover its potential liability." Omnibus Memo, p. 38. Even citations to matters

contained in the disputed Request for Judicial Notice, namely that MERS now stands as

the mortgagee of record for 50 million mortgages, cannot save Plaintiffs' attempt to meet

the injustice prong. While the Court need not consider the allegations in the Request for

Judicial Notice, [4] such allegations, if considered, only highlight MERS' longevity and

---

[4] When, as here, *"scanty, incomplete, or inconclusive"* material outside of the pleadings is
offered in response to a motion to dismiss, a court should exercise its discretion and refuse to
consider the material. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n.3 (5th Cir.

success in the marketplace. To read anything more into Plaintiffs' bare assertions would require gross speculation and contravene *Twombly*.

> **2.   Plaintiffs Cannot Allege that MERS and the Shareholder Defendants Are a Single Economic Entity as Required.**

Plaintiffs do not dispute the applicability of the *Pisani* factors[5] to the Court's determination on the Shareholder Defendants' pending motions and nowhere suggest that any siphoning of corporate funds has occurred or that MERS' observance of corporate formalities and maintenance of corporate records supports piercing the veil in this case. Plaintiffs contend only that MERS' alleged capitalization, dividends, insolvency, and status as a "façade" indicate that the Court should disregard MERS' corporate structure. *See* Omnibus Memo, pp. 29-36.

The Amended Complaint, the relevant pleading, is even less helpful to Plaintiffs' cause, containing no allegation that MERS (1) fails to observe corporate formalities; (2) fails to pay dividends; (3) fails to keep corporate records; (4) is insolvent; or (5) has dominant shareholders siphoning off its funds. In fact, in the Amended Complaint, the Shareholder Defendants are alleged to exercise "control" over MERS precisely through respect of corporate formalities, *i.e.*, through their status as shareholders and directors. Even if the Court were to consider Plaintiffs' Request for Judicial Notice (which it should decline to do), Plaintiffs' argument would be to no avail.

---

1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969)) (emphasis added); *see also* Opposition to Request for Judicial Notice (D.I. 61).

[5] The factors cited in Pisani include: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders. See *U.S. v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981).

a.    **Plaintiffs' Allegation that MERS was Undercapitalized is Insufficient as a Matter of Law to Support Piercing the Corporate Veil.**

Plaintiffs assert in the Omnibus Memo that "[b]ased on the Plaintiffs' allegations and the aforementioned judicially noticed facts, a reasonably prudent individual with general business background would deem MERS to be undercapitalized." Omnibus Memo, p. 33. The alleged facts Plaintiffs offer are insufficient as a matter of law to support the conclusion that MERS was undercapitalized.

Plaintiffs allege that: the Shareholder Defendants have greater profits than "MERS" (Am. Complaint, ¶ 9(l)); the corporate form provides Shareholder Defendants and other shareholders with means of limiting liability (*id.*); MERS employs approximately 40 persons (Am. Complaint, ¶ 9(k)); and MERS generates $11 million in annual income (Am. Complaint, ¶ 9(k)). And without any indication of how an asset base is or should be calculated, Plaintiffs contend that, by labeling the MERS asset base as "meager", they have somehow sufficiently pleaded that MERS is "grossly undercapitalized to cover the potential liability stemming directly from its role as primary mortgagee on tens of millions of Mortgage Notes." Am. Complaint, ¶ 9(l).

Plaintiffs completely fail to show that MERS was undercapitalized at the time of its inception or that MERS is unable to meet debts that may reasonably arise in its normal course of business as would be required to support piercing the corporate veil. *See Trustees of the Nat'l Elevator Indus. Pension Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d cir. 2003) (looking to initial capitalization for undercapitalization determination); *In re Foxmeyer Corp.*, 290 B.R. 229, 244 (Bankr. D. Del. 2003) (same). The assertion that MERS is undercapitalized because it allegedly could not satisfy a judgment in the amount sought by Plaintiffs is speculative and, in any event, inapposite. *See Arch v. American Tobacco Company, Inc., et al.*, 984 F. Supp.

830, 840 (E.D. Pa. 1997) ("the possibility that a plaintiff may have difficulty enforcing a

judgment against a defendant is not enough to justify piercing the corporate veil. Courts do not

pierce the corporate veil unless the 'corporation is so undercapitalized that it is unable to meet

debts that may reasonably be expected to arise in the normal course of business.'" (internal

citations omitted)); *cf. Mason v. Network of Wilmington, Inc.,* C.A. No. 19434-NC, 2005 WL

1653954, at * 3 (Del. Ch. 2005) ("If creditors could enter judgments against shareholders every

time that a corporation becomes unable to pay its debts as they become due, the limited liability

characteristic of the corporate form would be meaningless.").

