```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

JOSE TREVINO and LORRY S. TREVINO, :
individually and on behalf of        :
others similarly situated,           :
                                     :
             Plaintiffs,             :
                                     :
     v.                              :  Civil Action No. 07-568-JJF
                                     :
MERSCORP, INC. and MORTGAGE          :
ELECTRONIC REGISTRATION SYSTEMS,     :
INC., CITIGROUP, INC., COUNTRYWIDE   :
FINANCIAL CORPORATION, FANNIE MAE,   :
FREDDIE MAC, GMAC-RFC HOLDING        :
COMPANY, LLC d/b/a GMAC RESIDENTIAL  :
FUNDING CORPORATION, HSBC FINANCE    :
CORPORATION, JPMORGAN CHASE & CO,    :
WASHINGTON MUTUAL BANK, and WELLS    :
FARGO & COMPANY,                     :
                                     :
             Defendants.             :
```

Robert I. Harwood, Esquire; Jeffery M. Norton, Esquire and Roy
Shimon, Esquire of HARWOOD FEFFER LLP, New York, New York.
Carmella P. Keener, Esquire of ROSENTHAL, MONHAIT & GODDESS,
P.A., Wilmington, Delaware.

Attorneys for Plaintiff.

Robert M. Brochin, Esquire and Sean M. O'Neill, Esquire of MORGAN
LEWIS & BOCKIUS LLP, Miami, Florida.
Kevin F. Brady, Esquire and Jeremy D. Anderson, Esquire of
CONNOLLY BOVE LODGE & HUTZ LLP, Wilmington, Delaware.

Attorneys for Defendants MERSCORP Inc. and Mortgage Electronic
Registration Systems, Inc.

Henry F. Reichner, Esquire of REED SMITH, LLP, Philadelphia,
Pennsylvania.
Katherine V. Jackson, Esquire of REED SMITH, LLP, Wilmington,
Delaware.

Attorneys for Defendant GMAC-RFC Holding Company, LLC.

Wilma A. Lewis, Esquire and Howard S. Lindenberg, Esquire of
FREDDIE MAC, McLean, Virginia.
David J. Baldwin, Esquire; Peter J. Walsh, Junior, Esquire; David

E. Moore, Esquire and Michael B. Rush, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Defendant Freddie Mac.

Thomas M. Hefferon, Esquire and Scott B. Nardi, Esquire of GOODWIN PROCTOR LLP, Washington, DC.
Richard D. Kirk, Esquire and Stephen B. Brauerman, Esquire of BAYARD, P.A., Wilmington, Delaware.

Attorneys for Defendants Countrywide Financial Corp., Washington Mutual Bank, and Wells Fargo & Company.

Irene Freidel, Esquire and Bruce Allensworth, Esquire of K&LGATES, Boston, Massachusetts.
Stephen E. Herrmann, Esquire of RICHARDS LAYTON & FINGER, P.A., Wilmington, Delaware.

Attorneys for Defendant HSBC Finance Corporation.

William McKenna, Esquire and Jill Murch, Esquire of FOLEY & LARDNER LLP, Chicago, Illinois.
John T. Dorsey, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendant Freddie Mae.

LeAnn Penderson Pope, Esquire and Danielle Szukala, Esquire of BURKE, WARREN, MACKAY & SERRITELLA, P.C., Chicago, Illinois.
David S. Eagle, Esquire and Kelly A. Green, Esquire of KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP, Wilmington, Delaware.

Attorneys for Defendant JPMorgan Case & Co.

Lucia Nale, Esquire and Thomas V. Panoff, Esquire of MAYER BROWN, Chicago, Illinois.
Kenneth J. Nachbar, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendant Citigroup, Inc.

_____

## MEMORANDUM OPINION

September 30, 2008
Wilmington, Delaware

Joseph J. Faman Jr.
Farnan, District Judge.

Pending before the Court are the following motions: (1) Motion to Dismiss Plaintiffs' Amended Class Action Complaint, filed by Defendants MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. (D.I. 40); (2) Motion to Dismiss filed by Defendant GMAC-RFC Holding Company, LLC ("GMAC") (D.I. 42); (3) Motion to Dismiss the Amended Complaint, filed by Defendant Freddie Mac (D.I. 45); (4) Motion to Dismiss Amended Complaint With Respect to Shareholder Defendants, filed by the Shareholder Defendants (D.I. 47); and (5) Plaintiffs' Motion for Leave to File Surreply (D.I. 70). For the reasons discussed, the Court will grant the Shareholder Defendant's Motion to Dismiss the Amended Complaint (D.I. 47), but will allow Plaintiffs' direct liability claim against Washington Mutual to proceed. The Court will grant the Motions to Dismiss filed by Defendants GMAC-RFC Holding Company, LLC (D.I. 42 )and Freddie Mac (D.I. 45). The Court will grant Plaintiffs' Request for Leave to File Surreply (D.I. 70), and the Court will deny MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc. Motion to Dismiss Plaintiffs' Amended Class Action Complaint (D.I. 40).