In a final attempt to bolster their undercapitalization claim, Plaintiffs rely upon the

deposition testimony of a MERS representative from another unrelated litigation. Assuming,

*arguendo*, that that testimony is properly before the Court on this motion to dismiss, it does not

save the Amended Complaint. Rather, the testimony shows that the Shareholder Defendants put

up initial capital for MERS; that MERS is an "operating entity;" and that the services MERS

provides to its members, including the Shareholder Defendants and others, allow MERS

members to operate more efficiently. *See* Omnibus Memo, p. 31. This testimony obviously does

not suggest, much less establish, that MERS was inadequately capitalized at its inception or that

MERS is unable to meet its debts as they become due.

>      **b.**    **Plaintiffs' Allegations that MERS Paid No Dividends are**
>              **Insufficient as a Matter of Law to Support Piercing the**
>              **Corporate Veil.**

Plaintiffs allege "MERS was created in 1996 by the mortgage banking industry to create

a secondary mortgage market, internally administer the buying and selling of mortgages and to

simplify the administration of home mortgages, including foreclosure proceedings." Am.

Complaint, ¶ 8(c). Then, after citing deposition testimony that actually supports the asserted

purposes of MERS, Plaintiffs assert, "[t]he fact MERS does not issue dividends is further

evidence that its corporate purpose is a sham." Omnibus Memo, p. 34. [6] Plaintiffs cannot claim

that MERS' purpose is a "sham" when they admit that it was established for rational business

goals which it has served for twelve years.

In addition, where as here, a plaintiff concedes that the company whose veil it is

attempting to pierce observes corporate formalities and pursues legitimate business purposes, the

company's decision not to issue a dividend should be of little significance in an alter-ego

analysis, particularly given the reluctance of courts to compel payment of a dividend. *See*

*Gabelli & Co., Inc. v. Liggett Group, Inc.*, 479 A.2d 276, 280 (Del. 1984) ("[B]efore the courts

will interfere with the judgment of the board of directors in such matter [declaration and payment

of a dividend], fraud or gross abuse of discretion must be shown."); *cf. Local 397 v. Midwest*

*Fasteners, Inc.*, 779 F. Supp. 788, 794 (D.N.J. 1992) (In assessing a veil-piercing claim, "[t]his

factor [nonpayment of dividends] weighs in favor of defendants...because it shows that the parents

were not siphoning funds from the subsidiary."); *see also Trustees of the Nat'l Elevator Indus.*

*Pension Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 196 (3d Cir. 2003) (holding that

the failure to issue dividends by a closely-held corporation did not weigh in favor of piercing the

corporate veil).

    c.    **Plaintiffs' Allegations on Insolvency are Insufficient as a
Matter of Law to Support Piercing the Corporate Veil.**

Plaintiffs' arguments on insolvency are completely hypothetical. Plaintiffs concede, as

they must, that MERS is a company that has been in continuous operation for over a decade.

(Am. Complaint, ¶¶ 8 (a)-(b)). The Amended Complaint does not allege insolvency and there is

---

[6] Plaintiffs' contention that no dividends have been paid relies exclusively upon deposition
testimony that does not satisfy the requirements for judicial notice and, therefore, should not be
credited by this Court. *See* Opposition to Request for Judicial Notice (D.I. 61). Even if the
Court did credit the February 2002 testimony that no dividends had been paid previously,
Plaintiffs cannot cite to any facts that dividends have not been paid since that time. *See id.*

no basis to conduct the requested fishing expedition on this issue. *See Midwest Fasteners*, 779 F. Supp. at 795 ("Generally, when courts are determining whether to pierce the corporate veil, they are confronted with cases where the parent has drained the assets of the subsidiary, thereby causing insolvency.").

> **d.      Plaintiffs' Allegations on Whether MERS is a Façade for the Shareholder Defendants are Insufficient as a Matter of Law to Support Piercing the Corporate Veil.**

Plaintiffs employ conclusory and hyperbolic allegations in an attempt to establish the fourth *Pisani* factor addressed in the Omnibus Memo. *See* Omnibus Memo., pp. 35-36 ("**For the reasons already stated**, it is clear that MERS **serves at the pleasure of the Control Defendants**....;" "Had the Control Defendants not established MERS **as a front for their greater business interests**...;" and "Mr. Martorana's statements to the court further illustrate that MERS is **nothing more than a pawn**...;" (emphasis added)). As in other portions of the Omnibus Memo, Plaintiffs fail to draw support from the allegations of the Amended Complaint and, instead, rely upon new arguments that in turn are contradicted by the allegations in the amended pleading or irrelevant to the Court's analysis.

Paragraphs 8(a)-(e) of the Amended Complaint allege that MERS observes corporate formalities, generates income, and operates with a legitimate business purpose that benefits the mortgage industry and consumers alike. *See also supra*, pp. 7-10. The fact that MERS has backers that do not want it to go bankrupt (*see* Omnibus Memo, p. 35 (citing Ex. D to the Request for Judicial Notice) comes as no surprise and demonstrates only that MERS is fulfilling its stated, legitimate business purpose.