## BACKGROUND

Plaintiffs, Jose Trevino and Lorry Trevino (collectively "the Trevinos"), filed this class action on September 20, 2007 (D.I. 1), against Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), and its parent corporation, Merscorp,

Inc. ("Merscorp") alleging that MERS overcharged Plaintiffs and a class of similarly situated individuals (the "Class") for costs and expenses, including attorneys fees, in connection with enforcement of certain mortgage instruments. Based on this alleged conduct, Plaintiffs asserted claims for breach of contract, unjust enrichment and breach of the duty of good faith and fair dealing. (D.I. 1.) On November 8, 2007, Plaintiffs filed an Amended Complaint, expanding the named defendants to include the "controlling shareholders" of MERS: Citigroup, Inc., Countrywide Financial Corporation, Fannie Mae, Freddie Mac, GMAC-RFC Holding Company, LLC d/b/a GMAC Residential Funding Corporation, HSBC Finance Corporation, JPMorgan Chase & Co., Washington Mutual Bank, and Wells Fargo & Company (collectively, the "Shareholder Defendants" or, as referred to by Plaintiffs in their Amended Complaint, the "Control Defendants")[1], alleging that MERS was under "the complete dominion and control" of the Shareholder Defendants with regard to the alleged conduct. (D.I. 10.)

_____

[1]By their brief, the Shareholder Defendants contend that, in several instances, the shareholders are not properly identified in the Amended Complaint. However, Defendants state that Plaintiffs intend to file a Second Amended Class Action Complaint naming the proper entities as defendants. The Shareholder Defendants thus reserved their right to challenge the naming of the proper corporate entities until the Second Amended Class Action Complaint is filed with this Court. (D.I. 47 at 1.)

2

The factual background relevant to this action is derived from the allegations of Plaintiffs' Complaint. According to Plaintiffs, MERS was "created in 1996 by the mortgage banking industry to create a secondary mortgage market, internally administer the buying and selling of mortgages, and to simplify the administration of home mortgages, including foreclosure proceedings." (D.I. 10 at ¶8(e).) Plaintiffs allege that MERS was created and established by the Shareholder Defendants for the purpose of facilitating their business interests and limiting their liability (Id. at ¶9(j)), and that, based on its "diminutive size and meager asset base, MERS is grossly undercapitalized to cover the potential liability stemming directly from its role as primary mortgagee on tens of millions of Mortgage Notes" (Id. at ¶9(l)). Accordingly, Plaintiffs allege that sufficient basis exists to pierce the corporate veil of MERS and hold the Shareholder Defendants jointly and severally liable to Plaintiffs since adhering to the "fiction that MERS is an entity wholly independent" from the Shareholder Defendants promotes "a grave injustice" to those injured by the conduct alleged in Plaintiffs' Amended Complaint. (Id. at ¶9(m).)

The Trevinos executed a mortgage note (the "Mortgage Note") on May 16, 2003, which was automatically assigned to MERS, registered on the MERS system, and title held in the name of MERS. (Id. at ¶19, ¶21.) In addition to the Mortgage Note, the

Trevinos executed a deed of trust on May 16, 2003 (the "Deed of Trust"), which provides "MERS is the beneficiary under this Security Instrument." (Id. at ¶24.)  Because MERS is the record mortgage holder and the holder of the Mortgage Note, a mortgage loan can be foreclosed in the name of MERS if the borrower defaults on the mortgage note. (Id. at ¶25.)

According to Plaintiffs, in the event of the borrower's default upon his obligations under the note, the note holder has the right "to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorney fees." (Id. at ¶34.)  Plaintiffs allege that MERS has arrangements with attorneys for flat-fee, per-case rates, which typically run between $400 to $500, per case. Accordingly, Plaintiffs allege, a borrower subject to an enforcement action should be obligated to reimburse MERS for no more than $400-$500, depending on the fee arrangement. (Id. at ¶36.)  MERS allows its attorneys and/or loan servicers to collect fees directly from the borrower, pursuant to the terms of the Mortgage Note.  According to Plaintiffs, payment demanded from the borrowers is "in an amount substantially in excess (i.e. three to four times) MERS's flat-fee obligation." (Id. at ¶37.) Plaintiffs allege that Defendants breached their agreement with Plaintiffs by "causing, directing and/or allowing their loan

4

servicers and retained attorneys to overcharge for costs, fees and expenses in connection with enforcement or foreclosure proceedings, in an amount in excess of the amounts actually incurred or obligated to be paid," (Id. at ¶72) damaging Plaintiffs by the amount of costs, fees and expenses that were overcharged in connection with these proceedings (Id. at ¶73). Plaintiffs further allege that, as a result of these actions, Defendants have been unjustly enriched at the expense of Plaintiffs. Finally, Plaintiffs allege that Defendants' actions constituted a breach of their duty of good faith and fair dealing implied in Plaintiffs' Mortgage Note.