Undeterred, Plaintiffs assert, "Accordingly, since Plaintiffs' allegations, if true, establish that the Control Defendants operate as the alter ego of MERS, the corporate veil should be

pierced." Omnibus Memo, pp. 35-36.  Here, one is left to wonder what "allegations" Plaintiffs are referring to,as they can point to none in the Amended Complaint.

*        *        *

Plaintiffs' willingness to venture far afield from the allegations in the Amended Complaint demonstrates Plaintiffs' awareness of the pleading's inadequacy.  Plaintiffs' alter-ego veil piercing theory is premised on nothing more than speculation and "legal conclusions draped in the guise of factual allegations," insufficient to state a claim under the standard articulated in *Twombly*.

## CONCLUSION

For the foregoing reasons, the Shareholder Defendants respectfully request the Court to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).[7]

Respectfully submitted,

OF COUNSEL:                          POTTER ANDERSON & CORROON LLP

Wilma A. Lewis
Howard S. Lindenberg
Freddie Mac
8200 Jones Branch Drive              By: /s/ David J. Baldwin
Mclean, VA 22102                          David J. Baldwin (#1010)
Tel: (703) 903-2485                       Peter J. Walsh, Jr. (#2437)
Wilma_Lewis@ freddiemac.com               David E. Moore (#3983)
Howard_Lindenberg@freddiemac.com          Michael B. Rush (#5061)
                                          Hercules Plaza, 6th Floor
                                          1313 North Market Street
                                          Wilmington, DE  19801
                                          Tel:  (302) 984-6000
                                          dbaldwin@potteranderson.com
                                          pwalsh@potteranderson.com
                                          dmoore@potteranderson.com
                                          mrush@potteranderson.com

                                          *Attorneys for Defendant Freddie Mac*

---

[7] Freddie Mac and Fannie Mac adopt the arguments in the reply briefs of GMAC-RFC Holding Company, LLC d/b/a GMAC Residential Funding Corporation (D.I. 60), Merscorp, Inc. (D.I. 62), and the Shareholder Defendants (D.I. 65).

OF COUNSEL:

Jill Murch
William McKenna
Foley & Lardner LLP
321 North Clark
Suite 2800
Chicago, IL 60610
(312) 832-4700
jMurch@foley.com
wmckenna@foley.com

YOUNG, CONAWAY, STARGATT
 & TAYLOR LLP

By  /s/ John T. Dorsey
    John T. Dorsey (#2988)
    Erin Edwards (#4392)
    1000 West Street, 17th Floor
    P.O. Box 391
    Wilmington, DE 19899-0391
    Tel: 302-571-6712
    jdorsey@ycst.com

*Attorneys Defendant for Fannie Mae*

Dated: June 10, 2008
868687/32449

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David J. Baldwin, hereby certify that on June 11, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

(Jose Trevino and Larry S. Trevino)
Carmella P. Keener, Esq.
**Rosenthal, Monhait & Goddess, P.A.**
919 North Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899-1070

(Merscorp, Inc. and Mortgage
Electronic Registration Systems, Inc.)
Kevin F. Brady, Esq.
**Connolly, Bove, Lodge & Hutz**
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

(CitiMortgage, Inc.(Citigroup, Inc.))
Kenneth J. Nachbar (#2067)
**Morris, Nichols, Arsht & Tunnell LLC**
1201 No. Market Street, 18 Fl.
P.O. Box 1347
Wilmington, DE  19899-1347

(Fannie Mae)
John T. Dorsey, Esq.
Erin Edwards, Esq.
**Young, Conaway, Stargatt & Taylor LLP**
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

(GMAC-RFC Holding Company, LLC,
d/b/a GMAC Residential Funding
Corporation)
Katharine V. Jackson, Esq.
**Reed Smith LLP**
1201 Market Street
Suite 1500
Wilmington, DE  19801

(HBSC Finance Corporation)
Stephen E. Herrmann, Esq.
**Richards, Layton & Finger**
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

(JP Morgan Chase & Co.)
David S. Eagle, Esq.
Kelly A. Green, Esq.
**Klehr, Harrison, Harvey, Branzburg &
Ellers**
919 Market Street
Suite 1000
Wilmington, DE  19801

(Washington Mutual Bank, Wells Fargo &
Company, Countrywide Financial
Corporation)
Richard D. Kirk
**The Bayard Firm**
222 Delaware Ave., Suite 900
P.O. Box 25130
Wilmington, DE  19899

POTTER ANDERSON & CORROON LLP

*/s/ David J. Baldwin*
David J. Baldwin (DE Bar No. 1010)
Peter J. Walsh, Jr. (DE Bar No. 2437)
David E. Moore (DE Bar No. 3983)
Hercules Plaza, Sixth Floor
1313 N. Market Street
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: dmoore@potteranderson.com

*Attorneys For Freddie Mac*

848586