All defendants have moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Merscorp and MERS filed a Motion to Dismiss on January 29, 2008. Defendant GMAC-RFC Holding Company, LLC ("GMAC-RFC") filed their Motion to Dismiss on February 15, 2008, as did the Shareholder Defendants. On February 15, 2008, Freddie Mac also filed their Motion to Dismiss the Amended Complaint, on the grounds set forth in GMAC-RFC's opening brief, and in the Shareholder Defendants' opening brief. Contemporaneously with their Answering Brief in Opposition to Defendants' Motions to Dismiss (D.I. 58), Plaintiffs requested that the Court take Judicial Notice of Certain Public Records and Written Company Materials (D.I. 57), which request was opposed by Defendants

(D.I. 61).

Briefing was completed on Defendants' Motions to Dismiss by June 11, 2008, and on June 28, 2008, Plaintiffs filed their Motion for Leave to File a Surreply, on which briefing was completed on July 18, 2008.

## STANDARD OF REVIEW

In considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (interpreting Fed. R. Civ. P. 8(a)). A complaint need not contain detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " Id. at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 1959.

6

## PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

As a threshold matter, Plaintiffs have requested that the Court take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of the following: (1) St. Louis County "Deed Search Results" for Plaintiffs' property; (2) relevant portions of the "Record on Appeal" in the matter Merscorp, Inc. and Mortgage Electronic Registration Systems, Inc. v. Romaine, Case No. 2004-04735 (Court of Appeals, State of New York), including the deposition testimony of R.K. Arnold, deposition testimony of Mark Fleming, and the transcript of proceedings held before the Honorable James M. Catterson, Supreme Court, State of New York, on May 15, 2001; (3) the MERS "Rules of Membership," available from the MERS website; and (4) a MERS Press Release dated May 24, 2007, available from the MERS website.

These materials were the subject of Plaintiffs' Request for Leave to File Surreply (D.I. 70), in response to Defendants' Opposition to Plaintiffs' Request for Judicial Notice (D.I. 61.) The Court will grant Plaintiffs' Request for Leave to File Surreply, and has considered Plaintiff's arguments stated therein. However, the Court finds the materials set forth by Plaintiffs are not appropriate for judicial notice at this juncture.

The Court may properly take notice of facts not reasonably subject to dispute, but evidence must be authenticated before it

7

can be admitted, and is only allowed from sources not reasonably subject to dispute. Vitaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007)(citing Fed. R. Evid. 201(b)). "While the [Federal Rules of Evidence] allow a court to take judicial notice at any stage of the proceeding, Fed. R. Evid. 201(f), . . . it should be done sparingly at the pleadings stage. Only in the clearest of cases should a district court reach outside the pleadings for facts necessary to resolve a case at that point." Id. "For all practical purposes, judicially noticing a fact is tantamount to directing a verdict against a party as to the noticed fact." LaSalle Nat. Bank v. First Connecticut Holding Group, LLC, 287 F.3d 279, 290 (3d. Cir. 2002)(citing Werner v. Werner, 267 F.3d 288, 295 (3d Cir. 2001).

Taking into consideration this legal standard in light of the material proposed by Plaintiffs, the Court concludes the following.

The Court declines to take judicial notice of the Deed Search Results, as the material in question has not been authenticated. The Court further finds that judicial notice of these results is unnecessary at this stage of the litigation, as the Court accepts as true, for purposes of this Motion, the Plaintiffs' allegation that MERS is the mortgagee of record. (See, e.g., D.I. 10 at ¶ 25.)

The Court will take judicial notice of the existence and
contents of the "Record on Appeal" submitted by Plaintiffs, but
declines to make any finding regarding the truth of the facts
represented therein because the facts contained within this
record are subject to dispute. "[R]ecords of other generally
courts generally may be noticed only to establish the fact of the
litigation and actions of that court. In general, documents may
not be judicially noticed for the truth of the matters stated in
them." 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's
Federal Evidence § 201.12[3] (2d ed. 2008).

Finally, the Court declines to take judicial notice of the
press release from the MERS website or of MERS's Rules of
Membership, since these materials have not been authenticated by
MERS.

## SHAREHOLDER DEFENDANTS' MOTION TO DISMISS

### I. Parties' Contentions

The Shareholder Defendants contend that Plaintiffs fail to
establish that the corporate form should be disregarded to hold
the Shareholder Defendants directly liable for the acts of MERS,
a wholly owned subsidiary of Merscorp, whose shares they own. In
order to hold the Shareholder Defendants liable, they contend,
Plaintiffs must first pierce the corporate veil between MERS and
Merscorp, and the Amended Complaint does not contain sufficient
factual allegations from which the Court could conclude that

9

Merscorp and MERS acted as a single economic entity.  The
Shareholder Defendants further contend that, even if the Court
were to ignore the corporate distinction between MERS and
Merscorp, Plaintiffs fail to allege facts that would justify
piercing the corporate veil.  Specifically, they contend: (1) the
Amended Complaint fails to allege that MERS was established or
operated for the purposes of committing fraud or visiting some
other injustice upon the Plaintiffs; (2) the Amended Complaint
invokes only one of the seven factors identified by the Third
Circuit to determine the propriety of veil piercing,
undercapitalization, which is insufficient on its own to pierce
the corporate veil, and Plaintiffs allegations regarding this
factor are insufficient to support undercapitalization; and (3)
the relationship between MERS and the Shareholder Defendants is
simply not conducive to allegations in support of veil piercing
because MERS was formed for a legitimate business purpose, and
its shareholders consist of several competitors in the mortgage
industry, "hardly a group that could be characterized as a single
functioning entity."  (D.I. 47 at 18.)  Finally, the Shareholder
Defendants adopt the arguments included in the Motion to Dismiss
filed by MERS, that the allegations in the Amended Complaint fail
to state a claim for relief as to MERS itself.[2]

---

[2]The Court will address MERS's arguments in its
consideration of MERS's Motion to Dismiss, *infra*.

In response, Plaintiffs argue that the Shareholder
Defendants' contentions regarding the corporate veil between MERS
and Merscorp are a "red herring," since MERS and Merscorp are,
for all intents and purposes, the identical entity, and
Plaintiffs have named both MERS and Merscorp as primary
defendants, seeking to impose primary liability on both, thus
making it unnecessary to pierce the corporate veil between the
two. Plaintiffs next contend that the relationship between a
corporation and its shareholders, and the amount of control the
shareholders have over the corporation, are highly fact intensive
and case-specific determinations, and accordingly, the
determination of whether a corporate veil may be pierced is a
fact-intensive inquiry ill-suited for a motion to dismiss.

However, Plaintiffs further contend that they have
sufficiently alleged facts to establish both alter ego liability
and agency liability necessary to pierce the corporate veil of
MERS, and impose liability on the Shareholder Defendants.
According to Plaintiffs, an examination of the seven factors
leads to the conclusion that MERS has been nothing more than a
facially legitimized front for the Shareholder Defendants,
established and operated to serve the cost saving and
streamlining interests of the Shareholder Defendants.
Accordingly, Plaintiffs contend, MERS has been purposefully
undercapitalized since its inception, which Plaintiffs argue they

11

have sufficiently alleged, having alleged that MERS "(a) is, and has been undercapitalized from its inception; (b) earns very little revenue and is, in fact, operated intentionally to avoid profits; and (c) due to its lack of profits and revenue, MERS cannot possible cover the potential liability stemming directly from its role as primary mortgagee on tens of millions of Mortgage Notes." (Id. at 33.)

Plaintiffs also contend that the Shareholder Defendants are liable through their agency relationship with MERS, and the Amended Complaint is "replete" with allegations supporting such liability. (D.I. 58 at 40.) Plaintiffs contend that they have alleged that the Shareholder Defendants acted interchangeably with MERS, so that both parties were mutual agents of each other. Finally, Plaintiffs contend that Washington Mutual may be held directly liable to Plaintiffs, as the loan servicer on Plaintiff's mortgage loan.

## II.   Discussion

In their briefing, Plaintiffs contend that the Shareholder Defendants should be held liable for the acts of MERS and Merscorp based on two separate theories, an alter ego theory of liability, and an agency theory of liability.

### A.   Plaintiffs Have Not Sufficiently Alleged Alter Ego Liability.

Plaintiffs acknowledge that, in order to state a claim for piercing the corporate veil under an alter ego theory, they must

show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present. (D.I. 58 at 28, quoting Laifail, Inc. v. Learning 2000, Inc., No. 01-599-GMS, 2002 WL 31667861, at *11 (D.Del. Nov. 25, 2002).) Both parties cite to the Third Circuit's multi-factor test for determining whether a "single economic entity" exists between entities, which is set forth in United States v. Pisani, 646 F.2d 83, 88 (3d. Cir. 1981). Pisani lists the following factors: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. Id.; see also Harco Nat. Ins. Co. v. Green Farms. Inc., Civ. A. No. 1131, 1989 WL 110537, at *4 (Del.Ch.Ct. Sept. 19, 1989). "While no single factor justifies a decision to disregard the corporate entity, some combination of the above is required, and "an overall element of injustice or unfairness must always be present, as well." U.S. v. Golden Acres, Inc., 702 F.Supp. 1097, 1104 (D.Del. 1988).

The Court agrees with the Shareholder Defendants that Plaintiffs have not adequately pled facts sufficient to support

13

an inference that the Shareholder Defendants are using "an

independent corporation" to "defeat the ends of justice, to

perpetuate fraud, to accomplish a crime, or otherwise evade the

law." Bd. Of Trustees of Teamsters Local 863 Pension Fund v.

Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002). In support of

their contention that MERS and the Shareholder Defendants

operated as a single economic unit, Plaintiffs have pled the

following:

- MERS was created in 1996 by the mortgage banking industry to create a secondary mortgage market, internally administer the buying and selling of mortgages, and to simplify the administration of home mortgages, including foreclosure proceedings. (D.I. 10 at ¶ 8(e).)

- MERS was under the utter and complete domination and control of the Control Defendants who own, operate, control, manage and direct the activities of MERS. MERS was created and established by the Control Defendants for the purpose of facilitating their own business interests and limiting their liability in that effort. (Id. at ¶ 9(j).)

- With a mere $11 million in annual income and 40 employees, MERS is hardly the financial titan it would need to be to stand as mortgagee on the tens of millions of Mortgage Notes that it does. In contrast, the Control Defendants annual profits run to the hundreds of billions of dollars for the mortgages where MERS stands at the primary mortgagee. (Id. at ¶ 9(k).)

- It is uncontrovertible that the Control Defendants' profits are greater and come with far more efficiency and less exposure to liability through the existence of MERS. One must conclude, therefore, that based on its diminutive size and meager asset base, MERS is grossly undercapitalized to cover the potential liability stemming directly from its role as primary mortgagee on tens of millions of Mortgage Notes. (Id. at ¶ 9(l).)

- Adherence to the fiction that MERS is an entity wholly independent from the Control Defendants would promote a

14

> grave injustice to those injured by the conduct alleged
> therein. (Id. at ¶ 9(m).)

Essentially, in support of their contention that MERS should be

considered the "alter ego" of the Shareholder Defendants.

Plaintiffs plead that MERS is undercapitalized.[3] Assuming

*arguendo* that Plaintiffs have adequately pled

undercapitalization, and accepting Plaintiffs' allegations

regarding MERS' undercapitalized status as true, "[a] shortage of

capital, as with all the factors of the alter ego doctrine, is

not per se a reason to pierce the corporate veil. . . . Rather,

the inquiry into corporate capitalization is most relevant for

the inference it provides into whether the corporation was

established to defraud its creditors or other improper purpose

such as avoiding the risks known to be attendant to a type of

business." Trustees of Nat. Elevator Industry Pension, Health

Benefit and Educational Funds v. Lutyk, 332 F.3d 188, 197 (3d

_____

[3]By their briefing, Plaintiffs contend that MERS does not
issue dividends (D.I. 58 at 33), and that if liability from the
present action is realized, MERS would be forced into bankruptcy
"if not indemnified or otherwise salvaged by the Control
Defendants." However, Plaintiffs failed to assert either of these
allegations in their Amended Complaint, and the Court will not
"consider after-the-fact allegations in determining the
sufficiency of [Plaintiffs'] complaint under ... [Rule]
12(b)(6)." Frederico v. Home Depot, 507 F.3d 188, 201 -202 (3d
Cir. 2007)(citing Commw. of Pa. ex. rel Zimmerman v. PepsiCo,
Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the
complaint may not be amended by the briefs in opposition to a
motion to dismiss.").

15

Cir. 2003). Plaintiffs concede that MERS was established for a *legitimate* purpose: "to create a secondary mortgage market, internally administer the buying and selling of mortgages, and to simplify the administration of home mortgages, including foreclosure proceedings." (D.I. 10 at ¶ 8(e).) In light of Plaintiffs' concession that MERS was created for a legitimate purpose, and Plaintiffs' failure to allege in their Amended Complaint any other factors, besides undercapitalization, that would support their contention that the Shareholder Defendants and MERS operated as a single economic entity, the Court finds that Plaintiffs have not alleged facts sufficient to support a finding that the Shareholder Defendants and MERS operated as a single economic entity.

The Court further concludes that Plaintiffs have not sufficiently alleged "injustice" or unfairness. Plaintiffs allege that, if the Court does not disregard MERS's independent corporate status, "grave injustice" will result to those injured by MERS's alleged conduct. (D.I. 10 at ¶ 9(m).) While Plaintiffs allege that MERS was created to facilitate the business interests of the Shareholder Defendants, and to limit their liability in that effort, "[l]imiting one's personal liability is a traditional reason for a corporation. Unless done deliberately, with specific intent to escape liability for a specific tort or class or torts, the cause of justice does not require

16

disregarding the corporate entity."  Mobil Oil, 718 F.Supp. at 269.

Further, under Delaware law, the fraud or injustice that must be demonstrated in order to pierce a corporate veil law must "'be found in the defendants' use of the corporate form.'" In re Foxmeyer Corp., 290 B.R. 229, 236 (D.Del. Bankr. 2003) (quoting Mobil Oil Corp. v. Linear Films, Inc., 718 F.Supp. 260, 267 (D.Del. 1989), and compiling cases); see also Sears, Roebuck & Co. v. Sears, 744 F.Supp. 1297, 1304 (D.Del. 1990) ("In order to reach a parent corporation under the alter-ego theory, the plaintiff must show fraud, injustice, or inequity in the use of the corporate form."). Based on the Court's review of Plaintiffs' pleadings and brief, the only "injustice" that Plaintiffs allege is that, because MERS is ill-equipped to handle potential liability arising from this action, "a judgment against MERS would be no more than a pyrrhic victory for the Plaintiffs and hundreds of thousands of Class members who were unjustly taken advantage of in time of severe financial distress."  (D.I. 58 at 39.)  However, Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil.  See, e.g., Mason v. Network of Wilmington, Inc., No. Civ.A. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. Ct. July 1, 2005) ("If creditors could enter judgments against shareholders everytime a

17

corporation becomes unable to pay its debts as they become due, the limited liability characteristic of the corporate form would be meaningless.").

In support of their contention that they have properly alleged injustice, Plaintiffs contend that MERS, through its agents, including the Shareholder Defendants, overcharged Plaintiffs for costs not actually incurred, and that hundreds of thousands of mortgage loans have been subject to the imposition of these costs. (D.I. 58 at 38.) Plaintiffs point to paragraph 12 of their Amended Complaint, which states that "hundreds of thousands" of mortgages have fallen into foreclosure, and were subject to the imposition and collection of improper attorneys' fees and expenses, in support of their contention that they have properly alleged injustice. However, "the underlying cause of action, at least by itself, does not supply the necessary fraud and injustice," Foxmeyer, 290 B.R. at 236, and Plaintiffs do not otherwise allege abuse or injustice in the use of the corporate form. See also, Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical, No.Civ.A. 19760-NC, 2004 WL 415251, at *4 (Del. Ch. Mar. 4, 2004)(holding that plaintiff's alter ego argument fails because plaintiff has not alleged that the corporate form in and of itself operates to serve some fraud or injustice, distinct from the alleged wrongs of the underlying corporation). Accordingly, the Court concludes that Plaintiffs have failed to

state a "veil-piercing claim," having failed to plead facts that would give rise to an inference that the Shareholder Defendants, through their alter ego, have created "a sham entity designed to defraud investors and creditors." Crosse v. BCBSD, Inc., 836 A.2d 492, 497 (Del. 2003).

B.  Plaintiffs Have Not Sufficiently Alleged Agency Liability.

In order to hold the Shareholder Defendants liable under an agency theory, Plaintiffs must first allege "an arrangement between the two corporations so that one acts on behalf of the other and within usual agency principles," and second, "the arrangement must be relevant to the plaintiff's claim of wrongdoing." Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988). "Under Delaware law, proof of agency within the context of a parent-subsidiary relationship requires that the plaintiff 'demonstrate that the agent was acting on behalf of the principal and that the cause of action arises out of that relationship.'" Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed.Appx. 803, 2003 WL 1919361, at *4 (3d Cir. 2003) (quoting E.I. DuPont de Nemours and Co. v. Rhone Roulenc Fiber and Resin Intermediates, 269 F.3d 187, 198 (3d Cir. 2001).

Plaintiffs have alleged that the Control Defendants were the principle shareholders of MERS, and that MERS was under the "utter and complete dominion and control of the Control

19

Defendants who own, operate, manage and direct the activities of MERS." Plaintiffs then point to their allegations that "MERS operated through its agents, including loan servicers (many of which are the Control Defendants)." (D.I. 58 at 42.) Plaintiffs must allege, however, that MERS acted as agent for the Shareholder Defendants in a series of transactions, and therefore has the power to bind the Shareholder Defendants. Pearson v. Component Tech. Corp., 247 F.3d 471, 488 n.5 (3d Cir. 2001). Plaintiffs have instead alleged that the Shareholder Defendants were acting as *MERS's* agent. Accordingly, the Court concludes that Plaintiffs have not sufficiently alleged that an arrangement existed under which MERS acted as an agent of the Shareholder Defendants when MERS engaged in the wrongdoing alleged in the Amended Complaint. The Court also concludes that Plaintiffs have failed to sufficiently allege that Plaintiffs' cause of action arises out of the relationship between the Shareholder Defendants and MERS.

C.  Plaintiffs Have Sufficiently Pled a Direct Liability
    Claim against Washington Mutual

The Court concludes that Plaintiffs have sufficiently pled a direct liability claim against Washington Mutual, the original lender and loan servicer on Plaintiffs' Mortgage Note. In support of this contention, Plaintiffs point out that Washington Mutual was the original lender and loan servicer on the Trevino's Mortgage Note (D.I. 10 at ¶ 9(h)), and that the Amended Complaint

20

contains multiple allegations regarding the conduct of loan servicers.[4] Having reviewed the Amended Complaint, the Court finds these allegations are sufficient to support a claim for direct liability against Washington Mutual.

## III. Conclusions

The Court will grant the Shareholder Defendant's Motion to Dismiss the Amended Complaint, but will allow Plaintiffs' direct liability claim against Washington Mutual to proceed.[5]

### DEFENDANTS MERSCORP AND MERS'S MOTION TO DISMISS

## I.  Parties' Contentions

Defendants MERS and Mercorp (collectively, "MERS") contend that the Court should dismiss Plaintiffs' Amended Complaint for the following reasons.  First, MERS contends that the Promissory Note cannot form the basis for a breach of contract action by

---

[4]Plaintiffs further contend that the MERS's Rules of Membership indicate that, as the loan servicer on Plaintiffs' mortgage loan, Washington Mutual had the right to foreclose with respect to Plaintiffs' mortgage at the time enforcement proceedings were commenced against them.  (D.I. 58 at 46.) However, as discussed *supra*, the Court has determined that MERS's Rules of Membership are not properly before the Court at this time.

[5] The Court concludes that, in support of their motions, GMAC-RFC and Freddie Mac have relied heavily on contentions substantially similar to those articulated by the Shareholder Defendants in support of their own Motion to Dismiss (D.I. 47). Accordingly, the Court's analysis and determinations regarding the Shareholder Defendants' Motion to Dismiss are applicable to the Motions to Dismiss filed by GMAC-RFC and Freddie Mac, and the Court will also grant the Motions to Dismiss filed by Shareholder Defendants GMAC-RFC (D.I. 42) and Freddie Mac (D.I. 45).

Plaintiffs against MERS since nothing in the Promissory Note obligates MERS to perform under its terms. Accordingly, MERS contends that Plaintiffs cannot state a claim for breach of contract against MERS where the provision alleged to have been breached is an obligation imposed on Plaintiffs. Second, MERS contends that, even if Plaintiffs could state a claim for breach of contract, the Amended Complaint fails to allege any facts showing that Plaintiffs have been damaged, and thus are entitled to relief. Third, MERS contends that Plaintiffs' unjust enrichment claim is legally deficient because Plaintiffs have not, and cannot, allege facts that Plaintiffs conferred any benefit on MERS, or that MERS accepted any such benefits. MERS further contends that Plaintiffs' unjust enrichment claim fails as a matter of law because such a claim would not lie where, as here, Plaintiffs have alleged the existence of an express contract. Finally, MERS contends that Plaintiffs' breach of duty of good faith and fair dealing claim fails to state a claim because (1) a duty of good faith and fair dealing must arise from a contract imposing mutual obligations on the parties, and here MERS is not obligated under the contract, and (2) Plaintiffs have not alleged any facts which would support such a claim.

In response, Plaintiffs argue that the Mortgage Note is an enforceable contract against MERS, since the Deed of Trust specifically nominates MERS to stand in the shoes of the lender,

22

and grants MERS express authority to enforce the provisions of
the Mortgage Note.  Plaintiffs contend that the loan agreement
and promissory note operate in tandem and represent the entirety
of the agreement between the parties, and that MERS cannot take
the position that it has all the rights under the mortgage
agreement and Mortgage Note, but none of the obligations.
Second, Plaintiffs contend that they have expressly and/or
implicitly alleged that MERS demanded, collected, and retained
improper costs, fees and expenses from Plaintiffs and members of
the class, and point to these allegations in their Amended
Complaint.  Third, Plaintiffs contend that they have adequately
stated a claim for unjust enrichment, and that actions for unjust
enrichment are permitted contemporaneously with breach of
contract claims when the validity of a contract is challenged.
Finally, Plaintiffs contend that it has adequately stated a claim
for breach of duty of good faith and fair dealing by MERS by
alleging MERS demand, collection and retention of excessive sums
without regard to the terms of the Mortgage Note.

## II.  Discussion

The Court concludes that Plaintiffs have adequately stated a
claim for breach of contract sufficient to survive MERS's Motion
to Dismiss.  By their Amended Complaint, Plaintiffs allege (1)
the Mortgage Note was an enforceable contract between MERS, as
mortgagee of record, and the Plaintiffs, as mortgagers (D.I. 10

23

at ¶¶ 19-33); (2) MERS breached the Mortgage Note by charging and collecting costs, fees and expenses from Plaintiffs which were not incurred, and to which it was not entitled (Id. at ¶¶ 34-40, 47-54, 56, 57-59); and (3) Plaintiffs suffered damages as a result (Id. at ¶¶ 69, 73), which is sufficient to state a claim for breach of contract at this stage of the litigation under both Missouri and Delaware law.[6]   See, e.g., Jackson v. Williams, Robinson, White & Rigler, P.C.,230 S.W.3d 345, 348 (Mo. Ct. App. 2007); VLIW Technology, LLC v. Hewlett Packard Co., 840 A.2d 606, 611 (Del. 2003).

The Court is not persuaded by MERS's argument that the Mortgage Note cannot form the basis for a breach of contract claim against MERS.  While MERS may not have been contractually obligated to collect costs, attorneys' fees and expenses, once MERS invoked its reimbursement authority, by the terms of the Note, MERS was obligated to collect only those costs and expenses incurred in enforcing the Note.[7]

_____

[6]Plaintiffs submit there is no material difference in the contract laws of the various states as applied to MERS's Motion to Dismiss.  While MERS contends that Missouri substantive law applies to their 12(b)(6) motion, since Missouri has the most significant relationship to the Plaintiffs' claims, in their reply brief, they indicate their agreement that the principles relating to contract law, applied to their Motion, are fundamentally the same in the various states.

[7]In the Court's view, MERS's remaining arguments regarding Plaintiffs' breach of contract claim are complex and intensely factual, and a more fully developed factual record is necessary to address them.

The Court further concludes that MERS has sufficiently
stated a claim for unjust enrichment. "The elements of unjust
enrichment are: (1) an enrichment, (2) an impoverishment, (3) a
relation between the enrichment and impoverishment, (4) the
absence of justification and (5) the absence of a remedy provided
by law." Jackson Nat. Life Ins. Co. v. Kennedy, 741 A.2d 377,
393 (Del. Ch. Ct, 1999). Although Plaintiffs have alleged the
existence of express contracts, it appears to the Court that
there is at least some dispute concerning these contracts,
particularly with regard to MERS's obligations under these
contracts. In light of this disagreement and given the early
stage of the proceedings, the Court will allow Plaintiff to
proceed on its claim of unjust enrichment as an alternative
theory of recovery to Plaintiff's breach of contract claim.

Delaware courts recognize an implied covenant in contracts
requiring the parties to act with good faith toward the other
party with respect to their contract. Katz v. Oak Indus. Inc.,
508 A.2d 873, 880 (Del. Ch. Ct. 1986) (citing Restatement
(Second) of Contracts, § 205 (1981)). A party must "act
reasonably to fulfill the intent of the parties to the
agreement." Gloucester Holding Corp. v. U.S. Tape & Sticky Prod.,
LLC, 832 A.2d 116, 128 (Del. Ch. Ct. 2003) (citations omitted).
Applying these principles to the allegations in Plaintiffs's
Complaint, the Court finds that Plaintiffs have sufficiently

stated a claim for breach of duty of good faith and fair dealing:
Plaintiffs have identified MERS's contractual obligations, as
depicted above, have alleged a breach of those obligations by
defendants, and have alleged damages.  Accordingly, the Court
will deny MERS's Motion to Dismiss Plaintiff's good faith and
fair dealing claim.

## III. Conclusions

For the reasons discussed, the Court will deny MERS's
Motion to Dismiss Plaintiffs' Amended Class Action Complaint
(D.I. 40).

### CONCLUSIONS

The Court will grant the Shareholder Defendant's Motion to
Dismiss the Amended Complaint (D.I. 47), but will allow
Plaintiffs' direct liability claim against Washington Mutual to
proceed.  The Court will also grant the Motions to Dismiss filed
by Defendants GMAC-RFC Holding Company, LLC (D.I. 42 )and Freddie
Mac (D.I. 45). The Court will grant Plaintiffs' Request for Leave
to File Surreply (D.I. 70), and the Surreply is filed instanter.
Finally, the Court will deny MERS's Motion to Dismiss Plaintiffs'
Amended Class Action Complaint (D.I. 40).

An appropriate Order will be entered.